UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NICHOLAS KNAACK, a single person; BILLY BRAMBLETT, a single person; JAMES LACY, a married person; DION LUMADUE, a single person; Plaintiff,<br><br>v.<br><br>ALLIED WORLD SPECIALTY INSURANCE COMPANY, a foreign insurer, Defendant. | No. 2:23-cv-01679-BJR<br><br>**ORDER DENYING PLAINTIFFS' MOTION TO COMPEL ATTORNEY-CLIENT PRIVILEGED MATERIAL IN CLAIM FILE EXCEPT AS TO EXHIBIT 30** |

## I.    INTRODUCTION

This matter comes before the Court on Plaintiffs' Motion to Compel production of 69[1] documents from a claims file that Defendant has withheld on the basis of, variously, (1) attorney-client privilege; (2) the work product doctrine; and (3) relevance. Dkt. No. 25. In a prior action, (the "Underlying Lawsuit"), Plaintiffs here sued American Behavioral Health Systems, Inc

---

[1] Plaintiffs' original Motion to Compel references 69 documents. After briefing on that motion was complete, Plaintiffs took the deposition of Allied's claims adjuster, and thereafter requested an opportunity to file additional briefing, which request the Court granted. In the second round of briefing, the parties make reference to 58 withheld documents, without explaining the discrepancy, which the Court therefore concludes is not material to the dispute.

ORDER RE: MOTION TO COMPEL
RFP NO. 12
- 1

("ABHS"), a substance rehabilitation facility, alleging sexual harassment and abuse by one of ABHS's employees. *Id.* at 1. The parties settled that matter and as part of that settlement, ABHS assigned to Plaintiffs its coverage claims against its insurance carrier, Defendant Allied World Specialty Insurance Company, ("Allied"), which had denied coverage for the Underlying Lawsuit under a sexual abuse and molestation exclusion in ABHS's policy. The instant case was brought by Plaintiffs, pursuing the rights assigned to them by ABHS against Allied.

Having reviewed the briefs filed in support of and in opposition to the motion, and having reviewed the documents *in camera*, the Court finds and rules as follows.[2]

## II.    DISCUSSION

**A. Law Governing Insurer's Assertion of Attorney-Client Privilege in Bad Faith Claims**

The Court "start[s] from the presumption that there is no attorney-client privilege relevant between the insured and the insurer in the claims adjusting process, and that the attorney-client and work product privileges are generally not relevant." *Cedell v. Farmers Ins. Co. of Washington*, 176 Wn. 2d 686, 698–99 (2013). An "insurer may overcome the presumption of discoverability by showing its attorney was not engaged in the quasi-fiduciary tasks of investigating and evaluating or processing the claim, but instead in providing the insurer with counsel as to its own

---

[2] Although generally speaking typographical errors are not exactly a rare occurrence, the Court finds it necessary to remind counsel in this case that it expects polished, proofread work in written court filings. Plaintiffs' briefs in particular contain innumerable typographical and grammatical errors that at times make understanding Plaintiffs' arguments difficult. These errors, along with the liberal use of incomplete or run-on sentences and unacceptably informal phrasing, result in briefs that often read more like dictated notes than an official court filing. The Court directs counsel at a minimum to more carefully proofread their work.

ORDER RE: MOTION TO COMPEL
RFP NO. 12
- 2

potential liability; for example, whether or not coverage exists under the law." *Id*. If the insurer makes such showing, it is "entitled to an *in camera* review of the claims file, and to the redaction of communications from counsel that reflected the mental impressions of the attorney to the insurance company, unless those mental impressions are directly at issue in its quasi-fiduciary responsibilities to its insured." *Id*., citation omitted. If the court finds the attorney-client privilege applies, then it should next address any claims the insured may have that the insurer waived or otherwise is not entitled to assert the attorney-client privilege.

### B. Whether Allied Has Demonstrated That Communications With Its Attorneys Are Privileged

The adjuster assigned to ABHS's claim, Jessica Fritz-Aguiar, first advised ABHS by letter dated July 13, 2020 that its pre-litigation demand was not covered by the Allied policy. Baker Decl., Dkt. No. 29, Ex. 5. Fritz-Aguiar determined in early September 2020 that the Underlying Lawsuit, filed in August 2020, was also not covered. Fritz-Aguiar Decl., ¶ 5. Fritz-Aguiar retained the Dykema Gossett law firm on September 9, 2020, "after determining that the lawsuit was not covered by the Policy, . . . to provide a legal opinion to confirm whether the allegations in the lawsuit against ABHS were covered under applicable law and to advise regarding ABHS' potential liability following a denial of coverage in the unlikely event that a coverage dispute were to arise and the denial was determined to be incorrect." *Id*., ¶ 6. She issued the letter denying coverage on October 2, 2020. Baker Decl., Ex. 4.

Having reviewed the parties' briefing and supporting evidence and, i*n camera*, the documents at issue, the Court concludes that Allied has met its burden of demonstrating that, with the exception noted below, the documents it has withheld as privileged are, in fact, privileged as

ORDER RE: MOTION TO COMPEL
RFP NO. 12
- 3

attorney-client communications. The evidence is undisputed that almost all of these documents were generated after Fritz-Aguiar had already made a determination that its insured's claims were not covered. The Court's review of the documents assures it that the documents were not generated in performance of the "quasi-fiduciary tasks of investigating and evaluating or processing the claim," which the adjuster had in fact already performed, "but instead in providing the insurer with counsel as to its own potential liability." *Cedell*, 176 Wn.2d at 698-99; *see* Fritz-Aguiar Decl., ¶ 6. By the time ABHS's counsel wrote to Allied challenging Allied's declination of coverage, it is clear that Allied's attorneys were acting on behalf of Allied in a role that was more adversarial to ABHS than "quasi-fiduciary." Under these circumstances, the attorney-client privilege Allied has claimed should attach.

The Court further concludes that the documents withheld under the work-product doctrine were created in reasonable anticipation of litigation, and would not have been created but for that anticipation, and need not be produced. Finally, the Court agrees that the documents withheld as irrelevant are, in fact, irrelevant to Plaintiffs' case, and also need not be produced.

The Court also concludes, however, that Defendant is not entitled to withhold Exhibit 30. Much of that document, dated early July 2020, is an internal discussion among Allied employees regarding a draft of a denial letter, while only a small portion of the email discusses whether legal counsel should be engaged. This discussion does constitute a "processing" of ABHS's claim, and does not reflect attorney-client communications; although attorneys are involved in the discussion, they are, as far as the Court can discern, employees of Allied acting in their capacity as administrators or analysts, not legal counsel. Therefore, Defendant shall produce Exhibit 30.

ORDER RE: MOTION TO COMPEL
RFP NO. 12
- 4

### C. Whether Allied Waived the Attorney-Client Privilege

Plaintiffs also argue that Allied has waived or is otherwise not entitled to whatever attorney-client privilege to which it may have been entitled, based on several different grounds. The Court addresses each in turn.

*1. Whether Fritz-Aguiar's Testimony Waived the Privilege by Disclosing Attorney-Client Communications and/or Invoking an Advice-of-Counsel Defense*

Plaintiffs argue that Allied effected a waiver of any attorney-client privilege when its claims adjuster "disclosed what she contends coverage counsel told her." Pls.' Add. Mem. at 1. Fritz-Aguiar testified "my understanding is that they reviewed the complaint in conjunction with the policy and said, you're correct. There are sexual abuse -- or I'm sorry, there are sexual abuse and molestation allegations here, and so the exclusion would apply." Fritz-Aguiar Dep., 224-25, Casey Decl., Ex. C.

This testimony does not amount to a waiver of Allied's privilege. First, on its face, the testimony does not reveal actual communications; it is testimony about Fritz-Aguiar's "understanding," which she explicitly qualified by saying "I don't know because I wasn't with them in their office." *Id*. Furthermore, as Allied argues, the privilege belongs to Allied, and is not Fritz-Aguiar's to waive. Def.'s Resp. at 1 (citing *U.S. v. Chen,* 99 F.3d 1495, 1502 (9th Cir. 1996)) ("[T]he power to waive the corporate attorney-client privilege rests with the corporation's management…a corporate employee cannot waive the corporation's privilege…") (internal citations omitted).

The Court also rejects Plaintiffs' argument that Fritz-Aguiar's testimony constitutes reliance by Allied on an advice-of-counsel defense. An insurer waives its claim to attorney-client

ORDER RE: MOTION TO COMPEL
RFP NO. 12
- 5

privilege where it explicitly raises an advice-of-counsel defense, or where it "*implicitly* relies on counsel's legal advice as a justification for non-payment of claims, even where the insurer never reveals the substance of the legal advice given." *Lexington Ins. Co. v. Swanson*, No. C05-1614MJP, 2007 WL 2121730, at *3 (W.D. Wash. July 24, 2007). If the insured "asserts as a defense the actual advice given by [its] attorneys . . . or refers to or attempts to put into evidence any suggestion that [its] adjusters sought, obtained, or relied on coverage counsel's advice, [the insurer] waives the privilege." *Id*., at *4.

In this case, Allied has not explicitly asserted an advice-of-counsel defense, either in its Answer or in any filings to date. *See* Ans., at pp. 6-7. Plaintiffs argue that Allied has nevertheless waived any privilege by impliedly asserting that defense. It points out that in her deposition, Fritz-Aguiar admitted that she referred her denial of coverage to counsel to "doublecheck" or "review" her determination. Pls.' Rep. Add. at 2. The Court rejects this attempt to cast Fritz-Aguiar's testimony as an assertion of an affirmative defense. Obviously, Fritz-Aguiar's admission as a fact witness that she sought legal advice is distinct from any litigation strategy Allied might employ to defend its coverage denial in this proceeding. Fritz-Aguiar's testimony cannot fairly be characterized as an attempt by Allied—express or implied—to rely on an advice-of-counsel defense. Accordingly, the Court concludes Fritz-Aguiar's admission did not constitute a waiver of that defense.

    3. *Whether Fritz-Aguiar's Review of the Claims File in Preparation for her Deposition Effected a Waiver of Allied's Privilege*

Plaintiffs argue that under FRE 612, which requires production of documents used to refresh a witness's testimony, Fritz-Aguiar's review of privileged material in preparation for her

ORDER RE: MOTION TO COMPEL
RFP NO. 12
- 6

deposition effected a waiver of that privilege. Plaintiffs rely on *Adidas America, Inc. v. TRB Acquisitions LLC* for the proposition that "once a document is used to refresh the recollection of a witness, privileges as to that document have been waived." Pls.' Add. Mem. at 5 (citing 324 F.R.D. 389, 397, 403-404 (D.Or. 2017)).

Plaintiffs' reliance on this case is unavailing for two reasons. First, there is no evidence in the record that any privileged materials did, in fact, refresh Fritz-Aguiar's memory or otherwise affect her testimony. In the cited portion of the deposition, Fritz-Aguiar testified generally that review of her "claim notes" refreshed her memory, but makes no specific reference to any privileged material. Indeed, as Allied points out, Fritz-Aguiar repeatedly testified that she did not recall what was contained in the redacted material. *See* Def.'s Resp. to Supp. at 3. Second, *Adidas*, the only authority Plaintiffs have cited, actually held that "the application of FRE 612 should be different in the context of a witness designated under FRCP 30(b)(6) than in the context of a deposition of a percipient witness," ruling disclosure was appropriate only in the context of a 30(b)(6) deposition (and even then only under certain circumstances). There is no contention that Fritz-Aguiar was a 30(b)(6) witness. Her review of redacted material prior to her deposition did not effect a waiver.

    4. *Whether the Privilege Was Lost Because Dykema Gossett Attorneys Were Not Licensed to Practice Law in Washington*

Plaintiffs argue that Allied's reliance on attorneys who were not licensed to practice in Washington "obviates" the privilege Allied is claiming. Pls.' Rep. at 1. According to Plaintiffs, Washington prohibits the practice of law without a license; Allied hired attorneys who were not

licensed in Washington to advise it on Washington law; and this engagement was "bad faith tantamount to civil fraud." *Id*.

This argument is not only frivolous; it also relies on repeated misrepresentations of caselaw and the Rules of Professional Conduct that are so distorted as to merit sanctions.[3] For example, Plaintiffs claim that "RPC 5.5(b)(2) forbids the unlicensed practice at all unless an exception in RCP 5.5(b)(c)(1-4) applies." *Id*. To the contrary, RPC 5.5(b)(2) provides only that a "lawyer who is not admitted to practice in this jurisdiction shall not . . . hold out to the public or otherwise represent that the lawyer is admitted to practice law in this jurisdiction." That subsection says nothing about prohibiting the unlicensed practice of law, and in fact, the provision immediately proceeding it merely prohibits an attorney who is not licensed in Washington from "establish[ing] an office or other systematic and continuous presence in this jurisdiction for the practice of law." RPC 5.5(b)(1). Neither of these proscriptions apply to the facts of this case. Plaintiffs have also grossly misrepresented the holding of *Jones v. Allstate Insurance Company*, which Plaintiffs claim "held insurance companies may only use attorneys licensed in Washington to take action constituting the practice of law effecting [*sic*] Washington insureds." Pls.' Add. Mem. at 2 (citing 146 Wn.2d 291, 301 (2002)). This is an egregious misstatement of the holding in *Jones*, which actually held that advising an insured to sign a release constituted the practice of law, and that

---

[3] At several points in their briefing, Plaintiffs' counsel have misrepresented the holdings of cases and the evidence in the record. In addition to the instances documented above, for example, Plaintiffs assert that the adjuster "admitted" that certain redacted statements were "not legal advice or with an attorney," when in fact the adjuster testified "I don't know what's under that redacted bar." Fritz-Aguiar Dep., 236:13-14, Casey Decl., Ex. C. "An attorney does not simply act as an advocate for his client; he is also an officer of the court. As such, an attorney has a duty of good faith and candor in dealing with the judiciary." *United States v. Associated Convalescent Enterprises, Inc.,* 766 F.2d 1342, 1346 (9th Cir. 1985). Counsel's zealous representation of their clients is not served by testing the limits of this duty. Any further violations will not be tolerated and will result in sanctions.

ORDER RE: MOTION TO COMPEL
RFP NO. 12
- 8

"insurance claims adjusters, when preparing and completing documents which affect the legal rights of third party claimants and when advising third parties to sign such documents, must comply with the standard of care of a practicing attorney." 146 Wn. 2d at 305. Plaintiffs' citation to *Cedell* for the false premise that "[u]sing unlicensed attorneys to illegally practice of law [*sic*] is bad faith and civil fraud piercing privilege assuming one existed" is similarly disingenuous, as that case held no such thing. Pls.' Add. Mem. at 3 (citing 176 Wn.2d at 700).

The Court rejects Plaintiffs' argument that Allied waived its privilege by engaging attorneys licensed in other states, which lacks authority and is contradicted by RPC 5.5(c)(4), which provides that "[a] lawyer admitted in another United States jurisdiction . . . may provide legal services on a temporary basis in this jurisdiction that . . . are reasonably related to the lawyer's practice in a jurisdiction in which the lawyer is admitted to practice."

### III.   CONCLUSION

For the foregoing reasons and as detailed above, Plaintiffs' Motion to Compel is GRANTED as to Exhibit 30, and DENIED as to all other documents at issue.

Dated this 28th of June, 2024.

_____
Barbara Jacobs Rothstein
U.S. District Court Judge

ORDER RE: MOTION TO COMPEL
RFP NO. 12
- 9