*EXHIBIT 1*



**ALLIED WORLD SPECIALTY INSURANCE COMPANY**
**1690 New Britain Ave., Suite 101, Farmington, CT 06032 Tel. (860) 284-1300 Fax (860) 284-1301**

# FORCEFIELD℠
## HEALTHCARE ORGANIZATIONS
### MANAGEMENT LIABILITY PACKAGE POLICY

**POLICY NUMBER:**   0312-0123          **RENEWAL OF:**   New

### NOTICES

THE FOLLOWING NOTICES ARE APPLICABLE TO ALL COVERAGE SECTIONS, EXCEPT THE CRIME AND THE KIDNAP AND RANSOM/EXTORTION COVERAGE SECTIONS.

EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THE COVERAGE OF THIS POLICY IS GENERALLY LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN.

THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS SHALL BE REDUCED BY AMOUNTS INCURRED FOR DEFENSE COSTS. AMOUNTS INCURRED FOR DEFENSE COSTS SHALL BE APPLIED AGAINST THE RETENTION AMOUNT.

THE INSURER DOES NOT ASSUME THE DUTY TO DEFEND ANY CLAIM UNDER THIS POLICY; HOWEVER, IF THE INSURED TENDERS THE DEFENSE OF ANY CLAIM TO THE INSURER IN ACCORDANCE WITH THE TERMS HEREIN, THE INSURER SHALL ASSUME THE DEFENSE OF SUCH CLAIM.

*PLEASE READ THE ENTIRE POLICY CAREFULLY AND DISCUSS THE COVERAGE HEREUNDER WITH YOUR INSURANCE BROKER*

## DECLARATIONS

**ITEM 1.   NAMED INSURED:**   American Behavioral Health Systems, Inc.

  **ADDRESS:**          12715 East Mission Avenue
                        Spokane, WA 99216

**ITEM 2.   POLICY PERIOD**: Inception Date: October 1, 2019   Expiration Date: October 1, 2020
(12:01 a.m. Standard Time at the address stated in Item 1)

ALLIED WORLD 001651

**ITEM 3.    COVERAGE SECTIONS AND PREMIUM**

This Policy provides coverage under a Coverage Section only if purchased by the **Insured** and indicated by an "X" below.

| Liability Coverage Section | Premium |
|---|---|
| ☒ Directors and Officers Liability Coverage Section | ████ |
| ☒ Employment Practices Liability Coverage Section | ████ |
| ☒ Fiduciary Liability Coverage Section | ████ |
| ☐ Employed Lawyers Liability Coverage Section | N/A |
| ☐ Crime Coverage Section | N/A |
| ☐ Kidnap and Ransom/Extortion Coverage Section | N/A |
| **Total Policy Premium** | ████ |

**ITEM 4.    LIMITS OF LIABILITY AND RETENTIONS OR DEDUCTIBLES**

**A.  LIMIT OF LIABILITY AND RETENTION FOR EACH COVERAGE SECTION**
    (Other than the Crime and Kidnap and Ransom/Extortion Coverage Sections.)

| Coverage Section | Separate Limit of Liability | Shared Limit of Liability | Retention* |
|---|---|---|---|
| Directors and Officers Liability Coverage Section | $2,000,000 | Shared With: N/A | $50,000     each and every Claim (not applicable to Insuring Agreements A, D, E, G and H)<br><br>$100,000  each and every Antitrust Claim under Insuring Agreement D<br><br>$150,000 each and every Regulatory Claim under Insuring Agreement E |
| Employment Practices Liability Coverage Section | $1,000,000 | Shared With: N/A | $75,000 each and every Claim |
| Third Party Liability Coverage Sublimit of Liability | Included | N/A | |
| Fiduciary Liability Coverage Section | $1,000,000 | Shared With: N/A | $0 each and every Claim |
| Employed Lawyers Coverage Section | N/A | N/A<br>Shared With: N/A | each and every Claim |

*With respect to all Coverage Sections listed above, no Retention amount is applicable to Non-Indemnifiable Loss.*

**B.  AGGREGATE LIMIT OF LIABILITY**

| $4,000,000 |
|---|

*The Aggregate Limit of Liability set forth above is the maximum Limit of Liability of the Insurer for all Loss for which coverage is provided under all Coverage Sections listed in Item 4.A. above.  This Aggregate Limit of Liability does not apply to the Crime and Kidnap and Ransom/Extortion Coverage Sections.*

**C.  LIMITS OF LIABILITY AND DEDUCTIBLES FOR CRIME COVERAGE SECTION**

ALLIED WORLD 001652

| Insuring Agreement | Limit of Liability for a Single Loss | Deductible, each Single Loss |
|---|---|---|
| Insuring Agreement A "Employee Theft" Coverage | N/A | N/A |
| Insuring Agreement B "Forgery or Alteration" Coverage | N/A | N/A |
| Insuring Agreement C "Inside the Premises" Coverage | N/A | N/A |
| Insuring Agreement D "In Transit" Coverage | N/A | N/A |
| Insuring Agreement E "Computer Fraud" Coverage | N/A | N/A |
| Insuring Agreement F "Funds Transfer Fraud" Coverage | N/A | N/A |
| Insuring Agreement G "Money Orders and Counterfeit Currency Fraud" Coverage | N/A | N/A |
| Insuring Agreement H "Credit Card Fraud " Coverage | N/A | N/A |

**D.  CRIME COVERAGE SECTION AGGREGATE LIMIT OF LIABILITY**

| N/A |
|---|

*This Aggregate Limit of Liability set forth above is the maximum Limit of Liability of the Insurer for all loss for which coverage is provided under the Crime Coverage Section.*

**E.  LIMITS OF INSURANCE AND RETENTIONS FOR KIDNAP AND RANSOM/EXTORTION COVERAGE SECTION**

| Insuring Agreement | Limit of Insurance, Per Insured Event | Annual Aggregate Limit of Insurance | Retention, Per Insured Event |
|---|---|---|---|
| Insuring Agreement A "Kidnap and Ransom/Extortion" | N/A | N/A | N/A |
| Insuring Agreement B "In-Transit/Custody" | N/A | N/A | N/A |
| Insuring Agreement C "Expenses" | N/A | N/A | N/A |
| Insuring Agreement D "Personal Loss" | N/A Per Insured Person; N/A Per Insured Event | N/A | N/A |
| Insuring Agreement E "Legal Costs" | N/A | N/A | N/A |

**F.  OTHER COVERAGE LIMITS AND SUBLIMITS**

| Coverage | Limit of Liability |
|---|---|
| Dedicated Excess Coverage for All Insured Persons (D&O) | $500,000 |
|  |  |
| Sublimit of Liability for: |  |
|  |  |
| Anti-Trust Claims Coverage (D&O): | $2,000,000 |
| Regulatory Claims Coverage (D&O): | $150,000 |
| HIPAA Fines and Penalties Coverage (D&O): | $25,000 |
| Crisis Event Coverage/Response Costs (D&O): | $5,000 |
| EMTALA Coverage (D&O): | $50,000 |

ALLIED WORLD 001653

| | |
|---|---|
| IRS Actions, Defense Only Coverage (D&O): | $25,000 |
| Excess Benefits Transactions Excise Tax Coverage (D&O) | $50,000 |
| | |
| FLSA Violations, Defense Only Coverage (EPL) | $25,000 |
| | |
| Voluntary Compliance Program Coverage (Fiduciary) | $25,000 |
| HIPAA Claim Coverage (Fiduciary) | $25,000 |
| | |
| Restoration Expenses (Crime) | N/A |
| Authentication Expenses (Crime) | N/A |
| | |
| This product provides the following coverage options if indicated by an "X" below:<br>Punitive Damages coverage options for the D&O and EPL Coverage Sections:<br>☒   D&O Punitive Damages Sublimit of Liability:<br>☒   EPL Punitive Damages Sublimit of Liability: | <br><br><br>$2,000,000<br>$1,000,000 |

### ITEM 5.   COVERAGE DATES

| Coverage Section | Date |
|---|---|
| Directors and Officers Liability Coverage Section | Pending or Prior Date: May 18, 2007 |
| Employment Practices Liability Coverage Section | Pending or Prior Date: May 18, 2007 |
| Fiduciary Liability Coverage Section | Pending or Prior Date: May 18, 2007 |
| Employed Lawyers Liability Coverage Section | Pending or Prior Date: N/A |
| Crime Coverage Section | N/A |
| Kidnap and Ransom/Extortion Coverage Section | N/A |

### ITEM 6.   DISCOVERY PERIOD

| | |
|---|---|
| 1 Year: | **150%** |

ALLIED WORLD 001654

**ITEM 7.**     **ADDRESS OF INSURER FOR NOTICES UNDER THIS POLICY**

      **A.**  <u>**Claim-Related Notices**</u>**:**
          **ALLIED WORLD SPECIALTY INSURANCE COMPANY**
          **ATTN: CLAIMS DEPARTMENT**
          **1690 New Britain Ave., Suite 101**
          **Farmington, CT 06032**

          **or**
          **noticeofloss@awac.com**

      **B.**  <u>**All Other Notices:**</u>
          **ALLIED WORLD SPECIALTY INSURANCE COMPANY**
          **(c/o Allied World Assurance Company)**
          **199 WATER STREET**
          **NEW YORK, NY 10038**

In Witness Whereof, the **Insurer** has caused this Policy to be executed and attested. This Policy shall not be valid unless countersigned by a duly authorized representative of the **Insurer**.

President                            Secretary

**Authorized Representative**

ALLIED WORLD 001655

Directors & Officers Liability ☒
Employed Lawyers Liability ☐
Employment Practices Liability ☒
Fiduciary Liability ☒

## ENDORSEMENT NO. 1

## WASHINGTON AMENDATORY ENDORSEMENT

This Endorsement, effective at 12:01 a.m. on October 1, 2019, forms part of

|            |                                          |
|------------|------------------------------------------|
| Policy No. | 0312-0123                                |
| Issued to  | American Behavioral Health Systems, Inc. |
| Issued by  | Allied World Specialty Insurance Company |

To be attached to and form a part of all Management Liability Insurance Policies written in the State of Washington.

This endorsement modifies insurance coverage provided under the FORCEFIELD HEALTHCARE ORGANIZATIONS MANAGEMENT LIABILITY PACKAGE POLICY.

In consideration of the premium charged, in connection with the Coverage Section(s) selected above, it is hereby agreed that:

A.    Section IX. CANCELLATION AND NON RENEWAL, of the General Terms and Conditions, is hereby amended to add the following additional Subsection E.:

"E.    Copies of all notices shall be sent to the agent of record and to each loss payee or other person shown by the policy to have an interest in any loss."

B.    Section IX. CANCELLATION AND NON RENEWAL, of the General Terms and Conditions, is hereby amended to add the following additional Subsection F.:

"F.    RENEWAL ON ALTERED TERMS

If the **Insurer** decides to increase the Total Policy Premium or changes any condition in the Policy or any Coverage Section which would limit or restrict coverage, the **Insurer** will deliver or mail to the **Named Insured** at the address set forth in Item 1. of the Declarations written notice advising of the **Insurer's** action, which will include the amount of premium increase or describe the changes to the Policy or Coverage Sections, at least twenty (20) days before the expiration of the **Policy Period**. Proof of mailing of any notice shall be sufficient proof of notice."

C.    It is understood and agreed that Subsection G. in Section III. EXCLUSIONS of the Fiduciary Liability Coverage Section is deleted in its entirety and replaced by the following (provided that this Coverage Section is purchased by the **Insured** as indicated in Item 3. of the Declarations):

"G.    alleging, arising out of, based upon, attributable to, directly or indirectly resulting from, or in consequence of, or in any way involving, actual, alleged or threatened discharge, dispersal, release, escape, seepage, transportation, emission, treatment, removal or

ALLIED WORLD 001656

disposal of **Pollutants** into or on real or personal property, water or the atmosphere; or seeking any **Cleanup Costs**; provided however, that this Exclusion shall not apply to any **Non-Indemnifiable Loss** constituting damages to a **Plan**, except for **Non-Indemnifiable Loss** constituting **Cleanup Costs**, or to any damage caused by heat, smoke or fumes from a hostile fire;"

D.    It is understood and agreed that and Subsection I. in Section III. EXCLUSIONS of the Employed Lawyers Liability Coverage Section is deleted in its entirety and replaced by the following (provided that this Coverage Section is purchased by the **Insured** as indicated in Item 3. of the Declarations):

"I.    alleging, arising out of, based upon, attributable to, directly or indirectly resulting from, or in consequence of, or in any way involving, the actual, alleged or threatened discharge, dispersal, release, escape, seepage, transportation, emission, treatment, removal or disposal of **Pollutants** into or on real or personal property, water or the atmosphere; or seeking **Cleanup Costs**; provided however, that this Exclusion shall not apply to any damage caused by heat, smoke or fumes from a hostile fire."

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

ALLIED WORLD 001657

Directors & Officers Liability ⊠
Employed Lawyers Liability ☐
Employment Practices Liability ☐
Fiduciary Liability ☐

## ENDORSEMENT NO. 2

### MAJOR SECURITY HOLDER CLAIMS EXCLUSION

This Endorsement, effective at 12:01 a.m. on October 1, 2019, forms part of

| | |
|---|---|
| Policy No. | 0312-0123 |
| Issued to | American Behavioral Health Systems, Inc. |
| Issued by | Allied World Specialty Insurance Company |

In consideration of the premium charged, in connection with the Coverage Section(s) selected above, it is hereby agreed that:

The **Insurer** shall not be liable to make any payment for **Loss** from any **Claim** made against any **Insured** by or on behalf of, or in the name or right of, any past, present or future security holder of the **Company**, or the estate, beneficiaries, heirs, legal representatives or assigns of such security holder, who owns or owned as of the date of the **Claim**, or previously did own, beneficially or in trust, separately or in the aggregate, a 5% or more equity interest in the **Company**, whether such equity interest is in the form of common stock, preferred stock, membership units or other equity interest, including, but not limited to, any such **Claim** in the form of a  security holder derivative action or any representative class action.

Solely for the purpose of this Endorsement, the term "security holder" shall be deemed to include any member or other equity interest owner of a limited liability company.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

PP 00068 00 (01/10)

ALLIED WORLD 001658

Directors & Officers Liability ☒
Employed Lawyers Liability ☐
Employment Practices Liability ☐
Fiduciary Liability ☐

**ENDORSEMENT NO. 3**

**FULLY NON-RESCINDABLE**

This Endorsement, effective at 12:01 a.m. on October 1, 2019, forms part of

       Policy No.    0312-0123
       Issued to     American Behavioral Health Systems, Inc.
       Issued by    Allied World Specialty Insurance Company

In consideration of the premium charged, in connection with the Coverage Sections(s) selected above, it is hereby agreed that:

Section VII. REPRESENTATIONS AND SEVERABILITY, paragraph C. is deleted in its entirety and replaced by the following:

    "C.    Under no circumstances shall the coverage under any Insuring Agreement of this Coverage Section be deemed void, whether by rescission or otherwise, but such coverage will be subject to all other terms, conditions and exclusions of this Policy."

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
                     Authorized Representative

Page 1 of 1

ALLIED WORLD 001659

Directors & Officers Liability ☐
Employed Lawyers Liability ☐
Employment Practices Liability ☐
Fiduciary Liability ☒

## ENDORSEMENT NO. 4

## AMEND HIPAA COVERAGE

This Endorsement, effective at 12:01 a.m. on October 1, 2019, forms part of

      Policy No.     0312-0123
      Issued to      American Behavioral Health Systems, Inc.
      Issued by     Allied World Specialty Insurance Company

In consideration of the premium charged, in connection with the Coverage Sections(s) selected above, it is hereby agreed that:

Section II. DEFINITIONS, Subsection K. is amended to read as follows:

   "**K.**    **"HIPAA Claim"** means a **Claim** alleging, arising out of, based upon or attributable to a violation of the Health Insurance Portability and Accountability Act of 1996 and any amendments thereto ("HIPAA"), but solely with respect to records or information held by the **Company** in connection with the administration of a **Plan** solely for the benefit of its **Employees**."

All other terms, conditions and limitations of this Policy shall remain unchanged.

 

_____
Authorized Representative

ALLIED WORLD 001660

**Directors & Officers Liability** ☒
**Employed Lawyers Liability** ☐
**Employment Practices Liability** ☐
**Fiduciary Liability** ☐

## ENDORSEMENT NO. 5

## AMEND HIPAA COVERAGE

This Endorsement, effective at 12:01 a.m. on October 1, 2019, forms part of

| | |
|---|---|
| Policy No. | 0312-0123 |
| Issued to | American Behavioral Health Systems, Inc. |
| Issued by | Allied World Specialty Insurance Company |

In consideration of the premium charged, in connection with the Coverage Sections(s) selected above, it is hereby agreed that:

No coverage shall be available under this Coverage Section, pursuant to Insuring Agreement F. or otherwise, for any **Claim** based upon or arising out of, in whole or in part, any for an actual or alleged act, error or omission of an **Insured** in violation of HIPAA, relating to records or information held by the **Company** in connection with the administration of a **Plan** for the benefit of its **Employees**.

It is understood and agreed that the **Insured**'s sole and exclusive remedy for such **Claims** under this Policy is pursuant to the Fiduciary Liability Coverage Section.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

ALLIED WORLD 001661

**Directors & Officers Liability** ☒
**Employed Lawyers Liability** ☐
**Employment Practices Liability** ☐
**Fiduciary Liability** ☐

## ENDORSEMENT NO. 6

## ANTITRUST COVERAGE SUBJECT TO CO-INSURANCE

This Endorsement, effective at 12:01 a.m. on October 1, 2019, forms part of

Policy No.      0312-0123
Issued to       American Behavioral Health Systems, Inc.
Issued by       Allied World Specialty Insurance Company

In consideration of the premium charged, in connection with the Coverage Section(s) selected above, it is hereby agreed that:

Notwithstanding any language to the contrary in this Policy, and after the Retention amount stated in Item 4.A. of the Declarations for each Antitrust Claim has been satisfied, the **Insurer** shall only pay 85%, and the **Insured** shall pay the other 15%, of any **Loss** that the **Insurer** would otherwise be legally obligated to pay under this Policy; provided however, that this shall not operate to reduce the **Insurer's** Sublimit of Liability for Claims for **Antitrust Activities** under this Policy.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

ALLIED WORLD 001662

Directors & Officers Liability ☒
Employed Lawyers Liability ☐
Employment Practices Liability ☐
Fiduciary Liability ☐

## ENDORSEMENT NO. 7

## PRE-APPROVED CRISIS MANAGEMENT FIRM(S)

This Endorsement, effective at 12:01 a.m. on October 1, 2019, forms part of

| | |
|---|---|
| Policy No. | 0312-0123 |
| Issued to | American Behavioral Health Systems, Inc. |
| Issued by | Allied World Specialty Insurance Company |

In consideration of the premium charged, in connection with the Coverage Section(s) selected above, it is hereby agreed that:

The following Crisis Management Firms shall be deemed approved in advance by the **Insurer** pursuant to Section II.E. of the Policy:

| Crisis Management Firm and Address | Contact Information |
|---|---|
| **Abernathy MacGregor Group** | |
| New York Office<br>277 Park Avenue<br>39th Floor<br>New York, NY 10172<br>www.abmac.com | Kendell Moore<br>Senior Vice President<br>Office: 212-371-5999<br>Cell: 646-784-5654<br>Email: kem@abmac.com |
| | Rhonda Barnat<br>Managing Director<br>Office: 212-371-5999<br>Cell: 917-912-6378<br>Home: 646-478-8740<br>Email:  rb@abmac.com |
| | Paige McKenna<br>Vice President<br>Office: 212-371-5999<br>Cell: 646-276-8152<br>Email: pkm@abmac.com |
| **Singer Associates** | |
| San Francisco Office<br>47 Kearny Street<br>Second Floor<br>San Francisco, CA 94108<br>www.singer-associates.com | Pete Hillan<br>Partner<br>Office: 415-227-9700<br>Cell: 831-227-5984<br>Email: pete@singersf.com |
| | Adam Alberti<br>Managing Partner<br>Office: 415-227-9700<br> x105 |

ALLIED WORLD 001663

| | |
|---|---|
| | Cell: 415-225-2443<br>Home: 650-620-9120<br>Email: adam@singersf.com |
| | Jason Barnett<br>Partner<br>Office: 415-227-9700<br> x106<br>Cell: 415-999-0917<br>Home: 415-644-0800<br>Email:  barnett@singersf.com |
| | Sam Singer<br>President<br>Office: 415-227-9700<br> x101<br>Cell: 415-336-4949<br>Home: 510-644-3636<br>Email: singer@singersf.com |
| **Kroll** | |
| New York Office<br>55 East 52nd Street 21st Floor<br>New York, NY 10055<br>www.kroll.com | Timothy Horner<br>Managing Director<br>Office: 212-833-3366<br>Cell: 646-739-9428<br>Email: thorner@kroll.com |

The foregoing approval, and the **Insurer's** obligation to reimburse the **Named Insured** for **Response Costs** paid to such firm pursuant to this Endorsement, is expressly conditioned on the following:

(a)     The **Insurer** shall be reasonably satisfied that such firm is able and competent to provide those services outlined in Section II.E. of the Policy;

(b)     The **Insurer** shall pay such firm at an hourly or otherwise agreed upon rate which is equivalent to the rate that the **Insurer** customarily pays for such firms in the same, or in a comparable, geographic location, and fees of such firm in excess of the hourly or otherwise agreed upon rate customarily paid by the **Insurer** shall be uninsured; and

(c)     Such firm shall in all respects adhere to any guidelines issued by the **Insurer** and updated from time to time.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
                              Authorized Representative

ALLIED WORLD 001664

**Directors & Officers Liability** ☒
**Employed Lawyers Liability** ☐
**Employment Practices Liability** ☒
**Fiduciary Liability** ☒

## ENDORSEMENT NO. 8

### ACCEPT COMPETITORS APPLICATION

This Endorsement, effective at 12:01 a.m. on October 1, 2019, forms part of

Policy No.       0312-0123
Issued to        American Behavioral Health Systems, Inc.
Issued by        Allied World Specialty Insurance Company

In consideration of the premium charged, in connection with the Coverage Section(s) selected above, it is hereby agreed that:

The application for Directors and Officers Liability Insurance submitted to RSUI, and dated June 27, 2019, by American Behavioral Health Systems, Inc., shall be treated as if it were submitted directly to the **Insurer** identified in the Declarations, and the **Insurer** shall succeed to the rights and interests of the insurer named in that application.

Such application will be treated as the **Application** for this Policy.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

PP 00361 00 (12/10)              Page 1 of 1

ALLIED WORLD 001665

**Directors & Officers Liability** ☒
**Employed Lawyers Liability** ☐
**Employment Practices Liability** ☒
**Fiduciary Liability** ☒

## ENDORSEMENT NO. 9

### NEWLY ACQUIRED ENTITIES
### ASSET/REVENUE THRESHOLD

This Endorsement, effective at 12:01 a.m. on October 1, 2019, forms part of

| | |
|---|---|
| Policy No. | 0312-0123 |
| Issued to | American Behavioral Health Systems, Inc. |
| Issued by | Allied World Specialty Insurance Company |

In consideration of the premium charged, in connection with the Coverage Sections(s) selected above, it is hereby agreed that:

1.    The following Section XX. is hereby added to the General Terms and Conditions:

XX.    NEWLY ACQUIRED ENTITIES OR ASSETS

If, during the **Policy Period** any **Company** acquires any assets or revenues or acquires any entity or organization by merger or acquisition and, at the time of such transaction, either: (a) the assets so acquired, or the assets of the entity so acquired, equal or exceed 10% of the total assets of the **Company** as reflected in the **Company's** most recent consolidated financial statements; or (b) the additional revenue resulting from the merger or acquisition equals or exceeds 10% of the total revenue of the **Company** as reflected in the **Company's** most recent consolidated financial statements or as reflected in the most recent **Application** on file with the **Insurer**;

then, there shall be no coverage under this Policy for **Loss** from **Claims** for **Wrongful Acts** which arise out of or relate to the entity, organization, assets or revenues acquired or merged with, unless: (a) the **Insurer** receives a written request from the **Insured** to extend coverage under the Policy together with such information regarding details of the transaction as the **Insurer** requests, and (b) the **Insurer** specifically agrees by written endorsement to this Policy to provide such coverage upon such terms, conditions and limitations, including any additional premium, at its sole discretion the **Insurer** may require.

ALLIED WORLD 001666

2.    Section II. GENERAL DEFINITIONS, of the General Terms and Conditions, Subsection G. the definition of "**Subsidiary**" is deleted in its entirety and replace with the following:

G.    "**Subsidiary**" means:

    (1)    any for-profit entity in which the **Named Insured** has **Management Control** ("Controlled Entity") before the Inception Date set forth in Item 2. of the Declarations, either directly or indirectly through one or more other Controlled Entities;

    (2)    any for-profit entity, of which the **Named Insured** acquires **Management Control** during the **Policy Period**, either directly or indirectly through one or more other Controlled Entities; provided that: (a) the assets of the for-profit entity so acquired are less than 10% of the total assets of the **Company** as reflected in the **Company's** most recent consolidated financial statements; <u>and</u> (b) the additional revenue of the for-profit entity is less than 10% of the total revenue of the **Company** as reflected in the **Company's** most recent consolidated financial statements or as reflected in the most recent **Application** on file with the **Insurer**;

    (3)    any not-for-profit organization sponsored exclusively by a **Company** prior to the **Policy Period**;

    (4)    any not-for-profit organization sponsored exclusively by a **Company** during the **Policy Period**; provided that: the assets of the not-for-profit entity are less than 10% of the total assets of the **Company** as reflected in the **Company's** most recent consolidated financial statements; <u>and</u> (b) the additional revenue of the not-for-profit organization is less than 10% of the total revenue of the **Company** as reflected in the **Company's** most recent consolidated financial statements or as reflected in the most recent **Application** on file with the **Insurer**.

Coverage afforded under this Policy for a **Claim** made against any **Insured** relating to a **Wrongful Act** of a **Subsidiary**, shall only apply to **Wrongful Acts** committed or allegedly committed after the effective date such organization or entity becomes a **Subsidiary** and prior to the effective date that such organization or entity ceases to be a **Subsidiary**.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

ALLIED WORLD 001667

Directors & Officers Liability ☒
Employed Lawyers Liability ☐
Employment Practices Liability ☒
Fiduciary Liability ☒

### ENDORSEMENT NO. 10

### AMEND RETENTION PROVISION

This Endorsement, effective at 12:01 a.m. on October 1, 2019, forms part of

   Policy No.  0312-0123
   Issued to   American Behavioral Health Systems, Inc.
   Issued by   Allied World Specialty Insurance Company

In consideration of the premium charged, in connection with the Coverage Section(s) selected above, it is hereby agreed that:

Subsection IV. of the GENERAL TERMS AND CONDITIONS, entitled "RETENTION," Subsection B. is amended to read as follows:

  B.  In any **Claim**, the application of the Retention to **Loss** under one Insuring Agreement or other provision of the Policy, including any Coverage Section or any Endorsement thereto, shall not reduce the Retention that applies to **Loss** under any other Insuring Agreement or other provision of the Policy, including any Coverage Section or any Endorsement thereto. If different Retention amounts apply to different parts of a **Claim**, different parties named in a **Claim**, or different allegations within a **Claim**, only one Retention shall apply to all **Loss** from such **Claim**, which shall be the highest single Retention applicable to such **Claim**.

All other terms, conditions and limitations of this Policy shall remain unchanged.

                     _____
                           Authorized Representative

ALLIED WORLD 001668

| | |
|---|---|
| **Directors & Officers Liability** | ☒ |
| **Employed Lawyers Liability** | ☐ |
| **Employment Practices Liability** | ☒ |
| **Fiduciary Liability** | ☒ |

## ENDORSEMENT NO. 11

## AMEND DISCOVERY PERIOD PROVISION

This Endorsement, effective at 12:01 a.m. on October 1, 2019, forms part of

| | |
|---|---|
| Policy No. | 0312-0123 |
| Issued to | American Behavioral Health Systems, Inc. |
| Issued by | Allied World Specialty Insurance Company |

In consideration of the premium charged, in connection with the Coverage Section(s) selected above, it is hereby agreed that Section VI. Of the General Terms and Conditions is amended to read as follows:

## VI.   DISCOVERY PERIOD

A.   If this Policy, or one or more Coverage Sections of this Policy, is cancelled by either the **Named Insured** or the **Insurer** for any reason other than non-payment of premium, or the **Insurer** refuses to renew this Policy, the **Insured(s)** shall have the right to purchase a Discovery Period as indicated in Item 6. of the Declarations,  following the effective date of such cancellation or non-renewal.  In the event of cancellation or non-renewal of one or more Coverage Sections of this Policy, the **Insured** may purchase a Discovery Period only with respect to the Coverage Sections that have been cancelled or non-renewed.

B.   The **Insured's** right to purchase a Discovery Period shall lapse unless written notice of its election to purchase such Discovery Period and the additional premium for such Discovery Period, is received by the **Insurer** within sixty (60) days after such cancellation or non-renewal.

C.   The additional premium for the Discovery Period shall be determined by multiplying the applicable percentage set forth in Item 6. of the Declarations by either: the Total Policy Premium, in the event that a Discovery Period is elected for the entire Policy; or by the premium amount(s) for the individual Coverage Section(s), in the event that a Discovery Period is elected only for individual Coverage Section(s).

D.   During the Discovery Period, the **Insured** may provide the **Insurer** with notice, pursuant to Section V. of this General Terms and Conditions, of **Claims** first made during the Discovery Period, for **Wrongful Acts** occurring prior to the effective date of the cancellation or nonrenewal,  and otherwise covered by this Policy.

E.   The election of a Discovery Period does not increase or reinstate the Limits of Liability set forth in Item 4. of the Declarations.

F.   The premium for the Discovery Period shall be fully earned at inception of the Discovery Period, and the Discovery Period shall be non-cancellable.

ALLIED WORLD 001669

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

ALLIED WORLD 001670

**Directors & Officers Liability** ☒
**Employed Lawyers Liability** ☐
**Employment Practices Liability** ☒
**Fiduciary Liability** ☒

## ENDORSEMENT NO. 12

### WASHINGTON DUTY TO DEFEND COVERAGE

This Endorsement, effective at 12:01 a.m. on October 1, 2019, forms part of

| | |
|---|---|
| Policy No. | 0312-0123 |
| Issued to | American Behavioral Health Systems, Inc. |
| Issued by | Allied World Specialty Insurance Company |

In consideration of the premium charged, in connection with the Coverage Sections(s) selected above, it is hereby agreed that:

1.   Section V. of the Coverage Section(s), or Section IV. of the Employed Lawyers Coverage Section if purchased, is deleted in its entirety and replaced with the following:

   **DEFENSE AND SETTLEMENT OF A CLAIM**

   A.   As part of and subject to the applicable Limit of Liability set forth in Item 4. of the Declarations, the **Insurer** will have the right and duty to defend any **Claim** which is covered in whole or in part under the Insuring Agreements, even if such **Claim** is groundless, false or fraudulent.

   B.   From the date the **Claim** is first made against an **Insured** to the date when the **Insurer** takes on the defense of such **Claim**, the **Insureds** shall take no action, or fail to take any required action, that prejudices the rights of any **Insured** or the **Insurer** with respect to such **Claim**.

   C.   The **Insurer** shall have the right to investigate and conduct negotiations and, with the **Insured's** consent, which shall not be unreasonably withheld, enter into the settlement of any **Claim** that the **Insurer** deems appropriate.  In the event the **Insured** refuses to consent to a settlement acceptable to the claimant in accordance with the **Insurer's** recommendation, the **Insurer's** liability for **Loss** on account of such **Claim** shall not exceed:

   (a)   the amount for which the **Insurer** could have settled the **Claim**; plus;

   (b)   any **Defense Costs** incurred up to the date the **Insured** refused to settle such **Claim**; plus

   (c)   80% of covered **Loss**, other than **Defense Costs**, in excess of the amount for which the **Insurer** could have settled the **Claim**.

   The remaining amount of any **Loss**, including any **Defense Costs** incurred after the date the **Insured** refused to settle such **Claim**, shall be carried by the **Insured** at its own risk

ALLIED WORLD 001671

and be uninsured.

However, in no event shall the **Insurer's** liability exceed the applicable Limit of Liability for this Coverage Section, as set forth in Item 4. of the Declarations.

D.    The **Insured** shall have the right to effectively associate with the **Insurer** in the defense and the negotiation of any settlement of the **Claim**, subject to the provisions of this Section V.  However, no **Insured** may incur any **Defense Costs** or admit liability for, or settle, or offer to settle, any **Claim** without the **Insurer's** written consent.  Any **Loss** incurred by the **Insured(s)** and/or any settlements or judgments agreed to by the **Insured(s)** without such consent shall not be covered by this Policy.

E.    The **Insurer** shall pay **Defense Costs** excess of the applicable Retention, subject to all other terms and conditions of this Policy.  In the event and to the extent that the **Insureds** shall not be entitled to payment of such **Defense Costs** under the terms and conditions of this Coverage Section, such payments by the **Insurer** shall be repaid to the **Insurer** by the **Insureds**, severally and according to their respective interests.

F.    The **Insurer** shall not be obligated to defend or continue to defend a **Claim**, or to pay or Lreimburse **Defense Costs**, after the applicable Limit of Liability has been exhausted.

2.    Section V. of the Coverage Section does not apply to Crisis Event Coverage provided under the Directors and Officers Liability Coverage Section, if purchased.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

ALLIED WORLD 001672

Directors & Officers Liability ☒
Employed Lawyers Liability ☐
Employment Practices Liability ☐
Fiduciary Liability ☐

### ENDORSEMENT NO. 13

### AMEND HIPAA COVERAGE

This Endorsement, effective at 12:01 a.m. on October 1, 2019, forms part of

|  |  |
|---|---|
| Policy No. | 0312-0123 |
| Issued to | American Behavioral Health Systems, Inc. |
| Issued by | Allied World Specialty Insurance Company |

In consideration of the premium charged, in connection with the Coverage Section(s) selected above, it is hereby agreed that:

1.    Section I. Insuring Agreement F. HIPAA Claims Coverage, is deleted in its entirety and replaced with the following:

**F.    HIPAA Claims Coverage**

The **Insurer** shall pay on behalf of the **Insureds**:

(1)    **Defense Expenses**, subject to the Sublimit of Liability for Regulatory Claims set forth in Item 4.F. of the Declarations and the Retention for Regulatory Claims set forth in Item 4.A. of the Declarations; and

(2)    **Loss** in the form of fines and penalties as described in Definition P(6), subject to the Sublimit of Liability for HIPAA Fines and Penalties set forth Item 4.F. of the Declarations and the Retention for Regulatory Claims set forth in Item 4.A. of the Declarations;

which amounts are part of and not in addition to the Limit of Liability for this Coverage Section set forth in Item 4.A. of the Declarations;

arising from a **Claim**, first made during the **Policy Period** (or Discovery Period, if applicable) against the **Insureds** for an actual or alleged act, error or omission of an **Insured** in violation of the Health Insurance Portability and Accountability Act of 1996 (Public Law 104-191) and any rules or regulations promulgated thereunder, and any amendments thereto ("HIPAA"), and reported to the **Insurer** in accordance with Section V. of the General Terms and Conditions.

2.    Section II. DEFINITIONS, Subsection W. the definition of "**Regulatory Wrongful Act**," is amended to also include an actual or alleged act, error or omission of an **Insured** in violation of the Health Insurance Portability and Accountability Act of 1996 (Public Law 104-191) and any rules or regulations promulgated thereunder, and any amendments thereto ("HIPAA").

ALLIED WORLD 001673

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

ALLIED WORLD 001674

| | |
|---|---|
| **Directors & Officers Liability** | ☒ |
| **Employed Lawyers Liability** | ☐ |
| **Employment Practices Liability** | ☐ |
| **Fiduciary Liability** | ☐ |

## ENDORSEMENT NO. 14

### AMEND DEFINITION OF EMPLOYEE
### (DIRECTORS & OFFICERS LIABILITY)

This Endorsement, effective at 12:01 a.m. on October 1, 2019, forms part of

Policy No.    0312-0123
Issued to     American Behavioral Health Systems, Inc.
Issued by     Allied World Specialty Insurance Company

In consideration of the premium charged, in connection with the Coverage Section(s) selected above, it is hereby agreed that the term "**Employee**" defined in Section II. Definitions G. of the Directors and Officers Liability Coverage Section is deleted in its entirety and replaced as follows:

"G.    '**Employee**' means any:

(1)    person who was, now is, or shall become a full-time, part-time, seasonal, or temporary employee of the **Company**, other than an **Executive**, but only while that person is acting in their capacity as such;

(2)    a member of the staff or faculty of the **Company**, including a member of the medical staff; or a member of a duly constituted committee of the **Company**, but only while that person is acting in their capacity as such;

(3)    an **Independent Contractor**, or any person leased to the **Company**, but only while that person is acting in their capacity as such, if the **Company** indemnifies such leased person or **Independent Contractor** in the same manner as the **Company's** employees described in paragraph (1); and

(4)    volunteer, whose labor and service is engaged  and directed by the **Company**, but only while that person is acting in their capacity as such."

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

ALLIED WORLD 001675

**Directors & Officers Liability** ☒
**Employed Lawyers Liability** ☐
**Employment Practices Liability** ☐
**Fiduciary Liability** ☐

## ENDORSEMENT NO. 15

### SECURITIES EXCLUSION WITH PRIVATE OFFERING EXCEPTION

This Endorsement, effective at 12:01 a.m. on October 1, 2019, forms part of

        Policy No.      0312-0123
        Issued to       American Behavioral Health Systems, Inc.
        Issued by       Allied World Specialty Insurance Company

In consideration of the premium charged, in connection with the Coverage Section(s) selected above, it is hereby agreed that:

No coverage will be available under this Policy for **Loss** from any **Claim** alleging, arising out of, based upon, or attributable to, any actual or alleged:

1.     violation of the Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Company Act of 1940, any state securities or "blue sky" law, or any other federal, state or local securities law, or any rule or regulation promulgated under any of the foregoing; or

2.     act, error, omission, misstatement, misleading statement, or breach of duty by an **Insured** or any individual for whom the **Insured** is liable, in connection with the purchase or sale, or offer to purchase or sell, securities of the **Company** or any **Outside Entity**.

Provided, however, that this Exclusion shall not apply to the offer or sale by the **Company** of its securities which are exempted from registration with the Securities Exchange Commission ("SEC") pursuant to Regulation D of Section 3(b) of the Securities Act of 1933 (17 CFR Section 230.501 et seq.).

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
                  Authorized Representative

ALLIED WORLD 001676

**Directors & Officers Liability** ☒
**Employed Lawyers Liability** ☐
**Employment Practices Liability** ☒
**Fiduciary Liability** ☐

### ENDORSEMENT NO. 16

### SEPARATE RETENTION FOR CLAIMS BROUGHT
### BY HIGH WAGE EARNERS ENDORSEMENT

This Endorsement, effective at 12:01 a.m. on October 1, 2019, forms part of

Policy No.    0312-0123
Issued to    American Behavioral Health Systems, Inc.
Issued by    Allied World Specialty Insurance Company

In consideration of the premium charged, in connection with the Coverage Section(s) selected above, it is hereby agreed that:

1.    Solely with respect to any **Claim** that is made in connection with the Coverage Section(s) selected above brought by or on behalf of a "High Wage Earner", the following increased Retention shall apply:

   $100,000 each and every **Claim** brought by or on behalf of a High Wage Earner

2.    For the purpose of this endorsement, the following shall apply:

   A.    "High Wage Earner" means:

      (a)    any **Employee** whose "Annual Compensation" is $200,000 or higher; or
      (b)    any **Independent Contractor** whose compensation pursuant to the written contract or agreement between the **Independent Contractor** and the **Company** is $200,000 or higher on an annualized basis on the date of the **Claim** is made.
   B.    "Annual Compensation" means:

      (a)    the most recent annual base salary on the date of the **Claim** is made; and
      (b)    the annualized amount of any performance-based cash commission or bonuses earned in the twelve (12) months preceding the date of the **Claim** is made.

      "Annual Compensation" shall not include Stock Benefits.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

ALLIED WORLD 001677

Directors & Officers Liability ☒
Employed Lawyers Liability ☐
Employment Practices Liability ☒
Fiduciary Liability ☐

### ENDORSEMENT NO. 17

### EMPLOYEE PRIVACY WRONGFUL ACT ENDORSEMENT –
### INCLUDES BIOMETRIC DATA;
### DEFENSE COSTS ONLY;
### SUBLIMIT APPLIES

This Endorsement, effective at 12:01 a.m. on October 1, 2019, forms part of

| | |
|---|---|
| Policy No. | 0312-0123 |
| Issued to | American Behavioral Health Systems, Inc. |
| Issued by | Allied World Specialty Insurance Company |

In consideration of the premium charged, it is understood and agreed that each Coverage Section selected above is amended as follows:

1.    The definition of **"Wrongful Act"** is amended by adding the following:

**"Wrongful Act"** shall also include an **Employee Privacy Wrongful Act** actually or allegedly committed by the **Company** or any **Insured Person** while acting in their capacity as such.

2.    The coverage provided by this Endorsement shall only apply to the payment of **Defense Costs**.

3.    The **Insurer's** maximum aggregate limit of liability for all such **Defense Costs** on account of any **Claim** alleging an **Employee Privacy Wrongful Act**, as defined below, shall be $25,000, which amount shall be part of, and not in addition to, the **Insurer's** Aggregate Limit of Liability set forth in the Declarations.

4.    Solely for purposes of this Endorsement, the following defined terms shall apply:

**"Employee Privacy Wrongful Act"** means the failure of the **Company** or any **Insured Person** to:

(1)    secure **Information** from unauthorized access by another person or entity which results in injury to an **Employee**; or

(2)    provide notice to an **Employee** whose **Information** was accessed or may have been accessed by an unauthorized person or entity, as required by any federal, state or local statutory or common law.

**"Information"** means an **Employee's** personally identifiable information including the **Employee's** first name, or first initial, and last name, in combination with any of the following: (i) social security number, driver's license number or other personal identification number (including an employee identification number or student identification number); (ii) financial account

ALLIED WORLD 001678

information (including any bank account number or retirement account number); (iii) credit, debit or other payment car number; (iv) individually identifiable health information pursuant to the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") held by the **Company**; or (v) an individual's biometric data, which is the measurement and statistical analysis of an individual's physical and behavioral characteristics including, but not limited to, DNA, fingerprints, face, hand, retina or ear features, odor, gestures, voice, typing rhythm or gait,  held by the **Company**; provided, however, that the above information is intended by the **Company** to be accessible only by persons or entities specifically authorized by the **Company** to have access to such information.

5.    Solely for purposes of this Endorsement, if a **Claim** gives rise to coverage under both this Policy and under any other policy issued by the **Insurer** or an affiliate thereof then the limit of liability provided by virtue of this Policy shall be reduced by the limit of liability provided under such other policy.  The maximum amount payable under all such policies shall not exceed the limit of liability of the policy which has the highest available limit of liability.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

ALLIED WORLD 001679

## POLICYHOLDER DISCLOSURE STATEMENT
## UNDER THE TERRORISM RISK INSURANCE ACT

The Insured is hereby notified that under the federal Terrorism Risk Insurance Act, as amended, (the "Act"), the Insured has a right to purchase insurance coverage for losses arising out of an Act of Terrorism, as defined in Section 102(1) of the Act:  The term "act of terrorism" means any act that is certified by the Secretary of the Treasury in consultation with the Secretary of Homeland Security and the Attorney General of the United States to be an act of terrorism; to be a violent act or an act that is dangerous to  human life, property, or infrastructure; to have resulted in damage within the United States, or outside of the United States in case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. The Insured should read the Act for a complete description of its coverage. The decision to certify or not to certify an event as an Act of Terrorism covered by this law is final and not subject to review.

The Insured should know that where coverage is provided by this policy for losses caused by a Certified Act of Terrorism may be partially reimbursed by the United States Government under a formula established by federal law.  However, the insured's policy may contain other exclusions that might affect coverage, such as an exclusion for nuclear events.  Under the formula, the United States generally reimburses 85%  through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019; and 80% beginning on January 1, 2020, of covered terrorism losses exceeding the statutorily established deductible that must be met by the Insurer, and which deductible is based on a percentage of the Insurer's direct earned premiums for the year preceding the Act of Terrorism

Be advised that the Terrorism Risk Insurance Act, as amended, contains a $100 billion cap on all losses resulting from Certified Acts of Terrorism.  If aggregate insured losses attributable to Certified Acts of Terrorism exceed $100 billion in a calendar year the United States Government shall not make any payment for any portion of the amount of such loss that exceeds $100 billion.  If aggregate insured losses attributable to Acts of Terrorism exceed $100 billion in a Program Year and the Insurer has met its deductible under the Act, the Insurer shall not be liable for payment of any portion of the losses that exceeds $100 billion, and in such case, insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

Coverage for "insured losses" as defined in the Act is subject to the coverage terms, conditions, amounts and limits in this policy applicable to losses arising from events other than Acts of Terrorism. **Please see the options available to the Insured below.**

- If you, the Insured, **elect to purchase coverage** in accordance with the Act, there will be $0.00 additional premium due and **no further action or response is needed by you**.

- If you, the Insured, reject coverage in accordance with the Act, you must check below and sign and return this form to the Insurer.

☐     I HEREBY REJECT THIS COVERAGE.

_____          _____
Signature of Insured                                      Insured's Name

_____          _____
Print/Title                                                     Insured's Policy Number

_____
Date

ALLIED WORLD 001680

**ALLIED WORLD SPECIALTY INSURANCE COMPANY**

# FORCEFIELD℠
## HEALTHCARE ORGANIZATIONS
### MANAGEMENT LIABILITY PACKAGE POLICY
### GENERAL TERMS AND CONDITIONS

In consideration of the payment of the premium and in reliance upon the **Application**, which shall be deemed to be attached to, incorporated into, and made a part of this Policy, and subject to these General Terms and Conditions and any purchased Coverage Sections, as indicated in Item 3. of the Declarations, ALLIED WORLD SPECIALTY INSURANCE COMPANY (the **"Insurer"**) and the **Named Insured**, on behalf of all **Insureds**, agree as follows:

**I.    TERMS AND CONDITIONS**

The terms and conditions set forth in these General Terms and Conditions shall apply to all purchased Coverage Sections of this Policy, except the Crime and the Kidnap and Ransom/Extortion Coverage Sections.  The terms appearing in these General Terms and Conditions, which are defined in a specific Coverage Section, shall have the meaning provided for such terms in such Coverage Section for purposes of determining coverage thereunder.  The terms and conditions of each Coverage Section apply only to that particular Coverage Section.  If any of the terms or conditions in these General Terms and Conditions are inconsistent or in conflict with the terms and conditions of any specific Coverage Section, the terms and conditions of such Coverage Section shall control.

**II.   GENERAL DEFINITIONS**

A.    **"Application"** means all applications, including any attachments and other materials provided therewith or incorporated therein, submitted in connection with the underwriting of this Policy or for any other policy of which this Policy is a renewal, replacement or which it succeeds in time.

B.    **"Company"** means:

(1)    the **Named Insured**;

(2)    any **Subsidiary** of the **Named Insured**; and

(3)    the **Named Insured** or **Subsidiary** as a debtor, a debtor-in-possession or equivalent status.

C.    **"Management Control"** means:

(1)    owning interests representing more than fifty percent (50%) of the voting, appointment or designation power for the selection of a majority of the Board of Directors of a corporation; the Management Committee members of a joint venture; or the members of the Management Board of a limited liability company; or

(2)    having the right, pursuant to written contract or the by-laws, charter, operating agreement or similar documents, to elect, appoint or designate a majority of: the

ALLIED WORLD 001681

Board of Directors of a corporation; the Management Committee of a joint venture; or the Management Board of a limited liability company.

D.     **"Named Insured"** means the entity named in Item 1. of the Declarations.

E.     **"Policy Period"** means the period from the Inception Date shown in Item 2. of the Declarations to the earlier of the Expiration Date shown in Item 2. of the Declarations or the effective date of cancellation of this Policy.

F.     **"Related Claims"** means all **Claims** for **Wrongful Acts** based upon, arising out of, or in consequence of the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events.

G.     **"Subsidiary**" means:

(1)     any for-profit entity in which the **Named Insured** has **Management Control** ("Controlled Entity") before the Inception Date set forth in Item 2. of the Declarations, either directly or indirectly through one or more other Controlled Entities;

(2)     any for-profit entity, whose securities are not publicly traded, of which the **Named Insured** acquires **Management Control** during the **Policy Period**, either directly or indirectly through one or more other Controlled Entities; or

(3)     any not-for-profit organization sponsored exclusively by a **Company** prior to or during the **Policy Period**.

Coverage afforded under this Policy for a **Claim** made against any **Insured** relating to a **Wrongful Act** of a **Subsidiary**, shall only apply to **Wrongful Acts** committed or allegedly committed after the effective date such organization or entity becomes a **Subsidiary** and prior to the effective date that such organization or entity ceases to be a **Subsidiary**.

### III.     LIMITS OF LIABILITY

A.     The Limits of Liability For Each Coverage Section, as set forth in Item 4.A. of the Declarations, are the maximum Limits of Liability of the **Insurer** for all **Loss** from all **Claims** first made during the **Policy Period,** or Discovery Period if applicable, for each respective Coverage Section.

B.     The Aggregate Limit of Liability, as set forth in Item 4.B. of the Declarations, is the maximum Limit of Liability of the **Insurer** for all **Loss** from all **Claims** first made during the **Policy Period**, or Discovery Period if applicable, for all Coverage Sections listed under Item 4.A. of the Declarations and purchased by the **Insured**, regardless of whether or not the Limits of Liability for any such Coverage Sections are shared.

C.     Any Sublimit of Liability, whether set forth in Item 4.F. of the Declarations, or as otherwise provided under the terms of this Policy, shall be part of, and not in addition to, the applicable Limit of Liability set forth in Item 4.A. of the Declarations. Each Sublimit of Liability is the maximum Limit of Liability of the **Insurer** for all **Loss** from all

ALLIED WORLD 001682

**Claims** first made during the **Policy Period** or Discovery Period if applicable, to which the Sublimit of Liability applies.

D.  If any Limit of Liability for an individual Coverage Section as set forth in Item 4.A. of the Declarations is exhausted by the payment of **Loss**, all obligations of the **Insurer** under this Policy with respect to the individual Coverage Section will be completely fulfilled, and the **Insurer** will have no further obligations under this Policy of any kind with respect to the individual Coverage Section. In such event, the premium for the individual Coverage Section, as set forth in Item 3. of the Declarations, will be fully earned.

E.  Any payment of **Loss** under any Limit of Liability set forth in Items 4.A. or 4.F. of the Declarations shall reduce and may exhaust the Aggregate Limit of Liability set forth in Item 4.B. of the Declarations. If the Aggregate Limit of Liability is exhausted by the payment of **Loss**, the **Insurer** will have no further obligations of any kind with respect to this Policy, and the Total Policy Premium set forth in Item 3. of the Declarations will be fully earned.

F.  **Defense Costs** are part of, and not in addition to, the Limits of Liability set forth in Item 4. of the Declarations, and payment by the **Insurer** of **Defense Costs** shall reduce and may exhaust such Limits of Liability.

G.  The purchase of a Discovery Period pursuant to Section VI. of this General Terms and Conditions, shall neither increase nor reinstate any Limit of Liability.

## IV.  RETENTION

A.  Subject to all other terms and conditions of this Policy, the **Insurer** shall only be liable for the amount of **Loss** arising from a **Claim**, which is in excess of the applicable Retention amount as set forth in Item 4.A. of the Declarations for each Coverage Section. A single Retention amount shall apply to all **Loss** from all **Related Claims**. The Retention amount shall be borne by the **Insureds** and remain uninsured.

B.  The application of the Retention to **Loss** under one Coverage Section shall not reduce the Retention that applies to **Loss** under any other Coverage Section. If different Retention amounts apply to different parts of a **Claim**, the applicable Retentions shall be applied separately to each part of the **Claim**, and the sum of such Retention amounts shall not exceed the largest single Retention amount which applies to such **Claim**.

C.  If the **Company** is legally required or permitted to indemnify its **Insured Person** for any **Loss**, and does not do so for any reason, the **Insurer** shall not require payment of the applicable Retention by the **Insured Person**. However, the **Company** hereby agrees to reimburse the **Insurer** for the full amount of such Retention immediately upon request, unless the **Company** is unable to do so solely by reason of **Financial Impairment**.

## V.  NOTICE OF CLAIM

A.  The **Insured(s)** shall, as a condition precedent to the obligations of the **Insurer** under this Policy, give written notice to the **Insurer**, at either the physical or email address indicated in Item 7. of the Declarations, of a **Claim** made against an **Insured** as soon as practicable after the **Company's** Chief Executive Officer, or a member of the

ALLIED WORLD 001683

**Company's** Legal Department or Risk Management Department, or any individual with functionally equivalent responsibilities, becomes aware of the **Claim**.

B.    Notwithstanding the above, in no event shall notice of any **Claim** be provided to the **Insurer** later than ninety (90) days after the end of the **Policy Period** or Discovery Period if applicable.  If mailed, the date of mailing shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice.

C.    If during the **Policy Period** an **Insured** shall become aware of any circumstances which may reasonably be expected to give rise to a **Claim** being made against an **Insured** and shall, during the **Policy Period**, give written notice to the **Insurer** at either the physical or email address indicated in Item 7. of the Declarations, of the circumstances, including the **Wrongful Act**, allegations anticipated, and the reasons for anticipating such a **Claim**, with full particulars as to dates, persons and entities involved, any **Claim** that is subsequently made against the **Insured** alleging, arising out of, based upon or attributable to such circumstances, shall be deemed to have been made at the time written notice of such circumstances was first given to the **Insurer**.

D.    All **Related Claims** shall be deemed to be a single **Claim** made on the date on which the earliest **Claim** within such **Related Claims** was first made, or when the earliest **Claim** within such **Related Claims** is treated as having been made in accordance with Section V.C. above, whichever is earlier.  In such event, only one Limit of Liability and one Retention shall apply.

## VI.    DISCOVERY PERIOD

A.    If this Policy, or one or more Coverage Sections of this Policy, is cancelled by either the **Named Insured** or the **Insurer** for any reason other than non-payment of premium, or the **Insurer** refuses to renew this Policy, the **Insured(s)** shall have the right to purchase a Discovery Period of up to three (3) years following the effective date of such cancellation or non-renewal.  In the event of cancellation or non-renewal of one or more Coverage Sections of this Policy, the **Insured** may purchase a Discovery Period only with respect to the Coverage Sections that have been cancelled or non-renewed.

B.    If an Organizational Change as defined in Section X. occurs, the **Insured(s)** shall have the right to purchase a Discovery Period of up to six (6) years following the effective date of such Organizational Change.

C.    The **Insured's** right to purchase a Discovery Period shall lapse unless written notice of its election to purchase such Discovery Period and the additional premium for such Discovery Period, is received by the **Insurer** within sixty (60) days after such cancellation, non-renewal or Organizational Change.

D.    The additional premium for a Discovery Period of one (1) to six (6) years shall be determined by multiplying the applicable percentage set forth in Item 6. of the Declarations by either: the Total Policy Premium, in the event that a Discovery Period is elected for the entire Policy; or by the premium amount(s) for the individual Coverage Section(s), in the event that a Discovery Period is elected only for individual Coverage Section(s).

ALLIED WORLD 001684

E.  During the Discovery Period, the **Insured** may provide the **Insurer** with notice, pursuant to Section V. of this General Terms and Conditions, of **Claims** first made during the Discovery Period, for **Wrongful Acts** occurring prior to the effective date of the cancellation or nonrenewal, or the effective date of the Organizational Change, and otherwise covered by this Policy.

F.  The election of a Discovery Period does not increase or reinstate the Limits of Liability set forth in Item 4. of the Declarations.

G.  The premium for the Discovery Period shall be fully earned at inception of the Discovery Period, and the Discovery Period shall be non-cancellable.

## VII.  OTHER INSURANCE

A.  The insurance provided by this Policy, other than the Employment Practices Liability Coverage Section, shall apply only as excess over any other valid and collectible insurance, whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written specifically as excess insurance over the applicable Limit of Liability provided by this Policy. This Policy shall specifically be excess of any other valid and collectible insurance pursuant to which any other insurer has a duty to defend a **Claim** for which this Policy may be obligated to pay **Loss**. This Policy shall not be subject to the terms and conditions of any other insurance policy.

B.  With respect to the insurance provided by the Employment Practices Liability Coverage Section, such insurance shall be primary, unless expressly written to be excess over other applicable insurance.

C.  With respect to the insurance provided by the Employed Lawyers Coverage Section, such insurance shall apply excess over any other Directors and Officers Liability insurance, whether available under this Policy or otherwise.

D.  In connection with any covered **Claim** made against an **Outside Entity Insured Person**, a leased employee, or an **Independent Contractor**, and subject to all other terms and conditions herein, this Policy shall apply specifically excess of any indemnification and any other insurance coverage available to the **Outside Entity Insured Person**, leased employee or **Independent Contractor**. In the event such other insurance coverage is also provided by the **Insurer** or any affiliate thereof (or would be provided except for the application of any retention, exhaustion of a limit of liability, or failure to submit notice of a claim) then the **Insurer's** maximum aggregate Limit of Liability for all **Loss** in connection with a **Claim** covered, in whole or in part, by this Policy and such other insurance policy, shall be the greater of: (1) the applicable Limit of Liability of this Policy; or (2) the applicable limit of liability of such other insurance policy.

## VIII.  COVERAGE EXTENSIONS

A.  This Policy shall cover **Loss** arising from any **Claims** made against the estates, heirs, or legal representatives of any deceased person who was an **Insured Person** at the time the **Wrongful Acts** upon which such **Claims** are based were committed; provided, however, that this extension shall not afford coverage for any **Claim** for any actual or alleged **Wrongful Act** by or on the part of any such estates, heirs, or legal representatives, but

ALLIED WORLD 001685

shall apply only to **Claims** arising out of any actual or alleged **Wrongful Acts** of an **Insured Person**.

B.    This Policy shall also cover **Loss** arising from any **Claims** made against the legal representatives of any incompetent, insolvent or bankrupt person who was an **Insured Person** at the time the **Wrongful Acts** upon which such **Claims** are based were committed; provided, however, that this extension shall not afford coverage for any **Claim** for any actual or alleged **Wrongful Act** by or on the part of any such legal representatives, but shall apply only to **Claims** arising out of any actual or alleged **Wrongful Acts** of an **Insured Person**.

C.    This Policy shall also cover **Loss** arising from any **Claims** made against the lawful spouse or domestic partner (whether such status is derived by reason of the statutory law or common law of any applicable jurisdiction in the world, or by any formal program established by the **Company**) of an **Insured Person** for all **Claims** arising solely out of his or her status as the spouse or domestic partner of an **Insured Person**, including a **Claim** that seeks damages recoverable from marital community property, property jointly held by the **Insured Person** and the spouse or domestic partner, or property transferred from the **Insured Person** to the spouse or domestic partner; provided, however, that this extension shall not afford coverage for any **Claim** for any actual or alleged **Wrongful Act** by or on the part of the spouse or domestic partner, but shall apply only to **Claims** arising out of any actual or alleged **Wrongful Acts** of an **Insured Person**.

D.    The coverage extensions set forth in this Section VIII. are subject to all other terms and conditions of this Policy.

IX.    **CANCELLATION AND NON RENEWAL**

A.    This Policy, or any individual Coverage Section, may be cancelled by the **Named Insured** by sending written prior notice to the **Insurer** stating when thereafter the cancellation of the Policy, or the individual Coverage Section, shall be effective. The Policy, or the individual Coverage Section, terminates at the date and hour specified in such notice. The **Insurer** shall retain the pro rata proportion of the premium for either the Policy, or the individual Coverage Section cancelled, as applicable.

B.    This Policy, or any individual Coverage Section, shall not be cancelled by the **Insurer** except by reason of non-payment of premium by the **Insured**. The **Insurer** may cancel the Policy by delivering or mailing to the **Named Insured**, by registered mail or by courier, at the address set forth in Item 1. of the Declarations, written notice stating when, not less than twenty (20) days thereafter, cancellation shall be effective. The mailing of such notice as aforesaid shall be sufficient proof of notice. In the event of such cancellation, the Policy will be deemed terminated as of the date indicated in the **Insurer's** written notice of cancellation to the **Named Insured**.

C.    Payment or tender of any unearned premium by the **Insurer** shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable.

D.    The **Insurer** shall have no obligation to renew this Policy or any individual Coverage Section. In the event the **Insurer** decides to non-renew this Policy or any individual Coverage Section, it shall deliver or mail to the **Named Insured**, at the address set forth

ALLIED WORLD 001686

in Item 1. of the Declarations, written notice of such decision at least sixty (60) days prior to the expiration of the **Policy Period**.

X.    **ORGANIZATIONAL CHANGES**

    A.    If, during the **Policy Period**:

        (1)    the **Named Insured** shall consolidate with, merge into, or sell all or substantially all of its assets to any other person or entity or group of persons or entities acting in concert; or

        (2)    any person or entity or group of persons or entities acting in concert shall acquire more than fifty percent (50%) of the assets or voting rights of the **Named Insured**,

    (any event described in paragraphs (1) or (2) are referred to herein as an "Organizational Change") then this Policy shall continue in full force and effect as to **Wrongful Acts** occurring prior to the effective date of the Organizational Change. However, there shall be no coverage afforded by this Policy for any actual or alleged **Wrongful Act** occurring after the effective date of the Organizational Change. This Policy shall be non-cancellable and the entire premium shall be deemed fully earned upon the effective date of the Organizational Change.

    B.    The **Insured** shall have the right to purchase a Discovery Period described in Section VI. of this General Terms and Conditions, in the event of an Organizational Change.

    C.    The **Named Insured** shall give the **Insurer** written notice of the Organizational Change as soon as practicable, but no later than thirty (30) days after the effective date of the Organizational Change.

XI.    **AUTHORIZATION AND NOTICES**

The **Named Insured** shall act on behalf of all **Insureds** with respect to all matters as respects this Policy including: (1) giving of notice of **Claim**; (2) the defense or settlement of a **Claim**; (3) giving and receiving of all correspondence and information; (4) giving and receiving notice of cancellation; (5) payment of premiums; (6) receiving of any return premiums; (7) receiving and accepting of any endorsements issued to form a part of this Policy; and (8) the exercising of any right to a Discovery Period.

XII.    **VALUATION AND CURRENCY**

All amounts stated in this Policy are expressed in United States dollars and all amounts payable under this Policy are payable in United States dollars. If a judgment rendered or settlement entered into under this Policy is stated in a currency other than United States dollars, then payment under this Policy shall be made in United States dollars at the rate of exchange published in the *Wall Street Journal* on the date the final judgment is rendered or the settlement payment is established.

ALLIED WORLD 001687

XIII.    **TERRITORY**

This Policy extends to **Wrongful Acts** occurring, or **Claims** made, anywhere in the world, to the extent permitted by law.

XIV.    **ASSIGNMENT AND CHANGES TO THE POLICY**

A.    This Policy and any and all rights hereunder are not assignable without the prior written consent of the **Insurer**.

B.    Notice to any agent or knowledge possessed by any agent or person acting on behalf of the **Insurer**, will not result in a waiver or change in any part of this Policy or prevent the **Insurer** from asserting any right under the terms and conditions of this Policy. The terms and conditions of this Policy may only be waived or changed by written endorsement signed by the **Insurer**.

XV.    **SUBROGATION**

In addition to any right of subrogation existing at law, in equity or otherwise, in the event of any payment by the **Insurer** under this Policy, the **Insurer** shall be subrogated to the extent of such payment to all of the **Insured(s)'** rights of recovery. The **Insured(s)** shall execute all papers required (including those documents necessary for the **Insurer** to bring suit or other form of proceeding in their name) and do everything that may be necessary to pursue and secure such rights.

XVI.    **ACTION AGAINST THE INSURER**

No action may be taken against the **Insurer** unless, as a condition precedent thereto, there shall have been full compliance with all material terms of this Policy and the amount of the **Insured's** obligation has been fully determined either by judgment against the **Insured** after actual trial, or by written agreement of the **Insured**, the claimant and the **Insurer**.

XVII.    **CONFORMITY TO STATUTE**

A.    Any terms of this Policy which are in conflict with the terms of any applicable laws construing this Policy, including any endorsement to this Policy which is required by any state Department of Insurance or equivalent authority ("State Amendatory Endorsement"), are hereby amended to conform to such laws. Nothing herein shall be construed to restrict the terms of any State Amendatory Endorsement.

B.    In the event any portion of this Policy shall be declared or deemed invalid or unenforceable under applicable law, such invalidity or unenforceability shall not affect the validity or enforceability of any other portion of this Policy.

XVIII. **BANKRUPTCY**

The bankruptcy or insolvency of the **Insured** will not relieve the **Insurer** from liability under this Policy.

ALLIED WORLD 001688

**XIX.    HEADINGS**

The descriptions in the headings and any subheading of this Policy, including any titles given to any endorsement attached hereto, are inserted solely for convenience and do not constitute any part of this Policy's terms or conditions.

ALLIED WORLD 001689

**ALLIED WORLD SPECIALTY INSURANCE COMPANY**

# FORCEFIELD℠
## HEALTHCARE ORGANIZATIONS
### MANAGEMENT LIABILITY PACKAGE POLICY
### DIRECTORS AND OFFICERS LIABILITY COVERAGE SECTION

In consideration of the payment of the premium and in reliance upon the **Application**, which shall be deemed to be attached to, incorporated into, and made a part of this Policy, and subject to the General Terms and Conditions and this Coverage Section, ALLIED WORLD SPECIALTY INSURANCE COMPANY (the **"Insurer"**) and the **Named Insured**, on behalf of all **Insureds**, agree as follows:

I.  **INSURING AGREEMENTS**

    A.  **Claims Against Insured Persons – Non-indemnifiable Loss Coverage**

        The **Insurer** shall pay on behalf of any **Insured Person** the **Loss** arising from a **Claim**, first made during the **Policy Period** (or Discovery Period, if applicable) against such **Insured Person** for a **Wrongful Act**, and reported to the **Insurer** in accordance with Section V. of the General Terms and Conditions, unless the **Company** is required or permitted to pay such **Loss** to or on behalf of the **Insured Person** as indemnification.

    B.  **Claims Against Insured Persons – Indemnifiable Loss Coverage**

        The **Insurer** shall pay on behalf of the **Company** the **Loss** arising from a **Claim**, first made during the **Policy Period** (or Discovery Period, if applicable) against any **Insured Person** for a **Wrongful Act**, and reported to the **Insurer** in accordance with Section V. of the General Terms and Conditions, if the **Company** pays such **Loss** to or on behalf of the **Insured Person** as indemnification.

    C.  **Company Claims Coverage**

        The **Insurer** shall pay on behalf of the **Company** the **Loss** arising from a **Claim**, first made during the **Policy Period** (or Discovery Period, if applicable) against the **Company** for a **Wrongful Act**, and reported to the **Insurer** in accordance with Section V. of the General Terms and Conditions.

    D.  **Antitrust Activities Coverage**

        The **Insurer** shall pay on behalf of the **Insureds**, subject to the Sublimit of Liability set forth in Item 4.F. of the Declarations, the **Loss** arising from a **Claim**, first made during the **Policy Period** (or Discovery Period, if applicable) against the **Insureds** for **Antitrust Activities**, and reported to the **Insurer** in accordance with Section V. of the General Terms and Conditions.

ALLIED WORLD 001690

E.    **Regulatory Claims Coverage**

The **Insurer** shall pay on behalf of the **Insureds**, subject to the Sublimit of Liability set forth in Item 4.F. of the Declarations, the **Loss** arising from a **Claim**, first made during the **Policy Period** (or Discovery Period, if applicable) against the **Insureds** for a **Regulatory Wrongful Act**, and reported to the **Insurer** in accordance with Section V. of the General Terms and Conditions.

F.    **HIPAA Claims Coverage**

The **Insurer** shall pay on behalf of the **Insureds**:

(1)    **Defense Expenses**, subject to the Limit of Liability set forth in Item 4.A. of the Declarations; and

(2)    **Loss** in the form of fines and penalties as described in Definition P(6), subject to the applicable Sublimit of Liability set forth Item 4.F. of the Declarations, which is part of and not in addition to the Limit of Liability set forth in Item 4.A. of the Declarations;

arising from a **Claim**, first made during the **Policy Period** (or Discovery Period, if applicable) against the **Insureds** for an actual or alleged act, error or omission of an **Insured** in violation of the Health Insurance Portability and Accountability Act of 1996 (Public Law 104-191) and any rules or regulations promulgated thereunder, and any amendments thereto ("HIPAA"), and reported to the **Insurer** in accordance with Section V. of the General Terms and Conditions.

G.    **Crisis Event Coverage**

The **Insurer** shall reimburse the **Company**, subject to the Sublimit of Liability set forth in Item 4.F. of the Declarations, **Response Costs** incurred by the **Company** in response to a **Crisis Event** which first takes place during the **Policy Period**.  A **Crisis Event** must be reported promptly to the **Insurer**, and **Response Costs** must be reported to the **Insurer** within thirty (30) days from the date that such **Response Costs** are first incurred by the **Insured**.  This Insuring Agreement G. shall not provide coverage for any **Claim** that arises from a **Crisis Event**.

H.    **Dedicated Excess Coverage for Insured Persons**

The **Insurer** shall provide excess coverage under this Insuring Agreement to **Insured Persons**, which shall apply excess over and follow the form of Insuring Agreement A. of this Policy.  The Limit of Liability set forth in Item 4.F. of the Declarations for Dedicated Excess Coverage for all Insured Persons, shall apply excess of Insuring Agreement A. of this Policy only and shall be the most the **Insurer** shall pay in the aggregate under this Insuring Agreement for all **Claims** against all **Insured Persons**.  Such Limit of Liability is in addition to the Aggregate Limit of Liability for this Directors and Officers Liability Coverage Section as stated in Item 4.A. of the Declarations.

ALLIED WORLD 001691

(1)    Such Limit of Liability shall apply only after:

    (a)    the full amount of the Aggregate Limit of Liability for this Directors and Officers Liability Coverage Section stated in Item 4.A. of the Declarations has been fully exhausted due to the payment of **Loss** from **Claims** under this Policy; and

    (b)    the **Company** or the **Insured Persons** shall have paid the full amount of any applicable Retention; and

    (c)    any other valid and collectible insurance written as excess over the coverage provided by this Policy has been exhausted by reason of the payment of loss thereunder.

The coverage provided by this Insuring Agreement H. shall become primary and continue in force as primary insurance only in the event of the conditions set forth in paragraphs H(1)(a), (b) and (c) above, and shall not become primary insurance for any other reason.

I.    **EMTALA Coverage**

The **Insurer** shall pay on behalf of the **Insureds**, subject to the Sublimit of Liability set forth in Item 4.F. of the Declarations, **Loss** in the form of fines and penalties as described in Definition P(5), arising from a **Claim** first made during the **Policy Period** (or Discovery Period, if applicable), by or on behalf of a governmental or regulatory agency, against the **Insureds** for an actual or alleged act, error or omission of an **Insured** in violation of the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. Section 1395dd et seq., and any rules or regulations promulgated thereunder, and any amendments thereto, or any similar foreign, federal, state or local statute or common law (Hereinafter "EMTALA"), and reported to the **Insurer** in accordance with Section V. of the General Terms and Conditions.  The coverage under this provision shall be the sole and exclusive coverage for **Claims** relating to EMTALA under this Policy.

J.    **IRS Actions, Defense Only Coverage**

The **Insurer** shall pay on behalf of the **Insureds**, subject to the Sublimit of Liability set forth in Item 4.F. of the Declarations, **Defense Costs** arising from a **Claim**, first made during the **Policy Period** (or Discovery Period, if applicable) against the **Insureds**, and which is brought by the U.S. Internal Revenue Service seeking **IRS Fines and Penalties**, and reported to the **Insurer** in accordance with Section V. of the General Terms and Conditions.

Provided that in no event shall this Section be construed to provide coverage for any **Loss** or for the actual **IRS Fines and Penalties** in such **Claims** described above, other than **Defense Costs**.

K.    **Excess Benefits Transactions Excise Tax Coverage**

The **Insurer** shall pay on behalf of the **Insureds**, subject to the Sublimit of Liability set forth in Item 4.F. of the Declarations, the **Loss** arising from a **Claim**, first made during the **Policy Period** (or Discovery Period, if applicable) against the **Insureds**, and which is brought by the U.S. Internal Revenue Service seeking

ALLIED WORLD 001692

**Excess Benefits Transactions Excise Taxes**, and reported to the **Insurer** in accordance with Section V. of the General Terms and Conditions. This coverage shall apply only if such amounts are insurable by law, and only to the extent that indemnification by the **Company** for **Excess Benefits Transactions Excise Taxes** is not expressly prohibited in the bylaws, certificate of incorporation or other organizational documents of the **Company**.

## II.    DEFINITIONS

A.    "**Affiliate**" means any person or entity that directly, or indirectly through one or more intermediaries:

    (1)    controls or is controlled by, or is in common control with, another person or entity; or

    (2)    is a successor-in-interest to another person or entity.

B.    "**Antitrust Activities**" means price fixing; restraint of trade; monopolization; unfair trade practices; or a violation of the Federal Trade Commission Act, as amended, the Sherman Act the Clayton Act, as amended, or any other federal statute involving antitrust, monopoly, price fixing, price discrimination, predatory pricing or restraint of trade activities, or of any rules or regulations promulgated under or in connection with any of the foregoing statutes, or of any similar provision of any federal, state or local statute, rule or regulation or common law.

C.    "**Claim**" means any:

    (1)    written demand for monetary, non-monetary or injunctive relief made against an **Insured**;

    (2)    judicial, administrative or regulatory proceeding, whether civil or criminal, for monetary, non-monetary or injunctive relief commenced against an **Insured**, including any appeal therefrom, which is commenced by:

        (a)    service of a complaint or similar pleading;
        (b)    return of an indictment, information or similar document (in the case of a criminal proceeding); or
        (c)    receipt or filing of a notice of charges;

    (3)    arbitration or mediation proceeding commenced against an **Insured** by service of a demand for arbitration or mediation;

    (4)    formal civil or criminal investigation of an **Insured Person**, which is commenced by the filing or issuance of a notice of charges, Wells Notice, formal investigative order or similar document identifying such **Insured Person** as a person against whom a proceeding identified in paragraphs (2) or (3) above may be commenced;

    (5)    formal administrative or regulatory investigation of an **Insured**, which is commenced by the filing or issuance of a notice of charges, formal

ALLIED WORLD 001693

investigative order or similar document identifying an **Insured** as a person or entity against whom a proceeding identified in paragraphs (2) or (3) above may be commenced;

(6)    written request to toll or waive the applicable statute of limitations, or to waive any contractual time bar, relating to a potential **Claim** against an **Insured** for a **Wrongful Act**;

(7)    official request for **Extradition** of any **Insured Person**, or the execution of a warrant for the arrest of any **Insured Person** where such execution is an element of **Extradition**.

A **Claim** shall be deemed first made when any **Insured** first receives notice of the **Claim**.

D.    "**Crisis Event**" means an event that, in the absence of **Crisis Management Services** and in the good faith opinion of an **Executive** of the **Named Insured**, has resulted in or may result in:

(1)    **Loss** for which coverage would be provided under this Coverage Section; and

(2)    Significant adverse media coverage for the **Company**.

A **Crisis Event** will include the following, so long as the requirements set forth in paragraphs D.(1) and D.(2) above are met:

(a)    Mass Tort:
The public announcement or accusation that the **Company** has caused the bodily injury, sickness, disease, death or emotional distress of a group of persons, or widespread damage to or destruction of property, including the loss of use thereof.

(b)    Debt Default:
The public announcement that the **Company** has defaulted or intends to default on its debt, or intends to engage in a debt restructuring.

(c)    Bankruptcy:
The public announcement that the **Company** intends to file for bankruptcy protection or that a third party is seeking to file for involuntary bankruptcy on behalf of the **Company**; or the imminence of bankruptcy proceedings, whether voluntary or involuntary.

(d)    Loss of Key **Executives**; Loss of **Employees**:
The public announcement of the death or resignation of one or more key **Executives** of the **Company**; or a substantial lay-off of **Employees** of the **Company** (i.e., the elimination of multiple jobs within the **Company** without regard to employee

ALLIED WORLD 001694

performance, when the **Company** is experiencing financial difficulties).

(e)    Regulatory Crisis:
The public announcement of the commencement, or threat of commencement, of litigation, administrative or other proceedings against the **Company** by any federal, state or local governmental or regulatory body.

(f)    Never Event:
The public announcement of an event which is included in the list of Never Events compiled by the National Quality Forum, including but not limited to abduction of a patient, infant discharged to the wrong person, patient death or serious disability associated with the use of contaminated drugs, devices, or biologics provided by the healthcare facility, or surgery performed on the wrong body part.

(g)    Child Abduction:
The public announcement of an event resulting in the seizing, abducting, holding, detaining or carrying away of a minor child, who is a patient under the care and custody of the **Insured**, from the **Insured's Premises**, without the prior consent of the **Insured** or the parents or legal guardians of such minor child, whether by an **Employee** of the **Insured** or by a third party (other than the parent or legal guardian of the minor child). This shall only apply to the abduction of a minor child who: (a) is a patient of the **Insured** at the time of the abduction; or (b) is registered at and in the care of a licensed day care facility on the **Premises** at the time of the abduction.

A "patient" as used herein, means an individual registered and admitted to the **Insured** for purposes of medical treatment.

E.    "**Crisis Management Services**" means those services performed by a firm that is either listed in an Endorsement to this Policy, or which the **Insurer** at its sole discretion has provided prior written approval for the **Company** to retain, to advise the **Company** on minimizing potential harm to the **Company's** reputation or financial condition from a covered **Crisis Event**, by maintaining and restoring public confidence in the **Company**. In the event of Child Abduction as described in Definition D., **Crisis Management Services** will also include the services of an independent security consultant, subject to the prior written consent of the **Insurer**.

F.    "**Defense Costs**" means:

(1)    reasonable and necessary fees, costs, charges or expenses resulting from the investigation, defense or appeal of a **Claim**;

ALLIED WORLD 001695

(2)    premium for an appeal, attachment or similar bond, but without any obligation to apply for and obtain such bond, in connection with a **Claim**; or

(3)    any fees, costs, charges or expenses incurred by the **Insured** at the specific written request of the **Insurer** to assist the **Insurer** in the investigation, defense or appeal of a **Claim**.

"**Defense Costs**" does not include: (a) amounts incurred by the **Insured** prior to the date a **Claim** is first made and reported to the **Insurer**; or (b) compensation or benefits of any **Insured Person** or any overhead expenses of the **Company**.

G.    "**Employee**" means any:

(1)    person who was, now is, or shall become a full-time, part-time, seasonal, or temporary employee of the **Company**, other than an **Executive**, but only while that person is acting in their capacity as such;

(2)    a member of the staff or faculty of the **Company**, including a member of the medical staff; or a member of a duly constituted committee of the **Company**, but only while that person is acting in their capacity as such;

(3)    an **Independent Contractor**, or any person leased to the **Company**, but only while that person is acting in their capacity as such, if the **Company** indemnifies such leased person or **Independent Contractor** in the same manner as the **Company's** employees described in paragraph (1); and

(3)    volunteer, whose labor and service is engaged and directed by the **Company**, but only while that person is acting in their capacity as such.

H.    "**Executive**" means any:

(1)    past, present or future duly elected or appointed director, officer, trustee, trustee emeritus, governor, management committee member or member of the board of managers of the **Company**;

(2)    with respect to any **Company** organized and operating in a foreign jurisdiction, any person in a position that is functionally equivalent to any executive position listed in paragraph (1) above; or

(3)    past, present or future General Counsel or Risk Manager of the **Company**, or any person in a position that is functionally equivalent within the **Company**.

I.    "**Excess Benefits Transactions Excise Taxes**" means taxes imposed by the U.S. Internal Revenue Service on an **Insured Person** who is an Organization Manager, as defined in Section 4958 of the Internal Revenue Code (hereinafter "IRC §4958"), as amended, as a result of such **Insured Persons** participation in an Excess Benefits Transaction, as defined in IRC §4958. Provided that an **Excess Benefits Transactions Excise Tax**, as such term is used in this Policy, shall not include any amount or tax imposed on any Disqualified Person, as

ALLIED WORLD 001696

defined in IRC §4958, who has benefited directly or indirectly from such Excess Benefits Transaction.

J.      "**Extradition**" means any formal process by which an **Insured Person** located in any country is surrendered to any other country for trial or otherwise to answer any criminal accusation.

K.      "**Financial Impairment**" means the **Company** becoming a debtor-in-possession; or the appointment of a receiver, conservator, liquidator, trustee, rehabilitator or similar official to control, supervise, manage or liquidate the **Company**; or the filing of a petition under the bankruptcy laws of the United States of America or any equivalent event outside the United States of America.

L.      "**Independent Contractor**" means any natural person working in the capacity of an independent contractor pursuant to a written contract or agreement between the **Independent Contractor** and the **Company**, which specifies the terms of the **Company's** engagement of the **Independent Contractor**.

M.      "**Insured**" means the **Company** and any **Insured Person**.

N.      "**Insured Person**" means any:

      (1)    **Executive**;
      (2)    **Employee**; or
      (3)    **Outside Entity Insured Person**.

O.      "**IRS Fines and Penalties**" means an assessment of taxes, initial taxes, additional taxes, tax deficiencies, excise taxes or penalties, pursuant to the following Sections of the U.S. Internal Revenue Code of 1986, as amended:

Section 4911 (tax on excess expenditures to influence legislation);
Section 4941(a) and (b) (taxes on self-dealing);
Section 4942(a) and (b) (taxes on failure to distribute income);
Section 4943(a) and (b) (taxes on excess business holding);
Section 4944(a) and (b) (taxes on investments which jeopardize charitable purposes);
Section 4945(a) and (b) (taxes on taxable expenditures);
Section 6652(c)(1)(A) (penalties for failure to file certain information returns or registration statements);
Section 6655(a)(1) (penalties for failure to pay estimated income tax);
Section 6656 (penalties for failure to make deposit of taxes).

P.      "**Loss**" means:

      (1)    damages, settlements or judgments;

      (2)    pre-judgment or post-judgment interest;

      (3)    legal costs or attorneys fees awarded by a court in favor of the claimant;

ALLIED WORLD 001697

(4)    punitive or exemplary damages, or the multiple portion of any multiplied damages award, subject to any applicable Sublimit of Liability, but only to the extent that such damages are insurable under the applicable law most favorable to the insurability of such damages;

(5)    fines or penalties levied against an **Insured** for violation of the EMTALA; if insurable under law, subject to the applicable Sublimit of Liability set forth in 4.F. of the Declarations;

(6)    fines or penalties levied against an **Insured** for a violation of HIPAA, if insurable under law, subject to the applicable Sublimit of Liability set forth in 4.F. of the Declarations;

(7)    **Excess Benefits Transactions Excise Taxes**, if insurable under law, subject to the applicable Sublimit of Liability set forth in Item 4.F. of the Declarations;

(8)    **Response Costs**, subject to the applicable Sublimit of Liability set forth in Item 4.F. of the Declarations; and

(9)    **Defense Costs**.

"**Loss**" does not include:

(a)    amounts which an **Insured** is not legally obligated to pay;
(b)    taxes; other than as specifically included above in this Definition, and only if insurable under law;
(c)    fines or penalties, other than as specifically included above in this Definition, and only if insurable under law;
(d)    amounts deemed uninsurable under law;
(e)    costs or liability incurred by any **Insured** to modify any building or property to make it more accessible or accommodating to any disabled person, or in connection with any educational, sensitivity or other corporate program, policy or seminar; or
(f)    amounts paid or incurred by the **Insureds** to comply with a judgment or settlement for non-monetary or injunctive relief.

However, this Coverage Section shall provide coverage for **Defense Costs** incurred in a **Claim** seeking amounts specified in paragraphs (a) through (f) above, subject to all other terms, conditions and exclusions of this Policy.

Q.    "**Managed Care Activities**" means any of the following services or activities: **Provider Selection Practices**; **Utilization Review**; advertising, marketing, selling, or enrollment for health care, workers' compensation, life, dental, vision, short-term disability, long-term disability, behavioral health, pharmacy benefit and consumer-directed health plans; claim services; establishing health care provider networks; reviewing the quality of **Medical Services** or providing quality assurance; design and/or implementation of financial incentive plans; wellness or health promotion education; development or implementation of clinical guidelines, practice parameters or protocols; triage for payment of **Medical Services**; and services or activities performed in the administration or

ALLIED WORLD 001698

management of health care, workers' compensation, life, dental, vision, short-term disability, long-term disability, behavioral health, pharmacy benefit and consumer-directed health plans.

R.  **"Managed Care Organization"** means any entity which performs **Managed Care Activities**, including but not limited to health maintenance organizations, physician-hospital organizations, independent practice associations, preferred provider organizations and management services organizations; except that **Managed Care Organization** shall not include a **Company** solely in its capacity as a provider of **Medical Services**, or any **Subsidiary** whose sole purpose is to provide insurance services exclusively to one or more **Companies** or its employees.

S.  **"Medical Services"** means health care, medical care, or treatment provided to any individual, including without limitation any of the following: medical, surgical, dental, psychiatric, mental health, chiropractic, osteopathic, nursing, or other professional health care; the furnishing or dispensing of medications, drugs, blood, blood products, or medical, surgical, dental, or psychiatric supplies, equipment, or appliances in connection with such care; the furnishing of food or beverages in connection with such care; the providing of counseling or other social services in connection with such care; and the handling of, or the performance of post-mortem examinations on, human bodies; but **Medical Services** shall not include **Managed Care Activities**.

T.  "**Outside Entity**" means:

   (1)  any not-for-profit entity; or

   (2)  any other entity listed as such by Endorsement attached to this Policy;

   for which an **Executive** or **Employee** acts as a director, officer, trustee, trustee emeritus, governor, management committee member or member of the board of managers or the equivalent thereof, at the specific request of the **Company**.  Any such person shall be referred to herein as an "**Outside Entity Insured Person**," but only while that person is acting in their capacity as a director, officer, trustee, trustee emeritus or governor, or the equivalent thereof, of an **Outside Entity**.

U.  **"Premises"** means that portion of any building which is owed or leased by a **Company** for the purpose of conducting its business.

V.  **"Provider Selection Practices"** means the process of evaluating, by members of a formal duly constituted professional review board or committee, any individual or entity for the purpose of selecting, contracting with or credentialing providers for **Medical Services**, including peer review, but only if performed by a **Company** which is not a **Managed Care Organization**.

W.  **"Regulatory Wrongful Act"** means any actual or alleged:

   (1)  act, error, omission, misstatement, misconduct, fraud, reckless disregard or negligence committed by an **Insured** in the performance of, or failure to perform, any of the following activities in the Medicaid, Medicare,

ALLIED WORLD 001699

Federal Employee Health Benefit or TriCare Programs:
(a) procedure coding;
(b) bill, claim, cost report or data submissions; or
(c) the calculation of managed care payments;

(2) offer, acceptance or payment by any **Insured** in exchange for any patient referral(s), in violation of any state, local, or federal law; or

(3) offer, acceptance or payment by an **Insured** in violation of any state, local or federal antikickback law.

X. "**Response Costs**" means the following amounts incurred by the **Company** solely as a result of a **Crisis Event**:

(1) amounts for the reasonable and necessary fees and expenses incurred by a firm described in Definition E. in the performance of **Crisis Management Services** for the **Company**;

(2) amounts for reasonable and necessary printing, advertising, mailing of materials, or travel by directors, officers, employees or agents of the **Company** or of a firm described in Definition E., incurred at the direction of the **Company**; and

(3) Solely in the event of a Child Abduction as described in Definition D., **Response Costs** shall also include costs and expenses incurred by the **Company** to retain an independent security consultant, and other reasonable costs or expenses incurred by an **Insured**, subject to the prior written consent of the **Insurer**.

Y. "**Utilization Review**" means the process of evaluating the appropriateness, necessity, or cost of **Medical Services** for purposes of determining whether payment or coverage for such **Medical Services** will be authorized or paid for under any health care plan. **Utilization Review** shall include prospective review of proposed payment or coverage for **Medical Services**, concurrent review of ongoing **Medical Services**, and retrospective review of already rendered **Medical Services** or already incurred costs.

Z. "**Wrongful Act**" means:

(1) with respect to an **Insured Person**, any actual or alleged act, error, omission, neglect, breach of duty, breach of trust, misstatement, or misleading statement by an **Insured Person** in his or her capacity as such, or any matter claimed against an **Insured Person** by reason of his or her status as such;

(2) with respect to an **Outside Entity Insured Person**, any actual or alleged act, error, omission, neglect, breach of duty, breach of trust, misstatement, or misleading statement by a person in his or her capacity as an **Outside Entity Insured Person** or any matter claimed against such **Outside Entity Insured Person** by reason of his or her status as such;

ALLIED WORLD 001700

(3)     with respect to the **Company**, any actual or alleged act, error, omission, neglect, breach of duty, misstatement or misleading statement by the **Company**;

(4)     with respect to the **Company** and **Insured Persons**, any actual or alleged act, error or omission in connection with the performance of or failure to perform **Provider Selection Practices**; and

(5)     with respect to the **Company** and **Insured Persons**, any actual or alleged **Regulatory Wrongful Act**.

### III.     EXCLUSIONS

This Coverage Section shall not cover any **Loss** in connection with any **Claim**:

A.     arising out of, based upon or attributable to the gaining of any profit or financial advantage or improper or illegal remuneration by an **Insured,** if a final judgment or adjudication establishes that such **Insured** was not legally entitled to such profit or advantage or that such remuneration was improper or illegal;

B.     arising out of, based upon or attributable to any deliberate criminal or deliberate fraudulent act or any wilful violation of law by an **Insured**, if a final judgment or adjudication establishes that such act or violation occurred;

In determining the applicability of Exclusions A. and B., the facts pertaining to, the knowledge possessed by, or any **Wrongful Act** committed by, any **Insured Person** shall not be imputed to any other **Insured Person**; however, the facts pertaining to, the knowledge possessed by, or any **Wrongful Act** committed by, an **Insured Person** who is a past or current Chairman of the Board, Chief Executive Officer, President or Chief Financial Officer of the **Company** shall be imputed to the **Company**.

C.     based upon, arising from, or in consequence of any actual or alleged liability of any **Insured** under any express contract or agreement; provided however, that this Exclusion shall not apply: (1) to the extent that such **Insured** would have been liable in the absence of such contract or agreement; or (2) to the payment of **Defense Costs** for that portion of such a **Claim** against an **Insured Person**;

D.     alleging, arising out of, based upon or attributable to, as of the Pending or Prior Date set forth in Item 5. of the Declarations with respect to this Coverage Section, any pending or prior: (1) litigation; or (2) administrative or regulatory proceeding or investigation, of which an **Insured** had notice, including any **Claim** alleging or derived from the same or essentially the same facts, or the same or related **Wrongful Acts**, as alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation;

E.     alleging, arising out of, based upon or attributable to the same or essentially the same facts alleged, or to the same or related **Wrongful Acts** alleged or contained, in any **Claim** which has been reported, or in any circumstances of which notice has been given, before the Inception Date of this Policy as set forth in Item 2. of

ALLIED WORLD 001701

the Declarations, under any policy, whether excess or underlying, of which this Policy is a renewal or replacement or which it may succeed in time;

F.    alleging, arising out of, based upon or attributable to any actual or alleged act or omission of any **Insured Person** serving in any capacity other than as an **Executive** or an **Employee** or as an **Outside Entity Insured Person**;

G.    brought by an **Outside Entity** or by any director, officer, trustee or governor thereof, or which is brought by any security holder of the **Outside Entity**, whether directly or derivatively, against an **Outside Entity Insured Person** serving for such **Outside Entity**;

H.    brought by or on behalf of any **Insured**, provided however, that this Exclusion shall not apply to:

    (1)    any **Claim** brought by an **Insured Person** that is in the form of a cross-claim or third-party claim for contribution or indemnity which is part of, and results directly from, a **Claim** which is not otherwise excluded under the terms of this Coverage Section;

    (2)    a shareholder derivative action, but only if such action is brought and maintained without the solicitation, approval, assistance, active participation or intervention of any **Insured** or any **Affiliate** thereof;

    (3)    any **Claim** brought by any **Executive** who has not served in such capacity, nor has acted as a consultant to the **Company**, for at least three (3) years prior to the **Claim** being first made;

    (4)    any **Claim** brought by or on behalf of **Insured Person** arising out of or based upon the violation of any foreign, federal, state or local law providing protection for whistleblowers;

    (5)    any **Claim** brought by any **Executive** of a **Company** formed and operating in a foreign jurisdiction, against such **Company** or any **Insured Person** thereof, provided that such **Claim** is brought and maintained outside the United States, Canada or any other common law country (including any territories thereof);

    (6)    any **Claim** brought or maintained by or on behalf of a bankruptcy or insolvency trustee, examiner, receiver or similar official for the **Company** or any assignee of such trustee, examiner, receiver or similar official; or

    (7)    any **Claim** brought by an **Insured Person** for any actual or alleged act error or omission by an **Insured** in connection with the performance of or failure to perform **Provider Selection Practices**;

I.    for any actual or alleged violation of the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act, the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, any rules or

ALLIED WORLD 001702

regulations of the foregoing promulgated thereunder, and any amendments thereto, or any similar foreign, federal or state statutory or common law;

J.      alleging, arising out of, based upon, or attributable to any actual or alleged bodily injury, sickness, mental anguish, emotional distress, disease or death of any person, or damage to or destruction of any tangible property, including the loss of use thereof; or for libel, slander, oral or written publication of defamatory or disparaging material or violation of any right of privacy;

provided however, that this Exclusion will not apply to allegations of mental anguish, emotional distress or libel, slander or oral or written publication of defamatory or disparaging material if and only to the extent that such allegations are made as part of a **Claim** brought by an individual who was the subject of **Provider Selection Practices** performed by the **Insured** and arising out of such **Provider Selection Practices**;

K.      alleging, arising out of, based upon, or attributable to any actual or alleged performance of or failure to perform **Medical Services**;

L.      alleging, arising out of, based upon, or attributable to any actual or alleged discrimination; harassment; retaliation (other than a whistleblower claim or a **Claim** for retaliation brought by an individual who was the subject of **Provider Selection Practices** performed by the **Insured** and arising out of such **Provider Selection Practices**); wrongful discharge; termination; or any other employment-related or employment practices claim, including but not limited to any wage-hour claim or any third-party discrimination or harassment claim;

M.      alleging, arising out of, based upon or attributable to any obligation pursuant to any workers' compensation, disability benefits, unemployment compensation, unemployment insurance, retirement benefits, social security benefits or similar law;

N.      alleging, arising out of, based upon, or attributable to, any actual or alleged act, error or omission in the performance of, or failure to perform, **Managed Care Activities** by any **Insured** or by any individual or entity for whose acts, errors or omissions an **Insured** is legally responsible, except that this Exclusion shall not apply to that portion of an otherwise covered **Claim** for **Provider Selection Practices**;

O.      alleging, arising out of, based upon, or attributable to, or in consequence of any actual or alleged plagiarism, infringement or violation of any copyright, patent, trademark or service mark or the misappropriation of intellectual property, ideas or trade secrets; provided however, that this Exclusion shall apply only to a **Claim** against the **Company** under Insuring Agreement C;

P.      alleging, arising out of, based upon, attributable to or in any way relating to any actual or alleged sexual molestation or sexual abuse, including any mental anguish or emotional distress resulting therefrom.

ALLIED WORLD 001703

IV.    **RETENTION**

No Retention amount is applicable to **Claims** for which coverage is provided under Insuring Agreements A. or H. of this Coverage Section, nor shall any Retention be applicable to the coverage provided under Insuring Agreement G.

V.    **DEFENSE AND SETTLEMENT OF A CLAIM**

A.    The **Insurer** does not assume any duty to defend any **Claim** under this Coverage Section.  However, the **Insurer** shall have the right to fully and effectively associate with the **Insured** in the control, investigation, defense and settlement of any **Claim**.

B.    The **Insured(s)** shall defend and contest any **Claim** made against them.  The **Insured** shall obtain the **Insurer's** written consent in the selection of defense counsel to represent the **Insured** with respect to any **Claim**, such consent shall not be unreasonably withheld.

C.    The **Insured(s)** shall not admit or assume any liability, incur any **Defense Costs**, make any settlement offer, enter into any settlement agreement or stipulate to any judgment without the prior written consent of the **Insurer**.  Any **Loss** incurred by the **Insured(s)** and/or any settlements or judgments agreed to by the **Insured(s)** without such consent shall not be covered by this Policy.  However, the **Insurer's** consent is not required for the **Insured** to settle a **Claim** for a **Loss** amount, including **Defense Costs** paid or incurred through and including settlement, within the applicable Retention, provided that such settlement fully resolves the **Claim** with respect to all **Insureds** and the **Insurer**.

D.    The I**nsurer** shall have the right to associate with the **Insured** in the defense of any **Claim** that can reasonably be expected to require any payment by the **Insurer**.

E.    At the request of the **Named Insured**, the **Insurer** shall reimburse **Defense Costs** in excess of the Retention prior to the final disposition of any **Claim**, subject to all other terms and conditions of this Policy.  In the event and to the extent that the **Insureds** shall not be entitled to payment of such **Defense Costs** under the terms and conditions of this Policy, such payments by the **Insurer** shall be repaid to the **Insurer** by the **Insureds**, severally and according to their respective interests.

F.    **Right to Tender Defense**

(1)    Notwithstanding the foregoing, the **Insureds** shall have the right to tender the defense of a **Claim** to the **Insurer**.

(2)    The right to tender the defense of a **Claim** to the **Insurer** shall be exercised by the **Named Insured** on behalf of all **Insureds** by providing written notice to the **Insurer** by certified mail or by email to the address of the **Insurer** set forth in Item 7.A. of the Declarations, specifically requesting the **Insurer** to assume the defense of such **Claim**.  In the event that coverage is provided for a **Claim** exclusively against an

ALLIED WORLD 001704

**Insured Person**, then such **Insured Person** shall have the right to tender the defense of the **Claim** to the **Insurer** at his or her option. The **Insured's** right to tender the defense of a **Claim** shall terminate if it is not exercised within thirty (30) days of the date the **Claim** is first made against an **Insured**. Further, from the date the **Claim** is first made against an **Insured** to the date when the **Insurer** accepts the tender of the defense of such **Claim**, the **Insureds** shall take no action, or fail to take any required action, that prejudices the rights of any **Insured** or the **Insurer** with respect to such **Claim**. In the event the **Insureds** have complied with all of the foregoing, the **Insurer** shall be obligated to assume the defense of the **Claim**, even if such **Claim** is groundless, false or fraudulent.

(3) The **Insurer's** assumption of the defense of the **Claim** shall be effective upon the **Insurer** providing written confirmation thereof to the **Named Insured**. Once the defense has been so tendered, the **Insured** shall have the right to effectively associate with the **Insurer** in the defense and the negotiation of any settlement of the **Claim**, subject to the provisions of this Section V. The **Insurer** shall not be obligated to defend or continue to defend a **Claim**, or to pay or reimburse **Defense Costs**, after the applicable Limit of Liability has been exhausted.

(4) When the **Insurer** has assumed the defense of a **Claim**, it shall have the right to investigate and conduct negotiations and, with the **Insured's** consent, which shall not be unreasonably withheld, enter into the settlement of any **Claim** that the **Insurer** deems appropriate.

(5) When the **Insurer** has assumed the defense of a **Claim**, it shall pay **Defense Costs** excess of the applicable Retention, subject to all other terms and conditions of this Policy. In the event and to the extent that the **Insureds** shall not be entitled to payment of such **Defense Costs** under the terms and conditions of this Policy, such payments by the **Insurer** shall be repaid to the **Insurer** by the **Insureds**, severally and according to their respective interests.

This Section V. shall not apply to **Crisis Event Coverage.**

**VI.    COOPERATION**

Each and every **Insured** shall give the **Insurer** full cooperation and such information as it may reasonably require relating to the defense and settlement of any **Claim** and the prosecution of any counterclaim, cross-claim or third-party claim, including without limitation the assertion of an **Insured's** indemnification or contribution rights.

**VII.    REPRESENTATIONS AND SEVERABILITY**

A.    In granting coverage under this Policy, it is agreed that the **Insurer** has relied upon the statements and representations contained in the **Application**. All such statements and representations shall be deemed to be the basis of this Policy and are to be considered as incorporated into this Policy.

ALLIED WORLD 001705

B.      The **Insureds** agree that in the event that any such statement or representation which is material to the coverage provided hereunder is not accurate and complete, then no coverage shall be available under this Policy with respect to any of the following **Insureds**:

(1)     an **Insured Person** who knew as of the Inception Date set forth in Item 2. of the Declarations, of the facts that were not accurately and completely disclosed in the **Application**;

(2)     a **Company**, under Insuring Agreement B., to the extent it indemnifies an **Insured Person** referenced in paragraph (1) above; and

(3)     a **Company**, under Insuring Agreement C., if any **Insured Person** who is a past or current Chief Executive Officer, Chief Financial Officer, President of the **Company**, or the signer of the **Application**, knew as of the Inception Date set forth in Item 2. of the Declarations, of the facts that were not accurately and completely disclosed in the **Application**, whether or not such individual knew that such facts were not accurately and completely disclosed in the **Application**.

C.      Solely with respect to Insuring Agreement A. and B. of this Coverage Section, under no circumstances shall the coverage provided thereunder be deemed void, whether by rescission or otherwise, but such coverage will be subject to all other terms, conditions and exclusions of this Policy.

D.      It is understood and agreed that this Section VII. supercedes any inconsistent language contained in the **Application**.

## VIII.   ORDER OF PAYMENTS

A.      In the event of **Loss** arising from any **Claim** for which payment is due under the provisions of this Coverage Section, but which **Loss**, in the aggregate, exceeds the remaining available Limit of Liability applicable to this Coverage Section, then the **Insurer** shall:

(1)     first, pay such **Loss** for which coverage is provided under Insuring Agreement A. of this Coverage Section;

(2)     then, with respect to whatever remaining amount of the applicable Policy Aggregate Limit of Liability is available after payment of such **Loss**, pay such **Loss** for which coverage is provided under Insuring Agreement B. of this Coverage Section, and

(3)     then, pay such **Loss** for which coverage is provided under Insuring Agreements C. through K. of this Coverage Section.

B.      In the event of **Loss** arising from a **Claim** for which payment is due under the provisions of this Coverage Section (including those circumstances described in paragraph A. of this Section VIII.), the **Insurer** shall, at the written request of the **Named Insured**:

ALLIED WORLD 001706

(1)    first pay such **Loss** for which coverage is provided under Insuring Agreement A. of this Coverage Section;

(2)    then, either pay or hold payment for such **Loss** for which coverage is provided under Insuring Agreements B. through K. of this Coverage Section.

In the event that the **Insurer** withholds payment under Insuring Agreements B. through K. of this Coverage Section pursuant to the above request, then the **Insurer** shall at any time in the future, at the request of the **Named Insured**, release such **Loss** payment to the **Company**, or make such **Loss** payment directly to the **Insured Person** in the event of covered **Loss** under any **Claim** covered under Insuring Agreement A. of this Coverage Section.

C.    The **Financial Impairment** of any **Company** or any **Insured Person** shall not relieve the **Insurer** of any of its obligations to prioritize payment of covered **Loss** under this Coverage Section pursuant to this Section VIII.

ALLIED WORLD 001707

**ALLIED WORLD SPECIALTY INSURANCE COMPANY**

# FORCEFIELD℠
## HEALTHCARE ORGANIZATIONS
### MANAGEMENT LIABILITY PACKAGE POLICY
### EMPLOYMENT PRACTICES LIABILITY COVERAGE SECTION

In consideration of the payment of the premium and in reliance upon the **Application**, which shall be deemed to be attached to, incorporated into, and made a part of this Policy, and subject to the General Terms and Conditions and this Coverage Section, ALLIED WORLD SPECIALTY INSURANCE COMPANY (the **"Insurer"**) and the **Named Insured**, on behalf of all **Insureds**, agree as follows:

I.   **INSURING AGREEMENTS**

    A.   **Employment Practices Liability Coverage**

        The **Insurer** shall pay on behalf of any **Insured** the **Loss** arising from a **Claim**, first made during the **Policy Period** (or Discovery Period, if applicable) against such **Insured** for any **Wrongful Act**, and reported to the **Insurer** in accordance with Section V. of the General Terms and Conditions and Section IV. of this Coverage Section.

    B.   **Third Party Liability Coverage**

        The **Insurer** shall pay on behalf of any **Insured** the **Loss** arising from a **Claim** for a **Third Party Wrongful Act** first made during the **Policy Period** (or Discovery Period, if applicable) against such **Insured**, and reported to the **Insurer** in accordance with Section V. of the General Terms and Conditions and Section IV. of this Coverage Section.  The Sublimit of Liability set forth in Item 4.A. of the Declarations is the **Insurer's** maximum Limit of Liability for all **Loss** arising from all **Claims** for **Third Party Wrongful Acts**.  The Sublimit of Liability for **Claims** for **Third Party Wrongful Acts** shall be part of, and not in addition to, the Limit of Liability applicable to this Coverage Section, set forth in Item 4.A. of the Declarations.

II.   **DEFINITIONS**

    A.   **"Benefits"** means perquisites, fringe benefits, deferred compensation or payments (including insurance premiums) in connection with any employee-related plan.  **Benefits** shall not include salary, wages, bonuses or non-deferred cash incentive compensation.

    B.   **"Claim"** means any:

        (1)   written demand for monetary, non-monetary or injunctive relief made against an **Insured**;

        (2)   judicial, administrative or regulatory proceeding, whether civil or criminal, for monetary, non-monetary or injunctive relief, commenced

ALLIED WORLD 001708

against an **Insured**, including any appeal therefrom, which is commenced by:

(a)     service of a complaint or similar pleading;

(b)     return of an indictment or similar document (in the case of a criminal proceeding); or

(c)     receipt or filing of a notice of charges;

(3)     arbitration or mediation proceeding commenced against an **Insured** by service of a demand for arbitration or mediation;

(4)     notification of an investigation of an **Insured** by the Equal Employment Opportunity Commission ("EEOC") or similar governmental agency commenced by the filing of a notice of charges, formal investigative order or similar document;

(5)     audit of an **Insured** conducted by the United States of America Office of Federal Contract Compliance Programs ("OFCCP"), but only if commenced by the receipt of a notice of violation, order to show cause, or a written demand for monetary or non-monetary or injunctive relief; or

(6)     written request to toll or waive the applicable statute of limitations, or to waive any contractual time-bar, relating to a potential **Claim** against an **Insured** for a **Wrongful Act**.

A **"Claim"** shall not include any labor grievance, arbitration or other proceeding pursuant to a collective bargaining agreement.

A **Claim** shall be deemed first made when any **Insured** first receives notice of the **Claim**.

C.     **"Defense Costs"** means:

(1)     reasonable and necessary fees, costs, charges or expenses incurred by or on behalf of an **Insured** in the investigation, defense or appeal of a **Claim**;

(2)     premium for an appeal, attachment or similar bond, but without any obligation to apply for and obtain such bond, in connection with a **Claim**; or

(3)     any fees, costs, charges or expenses incurred by the **Insured** at the specific written request and direction of the **Insurer**, to assist the **Insurer** in the investigation, defense or appeal of a **Claim**.

**"Defense Costs"** do not include: (a) amounts incurred prior to the date a **Claim** is first made and reported to the **Insurer**; or (b) compensation or benefits of any **Insured Person** or any overhead expenses of the **Company**.

ALLIED WORLD 001709

D. **"Discrimination"** means any violation of employment discrimination laws, including but not limited to any actual, alleged or constructive employment termination, dismissal, or discharge, employment demotion, denial of tenure, modification of any term or condition of employment, any failure or refusal to hire or promote, or any limitation or segregation of any **Employee** or applicant for employment by the **Company** in any way that would deprive any person of employment opportunities based on such person's race, color, religion, creed, age, sex, disability, marital status, national origin, pregnancy, HIV status, sexual orientation or preference, veteran status or any other status that is protected pursuant to any foreign, federal, state, or local statutory law or common law.

E. **"Employee"** means any:

(1) person who was, now is, or shall become a full-time, part-time, seasonal, or temporary employee of the **Company,** but only while that person is acting in their capacity as such;

(2) a member of the staff or faculty of the **Company**, including a member of the medical staff; or a member of a duly constituted committee of the **Company**, but only while that person is acting in the capacity as such;

(3) an **Independent Contractor**, or a person leased to the **Company**, but only while that person is acting in their capacity as such for the **Company**, if the **Company** indemnifies such leased person or **Independent Contractor** in the same manner as the **Company's** employees described in paragraph (1); and

(4) volunteer, whose labor and service is engaged and directed by the **Company**, but only while that person is acting in the capacity as such.

F. **"Employment Contract"** means a written contract between the **Company** and an **Employee** or potential **Employee** to either commence or to continue employment with the **Company**, or to make a payment in the event of the termination of employment. An **Employment Contract** shall not include any contract or agreement, written or otherwise, between and **Independent Contractor** and an **Insured**.

G. **"Executive"** means any:

(1) past, present or future duly elected or appointed director, officer, trustee, trustee emeritus, governor, management committee member or member of the board of managers of the **Company**;

(2) past, present or future person in a duly elected or appointed position in an entity which is organized and operated in a foreign jurisdiction that is equivalent to an executive position listed in paragraph (1) above; or

(3) past, present or future General Counsel, Risk Manager or Director of Human Resources of the **Company**, or any person in a position that is in a functionally equivalent position within the **Company**.

ALLIED WORLD 001710

H.    **"FLSA Violation"** means a violation of the Fair Labor Standards Act, any rules or regulations promulgated thereunder, and any amendments thereto, or any similar foreign, federal, state or statutory law or common law; or in any way relating to refusal, failure or inability of an **Insured** to pay wages, including but not limited to overtime pay, for services rendered, improper classification of any **Employee** or purported employee, improper garnishments, withholdings or payroll deductions taken from any **Employee** or purported employee, failure to provide proper wage statements, failure to provide or enforce legally required meal or rest break periods.

I.    **"Harassment"** means:

(1)    sexual harassment, including unwelcome sexual advances, requests for sexual favors, or other conduct of a sexual nature that is made a condition of employment with, used as a basis for employment decisions by, interferes with performance or creates an intimidating, hostile or offensive working environment within the **Company** or **Outside Entity**; or

(2)    workplace harassment, including work-related harassment of a non-sexual nature that interferes with performance or creates an intimidating, hostile or offensive working environment within the **Company** or **Outside Entity**.

J.    **"Independent Contractor"** means any natural person working in the capacity of an independent contractor pursuant to a written contract or agreement between the **Independent Contractor** and the **Company** which specifies the terms of the **Company's** engagement of the **Independent Contractor**.

K.    **"Insured"** means the **Company** and any **Insured Person**.

L.    **"Insured Person"** means any:

(1)    **Executive**;
(2)    **Employee**; or
(3)    **Outside Entity Insured Person**.

M.    **"Loss"** means:

(1)    damages (including back pay and front pay), settlements or judgments;

(2)    pre-judgment or post-judgment interest;

(3)    legal costs or attorneys fees awarded by a court in favor of the claimant;

(4)    punitive or exemplary damages, or the multiple portion of any multiplied damages award, subject to the applicable Sublimit of Liability (including the multiple or liquidated damages awarded pursuant to the Age Discrimination in Employment Act or Equal Pay Act), but only to the extent such damages are insurable under the applicable law most favorable to the insurability of such damages; and

ALLIED WORLD 001711

(5) **Defense Costs**.

**"Loss"** does not include:

(a)    amounts which an **Insured** is not legally obligated to pay;

(b)    taxes;

(c)    fines or penalties, if insurable under law;

(d)    amounts deemed uninsurable under law;

(e)    costs or liability incurred by any **Insured** to modify any building or property to make it more accessible or accommodating to any disabled person, or in connection with any educational, sensitivity or other corporate program, policy or seminar;

(f)    amounts paid or incurred by the **Company** to comply with a judgement or settlement for non-monetary or injunctive relief;

(g)    **Stock Benefits** due or to become due or the equivalent value of such **Stock Benefits**; or

(h)    any future compensation, including any **Benefits**, for any person hired, promoted or reinstated pursuant to a judgment, settlement, order or other resolution of a **Claim**.

However, this Coverage Section shall provide coverage for **Defense Costs** incurred in a **Claim** seeking amounts specified in paragraphs (a) through (h) above, subject to all other terms, conditions and exclusions of this Policy.

N.    **"Outside Entity"** means:

(1)    any not-for-profit entity; or

(2)    any other entity listed as such by Endorsement attached to this Policy;

for which an **Executive** or **Employee** of the **Company** acts as a director, officer, trustee, trustee emeritus, governor, management committee member or member of the board of managers or the equivalent thereof, at the specific request of the **Company**. Any such person shall be referred to herein as an **"Outside Entity Insured Person,"** but only while that person is acting in the capacity as a director, officer, trustee or governor, or the equivalent thereof, of an **Outside Entity**.

O.    **"Medical Services"** means health care, medical care, or treatment provided to any individual, including without limitation any of the following: medical, surgical, dental, psychiatric, mental health, chiropractic, osteopathic, nursing, or other professional health care; the furnishing or dispensing of medications, drugs, blood, blood products, or medical, surgical, dental, or psychiatric supplies, equipment, or appliances in connection with such care; the furnishing of food or beverages in connection with such care; the providing of counseling or other social services in connection with such care; and the handling of, or the performance of post-mortem examinations on, human bodies.

P.    **"Provider Selection Practices"** means the process of evaluating, by members of a formal duly constituted professional review board or committee, any individual

ALLIED WORLD 001712

or entity for the purpose of selecting, contracting with or credentialing providers for **Medical Services**, including but not limited to peer review.

Q.    **"Retaliation"** means retaliatory treatment of an **Employee** or an employee of an **Outside Entity** alleged to be on account of such individual:

    (1)    exercising his or her rights under law, including rights under workers' compensation laws, the Family and Medical Leave Act, the Americans with Disabilities Act or any other law relating to employee rights;

    (2)    refusing to violate any law or opposing any unlawful practice;

    (3)    having assisted or testified in or cooperated with any legal proceeding or formal governmental investigation regarding alleged violations of law by any **Insured**;

    (4)    disclosing or expressing an intent to disclose to a superior or to any governmental agency any alleged violations of law; or

    (5)    filing or expressing an intent to file any claim against the **Company** or **Outside Entity** under the Federal False Claims Act or any other similar foreign, federal, state, or local "whistle blower" law.

R.    **"Stock Benefits"** means  any offering, plan or agreement between the **Company** and any **Insured Person** thereof, which grants stock or stock options or stock appreciation rights to such individual, including but not limited to stock options, restricted stock or any other stock grant, but not including employee stock ownership plans or employee stock purchase plans.

S.    **"Third Party"** means any natural person who is a customer, vendor, service provider or other business invitee of the **Company**.  **Third Party** shall not include any **Insured Person** or any applicant for employment with the **Company** or an **Outside Entity**.

T.    **"Third Party Wrongful Act"** means any actual or alleged:

    (1)    discrimination against a **Third Party** based upon such **Third Party's** race, color, religion, creed, age, sex, disability, marital status, national origin, pregnancy, HIV status, sexual orientation or preference, veteran status or any other status that is protected pursuant to any foreign, federal, state, or local statutory law or common law; or

    (2)    harassment directed against a **Third Party**, including sexual harassment, unwelcome sexual advances, and requests for sexual favors or other misconduct of a sexual nature.

U.    **"Workplace Tort"** means any employment-related:

    (1)    misrepresentation, defamation (including libel and slander), false arrest, detention, imprisonment, invasion of privacy, negligent evaluation, wrongful discipline or wrongful deprivation of a career opportunity; or

ALLIED WORLD 001713

(2)    negligent retention, supervision, hiring or training, wrongful infliction of emotional distress, mental anguish or humiliation; or failure to provide or enforce consistent employment-related policies and procedures;

when alleged as part of a **Claim** for actual or alleged **Wrongful Employment Decision**, **Discrimination**, **Harassment**, or **Retaliation**.

V.    **"Wrongful Act"** means any actual or alleged:

(1)    **Discrimination**;
(2)    **Harassment**;
(3)    **Retaliation**;
(4)    **Workplace Tort**; or
(5)    **Wrongful Employment Decision**;

committed by an **Insured** but only if alleged by or on behalf of an **Employee** or an applicant for employment with the **Company** or an **Outside Entity**.

**Wrongful Act** shall also include:

(6)    an actual or alleged **Third Party Wrongful Act** committed by an **Insured**, but solely with respect to the coverage provided under Insuring Agreement B., and subject to the Sublimit of Liability set forth in Item 4.A. of the Declarations;
(7)    an actual or alleged breach of an **Employment Contract** by an **Insured**; provided that coverage under this Policy shall only be available for **Defense Costs** for that portion of any **Claim** for an actual or alleged breach of an **Employment Contract** by an **Insured**; and
(8)    an actual or alleged **FLSA Violation** by an **Insured**, subject to the Sublimit of Liability for **Defense Costs** only set forth in Item 4.F. of the Declarations.

W.    **"Wrongful Employment Decision"** means any actual or alleged:

(1)    wrongful termination, dismissal, or discharge of employment, whether actual or constructive, demotion, denial of tenure, or failure or refusal to hire or promote; or
(2)    breach of any implied employment contract or obligation, including but not limited to any such obligation arising out of any personnel manual, employee handbook or policy.

## III.    EXCLUSIONS

This Coverage Section shall not cover any **Loss** in connection with any **Claim**:

A.    alleging, arising out of, based upon or attributable to any deliberate criminal or deliberate fraudulent act or any wilful violation of law by an **Insured** if a final judgment or adjudication establishes that such act or violation occurred;

ALLIED WORLD 001714

In determining the applicability of Exclusion A., the facts pertaining to, the knowledge possessed by, or any **Wrongful Act** committed by, any **Insured Person** shall not be imputed to any other **Insured Person**; however, the facts pertaining to, the knowledge possessed by, or any **Wrongful Act** committed by, an **Insured Person** who is a past or current Chairman of the Board, Chief Executive Officer, President or Chief Financial Officer of the **Company** shall be imputed to the **Company**;

B.      alleging, arising out of, based upon or attributable to any actual or alleged liability of any **Insured** under any express contract or agreement; provided however, that this Exclusion shall not apply: (1) to the extent such liability which would have attached in the absence of such express contract or agreement; or (2) to the payment of **Defense Costs** in that portion of such a **Claim** against an **Insured Person**; or (3) to the payment of **Defense Costs** in that portion of such a **Claim** against an **Insured**, for an actual or alleged breach of an **Employment Contract**.

C.      alleging, arising out of, based upon or attributable to, as of the Pending or Prior Date set forth in Item 5. of the Declarations with respect to this Coverage Section, any pending or prior: (1) litigation; or (2) administrative or regulatory proceeding or investigation, of which an **Insured** had notice, including any **Claim** alleging or derived from the same or essentially the same facts, or the same or related **Wrongful Acts**, as alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation;

D.      alleging, arising out of, based upon or attributable to the same facts or essentially the same facts alleged, or to the same or related **Wrongful Act(s)** alleged or contained in any **Claim** which has been reported, or in any circumstances of which notice has been given, before the Inception Date of this Policy as set forth in Item 2. of the Declarations, under any policy, whether excess or underlying, of which this Policy is a renewal or replacement or which it may succeed in time;

E.      for any **Wrongful Act** arising out of any **Insured Person** serving as a director, officer, trustee or governor of an **Outside Entity** if such **Claim** is brought by the **Outside Entity** or by any director, officer, trustee or governor thereof;

F.      alleging, arising out of, based upon, attributable to or in any way relating to any actual or alleged bodily injury, sickness, mental anguish, emotional distress, disease or death of any person, or damage to or destruction of any tangible property, including the loss of use thereof; provided however, that this Exclusion shall not apply to that portion of a **Claim** seeking damages for emotional distress or mental anguish resulting from a **Wrongful Act** of an **Insured**;

G.      for any actual or alleged violation of the Employee Retirement Income Security Act of 1974, the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, any rules or regulations of the foregoing promulgated thereunder, and any amendments thereto, or any similar foreign, federal, state or statutory law or common law; provided however, that this Exclusion shall not apply to any **Claim** for **Retaliation**;

ALLIED WORLD 001715

H.  alleging, arising out of, based upon or attributable to any obligation pursuant to any workers' compensation, disability benefits, unemployment compensation, unemployment insurance, retirement benefits, social security benefits or similar law; provided however, that this Exclusion shall not apply to any **Claim** for **Retaliation**;

I.  brought by a securities holder of a **Company** or an **Outside Entity**, in their capacity as such;

J.  alleging, arising out of, based upon or attributable to any lockout, strike, picket line, hiring of replacement workers, or other similar actions in connection with labor disputes or labor negotiations; provided however, that this Exclusion shall not apply to any **Claim** for **Retaliation**;

K.  alleging, arising out of, based upon, attributable to or in any way relating to any actual or alleged sexual molestation or sexual abuse, including any mental anguish or emotional distress resulting therefrom;

L.  alleging, arising out of, based upon or attributable to any actual or alleged act or omission of an **Insured** in connection with **Provider Selection Practices**;

M.  alleging, arising out of, based upon or attributable to any actual or alleged act or omission of an **Insured Person** serving in any capacity, other than as an **Insured Person**.

## IV.  NOTICE OF A CLAIM

The following provision shall apply in lieu of Section V.A. of the General Terms and Conditions:

A.  The **Insured(s)** shall, as a condition precedent to the obligations of the **Insurer** under this Policy, give written notice to the **Insurer** at either the physical or email address indicated in Item 7. of the Declarations, of a **Claim** made against an **Insured** as soon as practicable after the **Company's** General Counsel, Director of Human Resources or Risk Manager, or any individual with functionally equivalent responsibilities, becomes aware of the **Claim**.

## V.  DEFENSE AND SETTLEMENT OF A CLAIM

A.  The **Insurer** does not assume any duty to defend any **Claim** under this Coverage Section.  However, the **Insurer** shall have the right to fully and effectively associate with the **Insured** in the control, investigation, defense and settlement of any **Claim**.

B.  The **Insured(s)** shall defend and contest any **Claim** made against them.  The **Insured** shall obtain the **Insurer's** written consent in the selection of defense counsel to represent the **Insured** as respects any **Claim**, such consent shall not be unreasonably withheld.

C.  The **Insured(s)** shall not admit or assume any liability, incur any **Defense Costs**, make any settlement offer, enter into any settlement agreement or stipulate to any

ALLIED WORLD 001716

judgment, without the prior written consent of the **Insurer**  Any **Loss** incurred by the **Insured(s)** and/or any settlements or judgments agreed to by the **Insured(s)** without such consent shall not be covered by this Policy.  However, the **Insurer's** consent is not required for the **Insured** to settle a **Claim** for a **Loss** amount including **Defense Costs** paid or incurred through and including settlement, within the applicable Retention, provided that such settlement fully resolves the **Claim** with respect to all **Insureds** and the **Insurer**.

D.     The **Insurer** shall have the right to associate with the **Insured** in the defense of any **Claim** that can reasonably be expected to require any payment by the **Insurer**, including but not limited to the right to investigate, conduct negotiations, and enter into the settlement of any **Claim** that the **Insurer** deems appropriate, subject to the consent of the **Insured** which shall not be unreasonably withheld.   In the event the **Insured** refuses to consent to a settlement acceptable to the claimant in accordance with the **Insurer's** recommendation, the **Insurer's** liability for **Loss** on account of such **Claim** shall not exceed:

(a)     the amount for which the **Insurer** could have settled the **Claim**; plus;

(b)     any **Defense Costs** incurred up to the date the **Insured** refused to settle such **Claim**; plus

(c)     eighty percent (80%) of covered **Loss**, other than **Defense Costs**, in excess of the amount for which the **Insurer** could have settled the **Claim**.

The remaining amount of any **Loss**, including any **Defense Costs** incurred after the date the **Insured** refused to settle such **Claim**, shall be carried by the **Insured** at its own risk and be uninsured.

However, in no event shall the **Insurer's** liability exceed the applicable Limit of Liability for this Coverage Section, as set forth in Item 4.A. of the Declarations.

E.     At the request of the **Named Insured**, the **Insurer** shall reimburse **Defense Costs** in excess of the Retention prior to the final disposition of any **Claim**, subject to all other terms and conditions of this Policy.  In the event and to the extent that the **Insureds** shall not be entitled to payment of such **Defense Costs** under the terms and conditions of this Policy, such payments by the **Insurer** shall be repaid to the **Insurer** by the **Insureds**, severally, according to their respective interests.

F.     **Right to Tender Defense**

(1)     Notwithstanding the foregoing, the **Insureds** shall have the right to tender the defense of a **Claim** to the **Insurer**.

(2)     The right to tender the defense of a **Claim** to the **Insurer** shall be exercised by the **Named Insured** on behalf of all **Insureds** by providing written notice to the **Insurer** by certified mail or by email to the address of the **Insurer** set forth in Item 7.A. of the Declarations, specifically

ALLIED WORLD 001717

requesting the **Insurer** to assume the defense of such **Claim**. The **Insured's** right to tender the defense of a **Claim** shall terminate if it is not exercised within fifteen (15) days of the date the **Claim** is first made against an **Insured**. Further, from the date the **Claim** is first made against an **Insured** to the date when the **Insurer** accepts the tender of the defense of such **Claim**, the **Insureds** shall take no action, or fail to take any required action, that prejudices the rights of any **Insured** or the **Insurer** with respect to such **Claim**. In the event the **Insureds** have complied with all of the foregoing, the **Insurer** shall be obligated to assume the defense of the **Claim**, even if such **Claim** is groundless, false or fraudulent.

(3)     The **Insurer's** assumption of the defense of the **Claim** shall be effective upon the **Insurer** providing written confirmation thereof to the **Named Insured**. Once the defense has been so tendered, the **Insured** shall have the right to effectively associate with the **Insurer** in the defense and the negotiation of any settlement of any **Claim**, subject to the provisions of this Section V. The **Insurer** shall not be obligated to defend or continue to defend a **Claim**, or to pay or reimburse **Defense Costs**, after the applicable Limit of Liability has been exhausted.

(4)     When the **Insurer** has assumed the defense of a **Claim**, it shall have the right to investigate and conduct negotiations and, with the **Insured's** consent, which shall not be unreasonably withheld, enter into the settlement of any **Claim** that the **Insurer** deems appropriate

(5)     When the **Insurer** has assumed the defense of a **Claim**, it shall pay **Defense Costs** excess of the applicable Retention, subject to all other terms and conditions of this Policy. In the event and to the extent that the **Insureds** shall not be entitled to payment of such **Defense Costs** under the terms and conditions of this Policy, such payments by the **Insurer** shall be repaid to the **Insurer** by the **Insureds**, severally, according to their respective interests.

**VI.    COOPERATION**

Each and every **Insured** shall give the **Insurer** full cooperation and such information as it may reasonably require relating to the defense and settlement of any **Claim** and the prosecution of any counterclaim, cross-claim or third-party claim, including without limitation the assertion of an **Insured's** indemnification or contribution rights.

**VII.    REPRESENTATIONS AND SEVERABILITY**

A.     In granting coverage under this Policy, it is agreed that the **Insurer** has relied upon the statements and representations contained in the **Application**. All such statements and representations shall be deemed to be the basis of this Policy and are to be considered as incorporated into this Policy.

B.     With respect to the statements and representations contained in the **Application**, no knowledge of any **Insured Person** shall be imputed to any other **Insured Person** for the purpose of determining whether coverage is available under this

ALLIED WORLD 001718

Policy for any **Claim** made against such **Insured Person**. However, the knowledge possessed by any **Insured Person** who is a past or current Chief Executive Officer, President or Chief Financial Officer of the **Company**, or the signer of the **Application**, shall be imputed to the **Company** for the purpose of determining whether coverage is available under this Policy for any **Claim** made against the **Company**.

ALLIED WORLD 001719

**ALLIED WORLD SPECIALTY INSURANCE COMPANY**

### FORCEFIELD℠
### HEALTHCARE ORGANIZATIONS
#### MANAGEMENT LIABILITY PACKAGE POLICY
#### FIDUCIARY LIABILITY COVERAGE SECTION

In consideration of the payment of the premium and in reliance upon the **Application**, which shall be deemed to be attached to, incorporated into, and made a part of this Policy, and subject to the General Terms and Conditions and this Coverage Section, ALLIED WORLD SPECIALTY INSURANCE COMPANY (the **"Insurer"**) and the **Named Insured**, on behalf of all **Insureds**, agree as follows:

**I.    INSURING AGREEMENTS**

A.    **Fiduciary Liability Coverage**

The **Insurer** shall pay on behalf of any **Insured** the **Loss** arising from a **Claim** first made during the **Policy Period** (or Discovery Period, if applicable) against such **Insured** for any **Wrongful Act**, and reported to the **Insurer** in accordance with Section V. of the General Terms and Conditions.

B.    **HIPAA Claim Coverage**

The **Insurer** shall also pay on behalf of any **Insured** the **Loss** arising from a **HIPAA Claim** first made during the **Policy Period** (or Discovery Period, if applicable) against such **Insured** and reported to the **Insurer** in accordance with Section V. of the General Terms and Conditions.  The applicable Sublimit of Liability set forth in Item 4.F. of the Declarations is the **Insurer's** maximum limit of liability for all **Loss** arising from all **HIPAA Claims.**  The Sublimit of Liability for **HIPAA Claims** shall be part of, and not in addition to, the Limit of Liability applicable to this Coverage Section.

C.    **Voluntary Compliance Program Coverage**

The **Insurer** shall reimburse the **Insured** the **Voluntary Compliance Program Loss** incurred by the **Insured,** and reported to the **Insurer** in accordance with Section VII. of this Coverage Section.

The applicable Sublimit of Liability set forth in Item 4.F. of the Declarations is the **Insurer's** maximum Limit of Liability for all **Voluntary Compliance Program Loss**. The Sublimit of Liability for **Voluntary Compliance Program Loss** shall be part of, and not in addition to, the Limit of Liability applicable to this Coverage Section.

The reimbursement by the **Insurer** to the **Insured** of any **Voluntary Compliance Program Loss** shall not waive any of the **Insurer's** rights under this Policy or at law, including in the event that such **Loss** results in a **Claim** under Insuring Agreements A. or B. of this Coverage Section.

ALLIED WORLD 001720

II.    **DEFINITIONS**

    A.    "**Administration**" means:

        (1)    advising, counseling or giving notice to **Employees**, participants or beneficiaries with respect to any **Plan**;

        (2)    providing interpretations to **Employees**, participants or beneficiaries with respect to any **Plan**; or

        (3)    handling of records or effecting enrollment, termination or cancellation of **Employees**, participants or beneficiaries, under any **Plan**.

    B.    "**Application**" means: (1) the signed application submitted for this Policy and any attachments to such application, and for any other policy issued by the **Insurer**, or any affiliate thereof, of which this Policy is a direct renewal or replacement, including any attachments and other materials submitted with or incorporated into such applications; and (2) any publicly available documents filed by the **Named Insured** with any federal, state, local or foreign regulatory agency, including the U.S. Securities and Exchange Commission ("SEC"), during the twelve (12) months prior to the inception of the **Policy Period**.

    C.    "**Benefits**" means any obligation under a **Plan** to a participant or beneficiary of such **Plan**, which is a payment of money or property, or the grant of a privilege, right, option or perquisite.

    D.    "**Claim**" means any:

        (1)    written demand for monetary, non-monetary or injunctive relief made against an **Insured**;

        (2)    judicial, administrative or regulatory proceeding, whether civil or criminal, for monetary, non-monetary or injunctive relief commenced against an **Insured**, including any appeal therefrom, which is commenced by:

            (a)    service of a complaint or similar pleading;
            (b)    return of an indictment, information or similar document (in the case of a criminal proceeding); or
            (c)    receipt or filing of a notice of charges;

        (3)    written notice of commencement of a fact-finding investigation by the U.S. Department of Labor ("DOL"), the U.S. Pension Benefit Guaranty Corporation, or any similar governmental authority located outside the United States, including but not limited to, the Pensions Ombudsman appointed by the United Kingdom Pensions Regulator or any successor body thereto;

        (4)    written request to toll or waive the applicable statute of limitations, or to waive any contractual time bar, relating to a potential **Claim** against an **Insured** for a **Wrongful Act**.

    A **Claim** shall be deemed first made when any **Insured** first receives notice of the **Claim**.

ALLIED WORLD 001721

E.    "**Cleanup Costs**" means expenses (including but not limited to legal and professional fees) incurred in testing for, monitoring, cleaning up, removing, containing, treating, neutralizing, detoxifying or assessing the effects of **Pollutants**.

F.    "**Defense Costs**" means:

(1)    reasonable and necessary fees, costs, charges or expenses resulting from the investigation, defense or appeal of a **Claim**;

(2)    premium for an appeal, attachment or similar bond, but without any obligation to apply for and obtain such bond, in connection with a **Claim**; or

(3)    any fees, costs,  charges or expenses incurred by the **Insured** at the specific request of the **Insurer** to assist the **Insurer** in the investigation, defense or appeal of a **Claim**.

"**Defense Costs**" does not include: (a) amounts incurred by the **Insured** prior to the date a **Claim** is first made and reported to the **Insurer**; or (b) compensation or benefits of any **Insured Person** or any overhead expenses of the **Company**.

G.    "**Employee**" means any natural person whose labor or service is engaged or directed by the **Company** or any **Plan** including any part-time, seasonal, leased or temporary employee or volunteer.  **Employee** shall not include any **Independent Contractor**.

H.    "**Employee Benefits Law**" means the Employee Retirement Income Security Act of 1974, or any amendments thereto or any rules or regulations promulgated thereunder, or any similar provisions of any federal, state or local statutory law of the United States ("ERISA"), or any similar common or statutory law of any other jurisdiction anywhere in the world, to which a **Plan** is subject.

I.    "**ESOP**" means:  (1) any employee stock ownership plan as defined in ERISA, or; (2) any other **Plan** under which investments are made in securities of, or issued by, the **Company**, if scheduled in an Endorsement to this Policy.

J.    "**Financial Impairment**" means the **Company** becoming a debtor-in-possession; or the appointment of a receiver, conservator, liquidator, trustee, rehabilitator or similar official to control, supervise, manage or liquidate the **Company**; or the filing of a petition under the bankruptcy laws of the United States of America or any equivalent event outside the United States of America.

K.    "**HIPAA Claim**" means a **Claim** alleging, arising out of, based upon or attributable to a violation of the Health Insurance Portability and Accountability Act of 1996 and any amendments thereto ("HIPAA").

L.    "**HIPAA Penalties**" means civil money penalties imposed upon an **Insured** for violation of HIPAA's Privacy Rule.

M.    "**Independent Contractor**" means any person working in the capacity of an independent contractor pursuant to a written contract or agreement between the **Independent**

ALLIED WORLD 001722

**Contractor** and the **Company**, which specifies the terms of the **Company's** engagement of the **Independent Contractor**.

N.  **"Insured"** means:

    (1)    the **Company**;
    (2)    any **Plan**;
    (3)    any **Insured Person**; and
    (4)    any other person or entity in his, her or its capacity as a fiduciary, administrator or trustee of a **Plan** and included in the Definition of **Insured** by specific written endorsement attached to this Policy.

O.  **"Insured Person"** means any:

    (1)    past, present or future natural person director, officer, trustee, general partner, management committee member, member of board of managers, governor (or any foreign equivalent) of the **Company**; or

    (2)    **Employee**.

P.  **"Loss"** means:

    (1)    damages, settlements or judgments;

    (2)    pre-judgment or post-judgment interest;

    (3)    costs or fees awarded in favor of the claimant;

    (4)    punitive and exemplary damages or the multiple portion of any multiplied damages award, but only to the extent that such damages are insurable under the applicable law most favorable to the insurability of such damages;

    (5)    **Voluntary Compliance Program Loss**, solely under Insuring Agreement C.; and

    (6)    **Defense Costs**.

    **"Loss"** does not include:

    (a)    amounts for which the **Insureds** are not legally liable;

    (b)    amounts which are without legal recourse to the **Insureds**;
    (c)    taxes;

    (d)    fines or penalties, except:

        (i)    as provided for in Definition P(4) above;

        (ii)    the five percent (5%) or less civil penalty imposed upon an **Insured** under Section 502(i) of ERISA;

ALLIED WORLD 001723

(iii)    the twenty percent (20%) or less civil penalty imposed upon an **Insured** under Section 502(l) of ERISA;

(iv)    any civil fines and penalties imposed by either the Pension Ombudsman appointed by the United Kingdom Secretary of State for Social Services, by the United Kingdom Occupational Pensions Regulatory Authority, by the United Kingdom Pensions Regulator or any successor body thereto; provided however, that any coverage for such fines and penalties applies only if the funds or assets of the subject **Plan** are not used to fund, pay or reimburse the premium for this Coverage Section;

(v)    fines and penalties which are part of **Voluntary Compliance Program Loss**, solely under Insuring Agreement C.; or

(vi)    **HIPAA Penalties**, solely under Insuring Agreement B.;

(e)    the return or reversion to an employer of any contribution or asset of a **Plan**;

(f)    **Benefits**, or that portion of any settlement or award in an amount equal to such **Benefits**, unless and to the extent that recovery of such **Benefits** is based upon a covered **Wrongful Act** and is payable as a personal obligation of an **Insured Person**;

(g)    amounts deemed uninsurable under applicable law; or

(h)    amounts paid or incurred by the **Company** to comply with a judgment or settlement for non-monetary or injunctive relief.

However, this Coverage Section shall provide coverage for **Defense Costs** incurred in a **Claim** seeking amounts specified in paragraphs (a) through (h) above, subject to all other terms, conditions and exclusions of this Policy.

Q.    **"Non-Indemnifiable Loss"** means **Loss** for which the **Company** is permitted or required to indemnify any **Insured Person**, but has not indemnified due to **Financial Impairment**.

R.    **"Non-Qualified Plan"** means any of the following plans for a select group of management or highly compensated directors, officers or employees: deferred compensation plan, supplemental executive retirement plan, top-hat plan, or excess benefit plan. **Non-Qualified Plan** shall not include any **ESOP** or stock option plan.

S.    **"Plan"** means any plan, fund, trust, program or **Non-Qualified Plan** regardless of whether or not it is subject to regulation under Title I of ERISA or any part thereof, or meets the requirements for qualification under Section 401 of the Internal Revenue Code of 1986, as amended, and which is:

(1)    a welfare plan, as defined in ERISA, sponsored solely by the **Company**, or sponsored jointly by the **Company** and a labor organization, solely for the benefit of **Employees**;

ALLIED WORLD 001724

(2) a pension plan, as defined in ERISA (other than an **ESOP**), sponsored solely by the **Company**, or sponsored jointly by the **Company** and a labor organization, solely for the benefit of **Employees**, provided that, prior to the Inception Date of this Policy, such plan has been reported in writing to the **Insurer** pursuant to the terms of the **Application** for this Policy or pursuant to the terms of any prior Policy issued by the **Insurer** or the **Application** for such Policy, and the **Company** shall have paid the premium required for such plan;

(3) a pension plan, as defined in ERISA (other than an **ESOP**), which, during the **Policy Period** becomes sponsored solely by the **Company**, or sponsored jointly by the **Company** and a labor organization, solely for the benefit of **Employees**, subject to the following:

 (a) if the assets of such pension plan total twenty five percent (25%) or less of the total consolidated assets of the **Plans** covered by this Coverage Section as of the Inception Date of this Policy, this Coverage Section shall provide coverage with respect to **Wrongful Acts** that occurred after the date of such sponsorship. As a condition precedent to such coverage, the **Company** shall give written notice of such sponsorship to the **Insurer** prior to the end of the **Policy Period**; and

 (b) if the assets of such pension plan total more than twenty five percent (25%) of the total consolidated assets of the **Plans** covered by this Coverage Section as of the Inception Date of this Policy, this Coverage Section shall provide coverage with respect to **Wrongful Acts** that occurred after the date of such sponsorship.  As a condition precedent to such coverage, the **Company** shall give written notice of such sponsorship to the **Insurer** within ninety (90) days after the date of such sponsorship, with full particulars regarding such pension plan, and the **Company** shall have paid the premium required for such pension plan.

(4) a plan which is both a welfare plan and a pension plan as defined in ERISA (other than an **ESOP**);

(5) a government-mandated program for workers compensation, unemployment, social security or disability benefits for **Employees**, solely with respect to a **Wrongful Act** as defined in Definition V.(2), by an **Insured Person**;

(6) an **ESOP** that is included in the definition of **Plan** by written Endorsement attached to this Policy; or

(7) any other plan, fund, trust or program, including a multi-employer plan, solely with respect to a **Wrongful Act** by an **Insured Person** acting at the specific request of the **Company**, that is included in the definition of **Plan** by written Endorsement attached to this Policy.

With respect to paragraphs (1) and (2) of this Definition, coverage under this Coverage Section shall apply to any pension or welfare plan that was divested by merger, sold, spun-off or terminated prior to the **Policy Period** with respect to **Wrongful Acts** that occurred prior to the date of such merger, sale or spin-off or prior to the final date of asset

ALLIED WORLD 001725

distribution of such plan. As a condition precedent to such coverage, the **Company** shall give written notice of such transaction to the **Insurer** prior to the Inception Date of this Policy and the **Company** shall have paid the additional premium required for such **Plan**, as determined by the **Insurer**.

With respect to paragraphs (1) and (2) of this Definition, coverage under this Coverage Section shall apply to any pension or welfare plan that was merged, sold, spun-off or terminated during the **Policy Period** with respect to **Wrongful Acts** that occurred prior to the date of such merger, sale or spin-off or prior to the final date of asset distribution of such plan. As a condition precedent to such coverage, the **Company** shall give written notice of such transaction to the **Insurer** prior to the end of the **Policy Period.**

T.      **"Pollutants"** means any substance located anywhere in the world exhibiting any hazardous characteristics as defined by, or identified on, any list of hazardous substances issued by the United States Environmental Protection Agency or any foreign, state, county, municipality, or locality counterpart thereof.  Such substances shall include, without limitation, nuclear material or waste, any solid, liquid, gaseous or thermal irritant or contaminant, or smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste materials.  **Pollutants** shall also mean any other air emission, odor, waste water, oil or oil products, infectious or medical waste, asbestos or asbestos products and any noise.

U.      **"Voluntary Compliance Program Loss"** means:

(1)      fines, penalties, sanctions, voluntary correction fees, compliance fees or user fees imposed upon or collected from an **Insured** by the Internal Revenue Service ("IRS") under the Employee Plans Compliance Resolution System pursuant to a written agreement with the IRS, but only in the event that the **Insured** first becomes aware during the **Policy Period** that a **Plan** must be corrected;

(2)      penalties imposed upon an **Insured** by the IRS or the DOL under a Delinquent Filer Voluntary Compliance Program, but only in the event that the failure to timely file Form 5500 occurs during the **Policy Period**; and

(3)      damages incurred by an **Insured** in connection with the DOL's Voluntary Fiduciary Correction Program, but only in the event that the **Insured's** compliance with such program results in the **Insured** obtaining a "No Action" letter from the DOL and that the breach of fiduciary duty occurs during the **Policy Period;** provided, however, that **Voluntary Compliance Program Loss** under this Definition U.(3) shall not include fines, penalties or sanctions.

**Voluntary Compliance Program Loss** shall not include any costs to correct the **Insured's** non-compliance.

V.      **"Wrongful Act"** means any actual or alleged:

(1)      breach of the responsibilities, obligations or duties imposed upon fiduciaries of a **Plan** by an **Employee Benefits Law**; by an **Insured**;

(2)      negligent act, error or omission by an **Insured** in the **Administration** of a **Plan**;

ALLIED WORLD 001726

(3) matter claimed against an **Insured Person** solely by reason of his or her service as a fiduciary of a **Plan**; or

(4) negligent hiring of either a third-party administer of a **Plan** or a third-party administrator of **Benefits** provided under a **Plan,** by an **Insured**.

**III.    EXCLUSIONS**

This Coverage Section shall not cover any **Loss** in connection with any **Claim**:

A. arising out of, based upon or attributable to the gaining of any profit or advantage or improper or illegal remuneration by an **Insured** if a final judgment or adjudication establishes that such **Insured** was not legally entitled to such profit or advantage or that such remuneration was improper or illegal;

B. arising out of, based upon or attributable to any deliberate fraud or any wilful violation of law by an **Insured** if a final judgment or adjudication establishes that such fraud or violation occurred;

In determining the applicability of Exclusions A. and B., the facts pertaining to, the knowledge possessed by, or any **Wrongful Act** committed by, any **Insured Person** shall not be imputed to any other **Insured Person**; however, the facts pertaining to, the knowledge possessed by, or any **Wrongful Act** committed by, an **Insured Person** who is a past or current Chairman of the Board, Chief Executive Officer, President or Chief Financial Officer of the **Company** shall be imputed to the **Company**.

C. for failure to fund a **Plan** in accordance with ERISA or the **Plan** instrument or to collect an employer's contributions owed to a **Plan**; provided however, that this Exclusion shall not apply to: (1) the portion of **Loss** resulting from such **Claim** that is payable as a personal obligation of an **Insured Person**; or (2) the payment of **Defense Costs**;

D. alleging, arising out of, based upon or attributable to the liability of others assumed by any **Insured** under any express contract or agreement, either oral or written; provided however, that this Exclusion shall not apply: (1) to the extent that an **Insured** would have been liable in the absence of such contract or agreement; (2) if the liability was assumed in accordance with or under the agreement or declaration of trust pursuant to which a **Plan** was established; or (3) to the payment of **Defense Costs** in any such **Claim** against an **Insured Person**;

E. alleging, arising out of, based upon or attributable to, as of the Pending or Prior Date set forth in Item 5. of the Declarations as respects this Coverage Section, any pending or prior: (1) litigation; or (2) administrative or regulatory proceeding or investigation of which an **Insured** had notice, including any **Claim** alleging or derived from the same or essentially the same facts, or the same or related **Wrongful Acts**, as alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation;

F. alleging, arising out of, based upon or attributable to the facts alleged, or to the same or related **Wrongful Acts** alleged or contained in any **Claim** which has been reported, or in any circumstances of which notice has been given, before the Inception Date of this Policy as set forth in Item 2. of the Declarations, under any policy, whether excess or

ALLIED WORLD 001727

underlying, of which this Policy is a renewal or replacement or which it may succeed in time;

G.  alleging, arising out of, based upon, attributable to, directly or indirectly resulting from, or in consequence of, or in any way involving, actual, alleged or threatened discharge, dispersal, release, escape, seepage, transportation, emission, treatment, removal or disposal of **Pollutants** into or on real or personal property, water or the atmosphere; or seeking any **Cleanup Costs**; provided however, that this Exclusion shall not apply to any **Non-Indemnifiable Loss** constituting damages to a **Plan**, except for **Non-Indemnifiable Loss** constituting **Cleanup Costs**;

H.  for any actual or alleged bodily injury, sickness, mental anguish, emotional distress, libel, slander, oral or written publication of defamatory or disparaging material, disease or death of any person, or damage to or destruction of any tangible property, including the loss of use thereof; provided however, that this Exclusion shall not apply to **Defense Costs** incurred in defending a **Claim** alleging a violation of the responsibilities, obligations or duties imposed by ERISA;

I.  for any actual or alleged violation of any law governing workers' compensation, unemployment insurance, social security or disability benefits, or any similar law, anywhere in the world; except the Consolidated Omnibus Budget Reconciliation Act of 1985, HIPAA, or any amendments thereto or any rules or regulations promulgated thereunder;

J.  alleging, arising out of, based upon, or attributable to any actual or alleged discrimination, harassment, retaliation, wrongful discharge, termination or any other employment-related or employment practice claim; provided, however, that this Exclusion shall not apply to any **Claim** asserted under Section 510 of ERISA;

K.  alleging, arising out of, based upon or attributable to any **Wrongful Act** with respect to a **Plan**, taking place at any time when the **Company** did not sponsor such **Plan** or when the **Insured Person** was not a fiduciary, administrator, trustee, director, officer, governor, management committee member, member of the board of managers, general partner or employee of the **Company** or, if applicable, the **Plan**;

L.  alleging, arising out of, based upon or attributable to any act or omission of an **Insured** in his, her or its capacity as a fiduciary or administrator of any plan, fund or program, other than a **Plan** as defined in this Coverage Section, or by reason of his, her or its status as a fiduciary or administrator of such other plan, fund or program.

## IV.    RETENTION

No Retention is applicable to **HIPAA Claims** or **Voluntary Compliance Program Loss**.

## V.    DEFENSE AND SETTLEMENT OF A CLAIM

A.  The **Insurer** does not assume any duty to defend any **Claim** under this Coverage Section. However, the **Insurer** shall have the right to fully and effectively associate with the **Insured** in the control, investigation, defense and settlement of any **Claim**.

ALLIED WORLD 001728

B.      The **Insured(s)** shall defend and contest any **Claim** made against them.  The **Insured** shall obtain the **Insurer's** written consent in the selection of defense counsel to represent the **Insured** as respects any **Claim**, such consent shall not be unreasonably withheld.

C.      The **Insured(s)** shall not admit or assume any liability, incur any **Defense Costs**, make any settlement offer, enter into any settlement agreement or stipulate to any judgment without the prior written consent of the **Insurer**. Any **Loss** incurred by the **Insured(s)** and/or any settlements or judgments agreed to by the **Insured(s)** without such consent shall not be covered by this Policy. However, the **Insurer's** consent is not required for the **Insured** to settle a **Claim** for a **Loss** amount within the applicable Retention, provided that such settlement fully resolves such **Claim** with respect to all **Insureds** and the **Insurer**.

D.      At the request of the **Named Insured**, the **Insurer** shall reimburse **Defense Costs** prior to the final disposition of any **Claim**, subject to all other terms and conditions of this Policy. In the event and to the extent that the **Insureds** shall not be entitled to payment of such **Defense Costs** under the terms and conditions of this Coverage Section, such payments by the **Insurer** shall be repaid to the **Insurer** by the **Insureds**, severally according to their respective interests.

E.      **Right to Tender Defense**

(1)      Notwithstanding the foregoing, the **Insureds** shall have the right to tender the defense of a **Claim** to the **Insurer**; however, the **Insureds** shall not have the right to tender the defense of any matter under Insuring Agreement C. Voluntary Compliance Program Coverage, of this Coverage Section.

(2)      This right shall be exercised by the **Named Insured** on behalf of all **Insureds** by providing written notice to the **Insurer**.  The right to tender the defense of a **Claim** shall terminate if it is not exercised within thirty (30) days of the date the **Claim** is first made against an **Insured**. Further, from the date the **Claim** is first made against an **Insured** to the date when the **Insurer** accepts the tender of the defense of such **Claim**, the **Insureds** shall take no action, or fail to take any required action, that prejudices the rights of any **Insured** or the **Insurer** with respect to such **Claim**.  In the event the **Insureds** have complied with all of the foregoing, the **Insurer** shall be obligated to assume the defense of the **Claim**, even if such **Claim** is groundless, false or fraudulent.

(3)      The **Insurer's** assumption of the defense of the **Claim** shall be effective upon the **Insurer** providing written confirmation thereof to the **Named Insured**. Once the defense has been so tendered, the **Insured** shall have the right to effectively associate with the **Insurer** in the defense and the negotiation of any settlement of any **Claim**, subject to the provisions of this Section V.  The **Insurer** shall not be obligated to defend or continue to defend a **Claim**, or to pay or reimburse **Defense Costs**, after the applicable Limit of Liability has been exhausted.

(4)      When the **Insurer** has assumed the duty to defend, it shall have the right to investigate and conduct negotiations and, with the **Insured's** consent, which shall not be unreasonably withheld, enter into the settlement of any **Claim** that the **Insurer** deems appropriate.

ALLIED WORLD 001729

(5) When the **Insurer** has assumed the duty to defend, it shall pay **Defense Costs** excess of the applicable Retention, subject to all other terms and conditions of this Policy. In the event and to the extent that the **Insureds** shall not be entitled to payment of such **Defense Costs** under the terms and conditions of this Coverage Section, such payments by the **Insurer** shall be repaid to the **Insurer** by the **Insureds**, severally according to their respective interests.

F. **Voluntary Compliance Program Loss Coverage**

(1) With respect to Insuring Agreement C. Voluntary Compliance Program Coverage the **Company**, and not the **Insurer**, has the duty to investigate, evaluate, negotiate and settle any matter which may result in **Voluntary Compliance Program Loss**.

(2) The **Insurer** shall have the right to effectively associate with the **Company** in such process, including the negotiation of any settlement of any matter which results in **Voluntary Compliance Program Loss**.

## VI. COOPERATION

Each and every **Insured** shall give the **Insurer** full cooperation and such information as it may reasonably require relating to the defense and settlement of any **Claim** or the settlement of any matter resulting in **Voluntary Compliance Program Loss**, and the prosecution of any counterclaim, cross-claim or third-party claim, including without limitation the assertion of an **Insured's** indemnification or contribution rights.

## VII. NOTICE OF VOLUNTARY COMPLIANCE PROGRAM LOSS

The **Insureds** shall, as a condition precedent to the obligations of the **Insurer** under this Policy to reimburse **Voluntary Compliance Program Loss,** give written notice to the **Insurer** at either the physical or email address indicated in Item 7. of the Declarations, of any matter which any **Insured** reasonably believes may result in **Voluntary Compliance Program Loss** within thirty (30) days after the **Insureds** become aware of such matter, but in no event later than thirty (30) days after the Expiration Date set forth in Item 2. of the Declarations.

## VIII. RIGHT OF RECOURSE

If this Policy is purchased with plan assets, the **Insurer** shall have a right of recourse against any fiduciary whose breach of a fiduciary obligation, as imposed by ERISA, results in a **Loss** under this Policy paid by the **Insurer**. If, however, it is confirmed on the **Application** that all or a portion of the premium for this Policy is paid by or on behalf of the fiduciaries with non-plan assets, the **Insurer** shall have no right of recourse against any fiduciary with respect to any **Claim**, including but not limited to, rights of contribution and subrogation.

## IX. REPRESENTATIONS AND SEVERABILITY

A. In granting coverage under this Policy, it is agreed that the **Insurer** has relied upon the statements and representations contained in the **Application**. All such statements and representations shall be deemed to be the basis of this Policy and are to be considered as incorporated into this Policy.

ALLIED WORLD 001730

B.    With respect to the statements and representations contained in the **Application**, no knowledge of any **Insured Person** shall be imputed to any other **Insured Person** for the purpose of determining whether coverage is available under this Policy for any **Claim** made against such **Insured Person**. However, the knowledge possessed by any **Insured Person** who is a past or current Chairman of the Board, Chief Executive Officer, President or Chief Financial Officer of the **Company** shall be imputed to the **Company** for the purpose of determining whether coverage is available under this Policy for any **Claim** made against the **Company**.

## X.    ORDER OF PAYMENTS

A.    In the event of **Loss** arising from a covered **Claim** for which payment is due under the provisions of this Coverage Section, the **Insurer** shall in all events:

(1)    first, pay **Loss** for which coverage is provided under this Coverage Section for any **Insured Person**;

(2)    second, only after payment of **Loss** has been made pursuant to paragraph (1) above, with respect to whatever remaining amount of any Limit of Liability applicable to this Coverage Section is available, pay the **Loss** for which coverage is provided under this Coverage Section for any covered **Plan**; and

(3)    third, only after payment of **Loss** has been made pursuant to paragraph (1) and (2) above, with respect to whatever remaining amount of any Limit of Liability applicable to this Coverage Section is available, pay the **Loss** for which coverage is provided under this Coverage Section for the **Company**.

ALLIED WORLD 001731