UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NICHOLAS KNAACK, a single person; BILLY BRAMBLETT, a single person; JAMES LACY, a married person; DION LUMADUE, a single person; Plaintiff,<br><br>v.<br><br>ALLIED WORLD SPECIALTY INSURANCE COMPANY, a foreign insurer,<br>Defendant. | No. 2:23-cv-01679-BJR<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT** |

## I.      INTRODUCTION

This matter comes before the Court on multiple dispositive motions: (1) Plaintiff Nicolas Knaack's Motion for Summary Judgment (Dkt. No. 56), seeking judgment in his favor; (2) Plaintiffs James Lacy and Dion Lumadue's Motion for Partial Summary Judgment (Dkt. No. 56), seeking judgment in their favor on several (but not all) of their claims; and (3) Defendant Allied World Specialty Insurance Company's ("Allied" or "Insurer") Motion for Summary Judgment

ORDER RE: MOTIONS FOR
SUMMARY JUDGMENT
- 1

(Dkt. No. 59), seeking dismissal of all claims against it.[1] Having reviewed the briefs, declarations and exhibits filed in support of and in opposition to the motions and the relevant caselaw, the Court finds and rules as follows.

## II.     BACKGROUND

American Behavioral Health Systems ("ABHS") is an inpatient substance abuse treatment facility located in Spokane, Washington. Plaintiffs were patients at ABHS during a time when the facility employed a man named Douglas Stephens. In April 2020, attorneys for several former ABHS patients, including Plaintiffs Lacy and Lumadue, sent notice to ABHS of a public records request and initiation of an investigation related to allegations of sexual misconduct by Stephens while he was employed at ABHS. In a letter to ABHS dated May 27, 2020, attorneys retained by Plaintiff Knaack alleged that while Knaack was a patient at ABHS, he "was repeatedly sexually assaulted by Mr. Stevens including but not limited to repeated strip searches." Aguiar Decl., Ex. 3. The letter stated that Knaack "had been subject to ongoing sexual abuse" and "has been pursuing counseling for the sexual abuse." *Id*. The letter advised ABHS that unless the matter could be resolved privately, Knaack would be filing a lawsuit. *Id*.

ABHS did not respond to Plaintiffs' letters, and in August 2020, six former ABHS patients, including the four Plaintiffs in this case, filed a lawsuit in Spokane Superior Court against ABHS (the "Underlying Lawsuit" or the "Claim"). *See* Casey Decl., Ex. E, *Bramblett et al. v. American Behavioral Health Systems, Inc*., Spokane County Superior Court Case No. 20-2-02157-32. The

---

[1] Although Plaintiffs Lacy and Lumadue's motion seeks judgment only on some of Plaintiffs' claims, the Plaintiffs have joined in each other's motions; the Court will accordingly not parse out the two motions according to which Plaintiff(s) filed them.

ORDER RE: MOTIONS FOR
SUMMARY JUDGMENT
- 2

complaint outlined the "Abuse and Harassment" of Plaintiffs, and alleged that Stephens had hugged Plaintiffs, conducted strip searches of them without other staff present, and touched and fondled Plaintiffs' buttocks and genitals, all in violation of ABHS policy. *See id*. The complaint makes multiple references to Stephens's "sexual abuse" and his "abusive" behavior towards Plaintiffs. For example, in asserting a Washington Law Against Discrimination Act claim against ABHS, Plaintiffs collectively alleged that they "were injured by Douglas Stephens's sexual abuse and sexual harassment." *Id*., ¶ 3.2.4.

During the period October 2019-October 2020, ABHS was insured under Allied's Forcefield Healthcare Organizations Management Liability Pack Policy No. 0312-0123 (the "Policy"). *See* Aguiar Decl., Ex. 1. ABHS provided Allied notice of the letters it had received concerning Stephens' misconduct, and notice of the filing of the Underlying Lawsuit.[2] *See* Aguiar Decl., Ex. 4. In response, Allied advised ABHS that it would not be providing defense or indemnity in connection with Plaintiffs' allegations or the Underlying Lawsuit. *See* Casey Decl., Ex. 2; Aguiar Decl., Exs. 6, 7.

Plaintiffs and ABHS eventually executed a consent judgment in settlement of the Underlying Lawsuit. *See* Bridges Decl., Ex. 7, 2023 Order Regarding Reasonableness of Settlements ("Settlement Order"). In settlement of the Underlying Lawsuit, the parties stipulated to Plaintiffs' damages in the amount of approximately $2.4 million. *Id*. Plaintiffs now seek to enforce that judgment against ABHS's insurer, Allied, asserting both breach-of-contract and extra-

---

[2] ABHS also sought coverage from insurer Capitol Specialty Insurance Company, under its "Human Services Sexual or Physical Abuse or Molestation Liability coverage." CapSpecialty agreed to defend the Underlying Lawsuit, finding it was potentially covered under the "Sexual Abuse Coverage" part of the policy. *See* Aguiar Decl., Ex. 7.

ORDER RE: MOTIONS FOR
SUMMARY JUDGMENT
- 3

contractual causes of action.³ They argue that the Underlying Lawsuit was covered under two distinct Coverage Sections of the Policy, and was not excluded under any Exclusion. Plaintiffs argue that ABHS was therefore entitled to both indemnity and defense. They also claim that Allied's denial of coverage constituted negligence, common law bad faith, and violations of the Insurance Fair Conduct Act and the Washington Consumer Protection Act; and that Allied should be estopped from denying coverage.

### III. DISCUSSION

#### A. Standard on Motion for Summary Judgment

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The moving party bears the initial burden of demonstrating the absence of a triable issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[C]ourts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. Interpretation of an insurance contract is a question of law. *Quadrant Corp. v. Am. States Ins. Co.*, 154 Wn. 2d 165, 171 (2005).

---

³ Although the parties refer to Plaintiffs as ABHS's "assignees," the assignment of the claims is not evident in the Settlement Order itself, and the Court was unable to identify any direct evidence in the record of this assignment.

ORDER RE: MOTIONS FOR
SUMMARY JUDGMENT
- 4

**B. Whether Allied Breached Its Duties to Indemnify and/or Defend ABHS Under the EPL Coverage Section of the Policy**

Allied seeks dismissal of Plaintiffs' breach of contract claims, contending it had neither a duty to indemnify nor a duty to defend. "An insurer's duty to defend is broader than its duty to indemnify." *Truck Ins. Exch. v. Vanport Homes, Inc.*, 147 Wn. 2d 751, 760 (2002). "[T]he duty to defend is triggered if the insurance policy *conceivably* covers the allegations in the complaint, whereas the duty to indemnify exists only if the policy *actually* covers the insured's liability." *Woo v. Fireman's Fund Ins. Co.*, 161 Wn. 2d 43, 53 (2007); s*ee also Am. Best Food, Inc. v. Alea London, Ltd.*, 168 Wn. 2d 398, 405 (2010) (citations omitted) ("[I]f there is any reasonable interpretation of the facts or the law that could result in coverage, the insurer must defend."). Allied argues that it had no duty to defend ABHS against Plaintiffs' Claim and therefore, necessarily, no duty of indemnity.

Determining whether coverage exists is a two-step process. *McDonald v. State Farm Fire & Cas. Co.*, 119 Wn. 2d 724, 731 (1992). First the insured must show the loss falls within the scope of the policy's insured losses. *Id*. Second, to avoid coverage, the insurer must show the loss is excluded by specific policy language. *Id*. The Policy here comprised three different coverage sections, two of which Plaintiffs contend were triggered by their claim: (1) the Employment Practices Liability ("EPL") Coverage Section, and (2) Directors and Officers ("D&O") Liability Coverage Section. *See* Policy, Aguiar Decl., Ex. 1. The Court reviews coverage under each in turn.

ORDER RE: MOTIONS FOR
SUMMARY JUDGMENT
- 5

**1. Whether the Underlying Lawsuit Was a Covered "Claim" "First Made During the Policy Period" Under the EPL Coverage Section's "Third Party Liability" Insuring Agreement**

Under the applicable test, the first question is whether Plaintiffs have met their burden of demonstrating that their Claim is "conceivably covered" under the Policy. Plaintiffs contend that ABHS was covered under the EPL Coverage Section of the Policy, and specifically under that section's "Third Party Liability Coverage" ("TPL") Insuring Agreement. That provision states, in relevant part, that "[t]he **Insurer** shall pay on behalf of any **Insured** the **Loss** arising from a **Claim** for a **Third Party Wrongful Act** first made during the **Policy Period**." Policy at 59. The capitalized terms in bold type are defined in the Policy. At issue in the instant dispute, a "Claim" is defined to include, among other things, a "written demand for monetary, non-monetary or injunctive relief made against an Insured" or a "judicial . . . proceeding, whether civil or criminal, for monetary, non-monetary or injunctive relief, commenced against an Insured . . . which is commenced by . . . service of a complaint or similar pleading." *Id*. at 59-60. The covered "Third Party Wrongful Act" is defined to include "any actual or alleged: (1) discrimination against a Third Party based upon such Third Party's . . . sex"; or "(2) harassment directed against a Third Party, including sexual harassment, unwelcome sexual advances, and requests for sexual favors or other misconduct of a sexual nature." *Id*. at 65. A "Loss" is defined to include "damages[,] . . . settlements or judgments," and "Defense Costs"; and the term "Defense Costs," in turn, includes "reasonable and necessary fees, costs, charges or expenses incurred by or on behalf of an Insured in the investigation, defense or appeal of a Claim." *Id*. at 62-63; 60. The "Policy Period" in this case is October 1, 2019 through October 1, 2020. *Id*. at 2.

In response to the various notices that Allied received advising it of Plaintiffs' allegations against ABHS, Allied sent ABHS several coverage denial letters; the latest letter, written in response to notice of the filing of the Underlying Lawsuit, is dated October 2, 2020.[4] Aguiar Decl., Ex. 4. In that letter, Allied advised ABHS that on the basis of the facts known to Allied at the time, it appeared that the Underlying Lawsuit "constitutes a Claim for Third Party Wrongful Acts first made against Insureds on May 7, 2020," *i.e.*, within the Policy Period, triggering potential coverage under the EPL Coverage Section.[5]

Based on information later produced in discovery, however, Allied now denies that the Underlying Lawsuit was in fact a Claim "first made" during the Policy Period. In support of this position, Allied relies on a written complaint form, submitted to ABHS by an unknown (name redacted) ABHS patient in October 2018, reporting "an issue with Mr. Stevens and the way he interacts with me he has done the same with others as well he slaps me on my butt or rubs my shoulders and has bought be fidget [spinners]," presumably meaning gifts in violation of ABHS's policy. Baker Decl., Ex. 2. An internal ABHS document related to this complaint states, "[i]t is alleged that Mr. Stevens (employee) has violated PREA [the Prison Rape Elimination Act] standards and policy by inappropriately touching a client," but according to the document, after investigation ABHS concluded that the allegations were "unfounded." *Id*. Based on this form alleging Stephens's misconduct, Allied now argues that the Claim against ABHS was "first made"

---

[4] Allied also sent ABHS a letter on June 4, 2020, in response to Plaintiffs' public records request notice; and on July 13, 2020, in response to Knaack's attorneys' demand letter; both denied that Allied was liable for indemnity or defense. *See* Casey Decl., Ex. 2; Aguiar Decl., Ex. 3.

[5] As discussed more fully *infra*, § III.B.2., however, Allied went on to deny coverage based upon an exclusion in the Policy.

ORDER RE: MOTIONS FOR
SUMMARY JUDGMENT
- 7

not during the Policy Period, but in October 2018, a year before the Policy Period began, and thus fell outside coverage provided by the Policy.

The Court rejects this argument. The allegations made by the unnamed patient who filed the complaint form in October 2018, while possibly related to the allegations in the Underlying Lawsuit, do not constitute a "Claim" as defined in the Policy. As noted above, that definition includes, among other even less potentially applicable things, a "written demand for monetary, non-monetary or injunctive relief made against an Insured." Policy at 59. The unnamed patient did not seek monetary, non-monetary or, on the face of the complaint, any specified relief at all. The patient did not pursue the complaint further; ABHS determined it was unfounded, and apparently took no action in response to it. These circumstances do not amount to a "Claim" as defined in the Policy.

This conclusion is bolstered by Allied's later determination that the original public records request letter (which, as discussed above, was sent to ABHS by Plaintiffs' attorneys in April 2020) was not a "Claim" under the Policy. *See* Casey Decl., Ex. 2. ("[I]t does not appear at this time that a Claim has been made against an Insured for a Wrongful Act or a Third Party Wrongful Act as defined in the EPL Coverage Section."). If that letter—which was written by an attorney, outlined the allegations that Plaintiffs had made against Stephens, and suggested litigation was to follow— was not a "Claim" according to Allied, it is implausible that Allied would have considered a handwritten, *pro se* form complaint containing little detail, no explicit demand, and no known

ORDER RE: MOTIONS FOR
SUMMARY JUDGMENT
- 8

followup a "Claim." The Court therefore agrees with Allied's original determination that the Underlying Lawsuit was a Claim "first made" within the Policy Period.[6]

### 2. Whether Exclusion K Nevertheless Excludes Coverage for Plaintiffs' Claims

Although Allied determined that the Underlying Lawsuit was a Claim, it denied coverage pursuant to Exclusion K of the EPL Coverage Section. In relevant part, Exclusion K excludes coverage for "any **Loss** in connection with any **Claim** … alleging, arising out of, based upon, attributable to or in any way relating to any actual or alleged sexual molestation or sexual abuse, including any mental anguish or emotional distress resulting therefrom." Policy at 54, 67.

"[T]he duty to defend must be determined from the four corners of the complaint and the four corners of the insurance policy." *Expedia, Inc. v. Steadfast Ins. Co.,* 180 Wn. 2d 793, 806 (2014). The Court concludes that under a straightforward application of Exclusion K to the Underlying Lawsuit, Plaintiffs' Claim was excluded. As noted, the Underlying Lawsuit is the relevant "Claim" under the Policy's definition of that term. *See* Policy at 59-60 (defining a "Claim" as a "judicial . . . proceeding, whether civil or criminal, for monetary, non-monetary or injunctive relief, commenced against an Insured, . . . which is commenced by . . . service of a complaint"). There can be no reasonable dispute that the Underlying Lawsuit was "alleging, arising out of,

---

[6] The Court also rejects Allied's related argument, that ABHS's failure to disclose the October 2018 complaint in its application for coverage was a material misrepresentation, requiring rescission of the Policy. The application asked whether ABHS was aware of "any claim(s) pending against the Organization" or any "fact, circumstance or situation involving the Organization [that] . . . might result in any future claim(s) which might fall within the scope of proposed insurance." ABHS replied "no" to both questions. As noted, the Court agrees that the complaint was not a "Claim" as defined in the Policy, and furthermore, ABHS investigated and determined that the patient's allegations were "unfounded" months before submitting the coverage application to Allied. There is no evidence that ABHS answered these questions untruthfully, let alone with the intent to deceive, a required element of the material misrepresentation coverage defense. *See Ki Sin Kim v. Allstate Ins. Co.*, 153 Wn. App. 339, 355 (2009). Accordingly, Allied fails to clear the high bar of demonstrating it is entitled to rescission of the Policy.

ORDER RE: MOTIONS FOR
SUMMARY JUDGMENT
- 9

based upon, attributable to," and most undeniably of all, was "in any way relating to actual or alleged sexual molestation or sexual abuse." The complaint filed in the Underlying Lawsuit contains countless references to the "abuse and harassment" committed by Stephens against the Plaintiffs.[7] *See, e.g.*, Underlying Lawsuit at 3 ("Douglas Stephens's Abusive and Harassing Behaviors at ABHS"); 8 ("Abuse and Harassment of James Lacy"); ¶ 3.1.1.5.6. ("Douglas Stephens abused and harassed Plaintiffs when he hugged them, directed them to hug him, and threatened them when they did not hug him."); ¶¶ 3.2.2.-3.2.4. ("Douglas Stephens's sexual abuse and sexual harassment of Plaintiffs was reasonably foreseeable by ABHS; ABHS breached its duty to Plaintiffs when it failed to protect Plaintiffs from sexual abuse and sexual harassment by Douglas Stephens; Plaintiffs were injured by Douglas Stephens's sexual abuse and sexual harassment.").

The complaint not only uses the phrase "sexual abuse" numerous times; it also describes and alleges acts that cannot reasonably be understood as anything other than sexual abuse. For

---

[7] Evidence further supporting the conclusion that the Underlying Claim was "in any way relating to sexual abuse" includes ABHS's "Notice of Claim" to Allied explicitly referring to the Underlying Lawsuit as a "Claim for sexual abuse." Aguiar Decl., Ex. 4. In addition, the order occasioning settlement of the Underlying Lawsuit outlines the details of Plaintiffs' sexual abuse, finding "[a]ll the Plaintiffs claim they were subjected to verbal sexual statements and sexual touching by Douglas Stephens. . . . Stephens harassed the Plaintiffs by making sexual comments, innuendos, and verbal sexual advances, *and by engaging in sexual touching, rubbing, and hugging*." Settlement Order (emphasis added). The Settlement Order explicitly refers to the "abuse Plaintiff Knaack sustained while an inpatient" at ABHS. *Id*., ¶ 12d.(3). And Plaintiffs' counsel in the instant lawsuit has referred to the Underlying Lawsuit as "a suit against ABHS for being sexually harassed and sexually abused by one of ABHS's employees." Mot. to Comp., Dkt. No. 25 at 1; *see also* Baker Decl., Ex. 5 at 2 ("As context, this is [*sic*] lawsuit alleges defendant committed bad faith in its handling and denial of a defense or coverage of *plaintiffs' third party, sexual abuse claim,* against a treatment facility they were in patients at.") (emphasis added).

.

ORDER RE: MOTIONS FOR
SUMMARY JUDGMENT
- 10

example, the complaint alleges that "[o]n multiple occasions, Douglas Stephens hugged Nicholas Knaack. That contact was uninvited, unwelcome, and materially and negatively altered the environment such that NICHOLAS KNAACK was deprived access to the accommodation of the treatment facility." *Id*., ¶ 2.126. Elsewhere the complaint alleges "Douglas Stephens approached DION LUMADUE in the hallway. Douglass Stephens told DION LUMADUE he needed to search DION LUMADUE. Douglas Stephens placed his hand between DION LUMADUE's pants and underwear. Douglas Stephens touched DION LUMADUE on the buttocks." *Id*., ¶ 2.84-2.86; *see also id*., ¶¶ 2.70-2.75 ("Douglas Stephens told JAMES LACY to enter an area not visible to other employees and clients. Douglas Stephens told JAMES LACY to remove his clothing. JAMES LACY removed his shorts. He was standing in his underwear. Douglas Stephens placed his hand inside JAMES LACY's underwear. Douglas Stephens touched JAMES LACY's testicles directly with his hand. Douglas Stephens fondled JAMES LACY's testicles.").

The terms "sexual molestation" and "sexual abuse" are not defined in the Policy, and therefore "are to be interpreted in accord with the understanding of the average purchaser of insurance, and . . . given their plain, ordinary and popular meaning." *Queen City Farms, Inc. v. Cent. Nat. Ins. Co. of Omaha*, 126 Wn. 2d 50, 77 (1994). Courts applying Washington law have repeatedly recognized that these terms are unambiguous as applied to allegations similar to those made in the Underlying Lawsuit. *See, e.g., Com. W. Ins. Co. v. Allen*, 2022 WL 766928, at *3 (W.D. Wash. Mar. 14, 2022), appeal dismissed, 2022 WL 19767144 (9th Cir. Nov. 4, 2022) ("The Policy does not define sexual molestation, but its definition is not ambiguous in this case. An average person purchasing insurance would know that Ms. Roe's allegations, inappropriately sexual touching of her breasts and genitalia, meet the definition of sexual molestation as it is

ORDER RE: MOTIONS FOR
SUMMARY JUDGMENT
- 11

commonly understood."). Plaintiffs have provided no authority to the contrary. The Court finds that the Underlying Lawsuit contains numerous allegations, including but not limited to those quoted above, that clearly fall within the definitions of "sexual abuse" and/or "sexual molestation" as those unambiguous terms are commonly understood.

Tacitly conceding this conclusion to be true, it is Plaintiffs' position that Exclusion K nevertheless does not apply to exclude coverage in this case. Plaintiffs argue that the Court should disaggregate the various allegations in the Underlying Lawsuit and conduct a coverage analysis to those allegations and causes of action that do not explicitly allege sexual abuse. For example, Knaack argues that "other than a few hugs," he experienced only verbal sexual harassment, which he argues is a covered claim under the EPL policy; the other Plaintiffs argue that although they did experience unwanted sexual touching (*i.e.*, sexual abuse), they also experienced verbal sexual harassment, which would have independently supported their claims against ABHS. All Plaintiffs argue that for purposes of determining whether Exclusion K applies, their claims must be separated and analyzed discretely, such that the sexual harassment allegations are separated from the sexual abuse allegations, rendering the former covered even if the latter are excluded.

These proposed analyses fail for at least two reasons. First, the Policy clearly defines a "Claim" to include a "judicial . . . proceeding, whether civil or criminal, for monetary, non-monetary or injunctive relief, . . . which is commenced by . . . service of a complaint." Policy at 59-60. Under this straightforward definition, which Plaintiffs do not claim is ambiguous, the entire Underlying Lawsuit, including each of the discrete allegations and causes of action comprising it, is a single "Claim" under the Policy. This Claim—that is, the Underlying Lawsuit—is undeniably "alleging, arising out of, based upon, attributable to or in any way relating to any actual or alleged

ORDER RE: MOTIONS FOR
SUMMARY JUDGMENT
- 12

sexual molestation or sexual abuse." Plaintiffs provide no legal authority for their position that Allied (or the Court) is obligated to separately analyze each discrete cause of action, or allegation, or plaintiff, in determining the applicability of the Policy's coverages and exclusions. The Court finds this approach would be contrary to the unambiguous definition of "Claim" in the Policy.

Second, even if the law did prescribe analysis of each Plaintiff's various allegations on an individualized basis, separating each Plaintiffs' allegations of sexual abuse from those of sexual harassment, all of the allegations in the Underlying Lawsuit would still be excluded under Exclusion K. The exclusion applies to exclude "any Loss in connection with any Claim . . . alleging, arising out of, based upon, attributable to *or in any way relating to any actual or alleged sexual molestation or sexual abuse*." Policy at 65-66 (emphasis added). Again, "relating" is not a term defined in the Policy but under Washington law is unambiguous, and "can encompass both [causal] and logical connections." *St. Paul Fire & Marine Ins. Co. v. RWR Mgmt., Inc*., 2006 WL 3289772, at *4 (E.D. Wash. Nov. 13, 2006) (citing *Valley Furniture & Interiors, Inc. v. Transp. Ins. Co*., 107 Wn. App. 104, 108 (2001) ("related acts" is an unambiguous term, defined as those that are "connected by time, place, opportunity, pattern, and method or modus operandi"; "logically or causally connected.")). Combined with the modifier "in any way," it is clear that "relating to" is intended to be interpreted broadly.

Under this definition, there can be no reasonable dispute that the sexual harassment that each Plaintiff allegedly experienced was "in any way relating to any alleged or actual sexual molestation or sexual abuse" that he—and his fellow Plaintiffs—experienced. All Plaintiffs experienced the abuse and harassment by the same person (Stephens) using the same modus operandi, as inpatients in the same facility (ABHS), during the same time period (roughly

December 2019-January 2020), under nearly identical circumstances, in incidents that bear remarkable similarity. In allegations made in the Underlying Lawsuit, Plaintiffs repeatedly linked the two categories of offenses in a single sentence, and of course did so in pursuit of collective causes of action brought in a single lawsuit.[8] *See, e.g.*, Underlying Lawsuit, ¶¶ 3.2.4, 3.3.4, 3.4.6 ("Plaintiffs were injured by Douglas Stephens's sexual abuse and harassment."). If all of the allegations in the complaint are not "relating in any way" to allegations of sexual abuse, it is hard to imagine what the phrase "relating in any way" can even mean. The law requires a common-sense, straightforward interpretation of unambiguous phrases used in insurance policies. The Court, applying this principle here, concludes that Plaintiffs' Claim was, as a matter of law, both "alleging" and "in any way relating . . . to sexual abuse and molestation" and therefore was excluded under Exclusion K of the Policy. Accordingly, ABHS was not (and thus Plaintiffs are not) entitled to coverage of the Claim under the EPL Coverage Section of the Policy.

**3. Whether Allied Owes a Duty to Defend Despite Not Owing a Duty to Indemnify**

Plaintiffs contend that even if Allied did not have a duty to indemnify ABHS for any Loss related to Plaintiffs' Claim, it nevertheless had a duty to defend ABHS against that Claim. They argue that the Policy's Exclusions provision (including Exclusion K, under which Plaintiffs' Claim is excluded) does not extend to the Policy's "Washington Duty to Defend Coverage" provision, Endorsement No. 12. Endorsement No. 12 imposes on the Insurer a "duty to defend any Claim which is covered in whole or in part under the Insuring Agreements, even if such Claim is

---

[8] As Allied points out, Washington Civil Rule 20(a) provides parties may only "join in one action as plaintiffs" if they are bringing claims "in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences."

ORDER RE: MOTIONS FOR
SUMMARY JUDGMENT
- 14

groundless, false or fraudulent."[9] As outlined above, the Court (like Allied, in its October 2, 2020 coverage denial letter) has concluded that the Underlying Lawsuit was indeed a "Claim" under the Third Party Liability Insuring Agreement. *See supra*, § III.B.1. Plaintiffs reason that the Claim is therefore "covered in whole or in part under the Insuring Agreement," and specifically in this case the TPL Insuring Agreement, regardless of whether the Claim is excluded.

This reasoning requires a strained and convoluted reading of the duty to defend endorsement. The Exclusions provision in the EPL Coverage Section broadly and unambiguously provides that "[t]his Coverage Section," of which both the TPL Insuring Agreement and Endorsement No. 12 are a part, "shall not cover any Loss," defined to include Defense Costs, "in connection with any Claim . . . in any way relating to any actual or alleged sexual molestation or sexual abuse." Applying the Court's holding above that Plaintiffs' Claim is indeed "relating in any way" to alleged sexual abuse, it necessarily follows that "[t]his Coverage Section shall not cover any Loss in connection with" that Claim. In other words, the Claim is *not* in fact covered, either "in whole or in part," under the TPL Insuring Agreement. Plaintiffs' position impermissibly ignores the plain, unambiguous meaning of the Exclusions, and taken to its logical conclusion would mean none of the Exclusions in the EPL Coverage Section apply to any Claim in determining whether the Insurer has a duty to defend, an untenable result.

---

[9] Endorsement No. 12 replaced the original defense coverage provisions in the Policy, which provided in part that "[t]he Insurer does not assume any duty to defend any Claim under this Coverage Section."

ORDER RE: MOTIONS FOR
SUMMARY JUDGMENT
- 15

Moreover, requiring Allied to pay defense costs even for Claims that are *ab initio* undisputedly excluded from coverage would be contrary to Washington law.[10] As Plaintiffs themselves explain, "the duty to defend is triggered if the insurance policy *conceivably* covers allegations in the complaint." Pls.' Mot. for Partial SJ at 6 (citing *Am. Best Food, Inc. v. Alea London, Ltd.*, 168 Wn.2d 398, 404–05 (2010)); *see also* Pls.' Rep. ISO Mot. for Partial SJ at 3 ("Washington law only relieves the insurer of the duty to defend if the allegations in the complaint are clearly not covered by the policy.") (citing *Truck Ins. Exch.*, 147 Wn. 2d at 70). Where, as here, the Policy does not "conceivably cover" the allegations in the complaint, under Washington law the duty to defend is therefore not triggered either.

**4. Whether Coverage is Due Under the Policy's D&O Coverage Section**

The bulk of Allied's October 2, 2020 coverage denial letter to ABHS was focused on Allied's reasons for denying coverage under the EPL Coverage Section of the Policy. *See* Aguiar Decl., Ex. 5. In a footnote in that letter, Allied also advised its insured that "[t]he Policy contains a Directors and Officers Liability Coverage Section and Fiduciary Liability Coverage Section, neither of which appears even potentially applicable here." *Id.*, fn. 2. Allied further advised ABHS that Allied would "provide a full analysis of coverage" under the D&O Coverage Section on request; it is undisputed that ABHS never made such a request.

The D&O Coverage Section contains several exclusion provisions that Allied asserts bar coverage under the D&O Coverage Section, including Exclusion P, which is a provision identical

---

[10] Plaintiffs' proposed interpretation of Endorsement No. 12 is also contrary to reason. An insurer liable for defense costs on a Claim that all agree the insurer will never be responsible for indemnifying creates conflicting and problematic incentives for all involved parties.

ORDER RE: MOTIONS FOR
SUMMARY JUDGMENT
- 16

to Exclusion K in the EPL Coverage Section.[11] For the reasons outlined above with respect to the EPL Coverage Section, the Court agrees that the sexual abuse and molestation exclusion bars coverage under the D&O Coverage Section as well.

Plaintiffs do not dispute that to the extent Exclusion K bars coverage under the EPL Coverage Section, Exclusion P necessarily (and for the same reasons) bars coverage under the D&O Coverage Section. Instead, they argue that Allied's failure to provide a full explanation of the reasons for the denial of coverage under the D&O Coverage Section, at the time of the denial, means Allied should be estopped from asserting any of the applicable exclusions now. Plaintiffs cite *Truck Insurance Exchange v. Vanport Homes* for the proposition that an insurer must "promptly provide a reasonable explanation for the denial of a claim." 147 Wn.2d 751, 764 (2002) (citing WAC 284–30–330(13)). However, the court in *Truck Insurance* held that the insurer was estopped from denying coverage because it had, in bad faith, *wrongfully* breached a duty *it in fact had* to defend, not merely because it had failed to explain its reasons for denying coverage. *Id*. 147 Wn. 2d at 755. *Truck Insurance* is simply inapplicable, as the Insurer here had no duty to defend. Plaintiffs fail to cite any authority for their position that an insurer is obligated to provide a thorough explanation for coverage denial under every coverage provision in the policy an insured holds—no matter how inapplicable the coverage, and even in the absence of a request by the

---

[11] Allied also argues that the D&O Coverage Section's Exclusion J bars coverage for Claims alleging bodily injury or mental anguish and emotional distress, and Exclusion L bars coverage for Claims "alleging, arising out of, based upon, or attributable to any actual or alleged discrimination; harassment; retaliation (other than a whistleblower claim or a Claim for retaliation brought by an individual who was the subject of Provider Selection Practices performed by the Insured and arising out of such Provider Selection Practices); wrongful discharge; termination; or any other employment related or employment practices claim." Policy at 54. Plaintiffs do not dispute that any and all of these exclusions are applicable, only that Allied should be estopped from asserting them.

ORDER RE: MOTIONS FOR
SUMMARY JUDGMENT
- 17

insured to do so—or be estopped from denying coverage later.[12] Even if such an obligation existed, it is doubtful it would be implicated in this case, where ABHS essentially ignored Allied's explicit offer to provide a more thorough explanation.

Moreover, even assuming Allied had and breached an obligation to provide a thorough explanation for its denial under the D&O Coverage Section, Plaintiffs have failed to demonstrate any detrimental reliance or prejudice resulting from Allied's "failure" to do so, and thus have failed to demonstrate any damages, all of which are required elements for proving estoppel. *See Hayden v. Mut. of Enumclaw Ins. Co.*, 141 Wn.2d 55, 63 (2000). Plaintiffs argue that "Allied's denial without sufficient explanation was a reason ABHS entered confessions of judgment," but this claim is not supported by the evidence. Knaack MSJ at 10. Instead, it is evident that ABHS settled (in part) because of the coverage denial, not because of an "insufficient" explanation for that denial. *See, e.g.,* Bridges Decl., Ex. 11, Prentice Decl., ¶ 8 ("[T]here was significant risk to ABHS that some or all of any judgment would not be covered by insurance. . . . I could not risk this harm to ABHS because it may have affected ABHS' business and its ability to serve its clients."). It is not clear how a more thorough explanation for the denial (which again, Allied offered but was never called upon to provide) would have affected ABHS's decision to settle. Plaintiffs' attempt to assert coverage by estoppel fails for this reason as well.

---

[12] As Allied points out, ABHS's policy had "three coverage parts and sixteen insuring agreements, and an exhaustive discussion of each insuring agreement and each exclusion thereto as they relate to each allegation in the Underlying Lawsuit (as Plaintiffs contend is required) would take a novel." Def.'s Opp. to Knaack MSJ at fn. 11. The regulations on which Plaintiffs rely for imposing such an unreasonable burden requires only "a *reasonable* explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim." WAC 284-30-330(13). As discussed more fully *infra*, that was provided in this case.

ORDER RE: MOTIONS FOR
SUMMARY JUDGMENT
- 18

## C.  Extra Contractual Claims: Negligence, Bad Faith, WCPA and IFCA

For the most part, Plaintiffs' Negligence, Bad Faith, Washington Consumer Protection Act, and Insurance Fair Conduct Act claims rise and—in this case—fall with their breach-of-contract claims, which as explained above must be dismissed. *See, e.g., Clear Creek Ret. Plan II LLC v. Foremost Ins. Co. Grand Rapids Michigan*, 2018 WL 3727596, at *3 (W.D. Wash. Aug. 6, 2018), *aff'd*, 776 Fed. Appx. 526 (9th Cir. 2019) (holding there "can be no IFCA violation without an unreasonable denial, and [insurer's] denial of coverage was reasonable as a matter of law"). Plaintiffs have not argued that their extra-contractual claims can survive dismissal of the contract claims, with one exception: under Washington law, a so-called "procedural" bad faith claim may still lie, even in the absence of a breach of the duty to defend or indemnify. *See St. Paul Fire & Marine Ins. Co. v. Onvia*, 165 Wn.2d 122, 132 (2008). Such a claim "sounds in tort," and is "analyzed applying the same principles as any other tort: duty, breach of that duty, and damages proximately caused by any breach of duty." *Id*. (cleaned up, citations omitted).

Here, Plaintiffs argue that Allied breached its duty of good faith (even assuming no coverage was due) in several ways, including by failing to provide a full explanation for denying coverage under the D&O Coverage Section. They also argue that Allied breached its duty to adequately investigate the Claim by failing to research applicable Washington law. This procedural bad faith claim fails, however, for the same reason Plaintiffs' D&O coverage-by-estoppel argument (discussed above) fails; Plaintiffs have not demonstrated that any claimed breach caused them damages, a required element of this cause of action. *Id*. ("The remedy of coverage by estoppel is not recognized in this context. . . . [The insured] must prove actual harm, and its damages are limited to the amounts it has incurred as a result of the bad faith."). Even assuming Allied had, and

ORDER RE: MOTIONS FOR
SUMMARY JUDGMENT
- 19

breached, a duty to more fully investigate, or explain its coverage denial, Plaintiffs have not explained what harm this "failure" caused them. Again, it was the (appropriate) denial of coverage—and not any deficiency in the explanation therefor—that allegedly induced ABHS to settle the Underlying Lawsuit. Plaintiffs' claims for bad faith, negligence, and violations of the IFCA and WCPA are accordingly dismissed.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED. Plaintiff Knaack's Motion for Summary Judgment and Plaintiffs Lacy and Lumadue's Motion for Partial Summary Judgment are DENIED. This matter is DISMISSED in its entirety.

Dated this 30th of December, 2024.

_____
Barbara Jacobs Rothstein
U.S. District Court Judge